ORIGINAL

1  Erik S. Syverson (SBN 221933)
2  PICK AND BOYDSTON, LLP
   617 South Olive Street, Suite 400
3  Los Angeles, CA 90014
   Phone: 213-624-1996
4  Fax: 213-624-9073

5  Attorneys for Plaintiff
   HOLOMAXX TECHNOLOGIES CORPORATION

FILED

OCT 29 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

#3
Pa
SI

E-FILING

ADR

6
7
8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

13  HOLOMAXX TECHNOLOGIES          )   Case No.   CV 10-   4926  PVT
    CORPORATION, a Pennsylvania S  )
14  Corporation,                   )
                                   )   COMPLAINT
15              Plaintiff,         )
                                   )   (1) Violation of 18 U.S.C. §§ 2510 *et seq.* (The
16        v.                       )   Wiretap Act)
                                   )   (2) Violation of 18 U.S.C. §§ 2701 *et seq.* (The
17  YAHOO!, INC., a Delaware corporation, and  )   Stored Communications Act)
    CISCO IRONPORT SYSTEMS, LLC, a            )   (3) Violation of 18 U.S.C. §§ 1030 *et seq.*
18  Delaware limited liability company,       )   (Computer Fraud)
                                   )   (4) Intentional Interference with Contract
19              Defendants.        )   (5) Intentional Interference with Prospective
                                   )   Business Advantage
20                                 )   (6) Violation of California Penal Code §§ 630
                                   )   et seq. (Wiretapping/Eavesdropping)
21                                 )   (7) Violation of California Civil Code §§ 43 *et*
                                   )   *seq.* (Defamation)
22                                 )   (8) Violation of California Business &
                                   )   Professions Code §§ 17200 *et seq.*
23                                 )
                                   )   JURY TRIAL DEMANDED
24

25

26

27

28

COMPLAINT

Plaintiff HOLOMAXX TECHNOLOGIES CORPORATION ("HOLOMAXX"), a

Pennsylvania S corporation, complains and pleads against Defendants YAHOO!, INC., ("YAHOO")

and CISCO IRONPORT SYSTEMS, LLC ("CISCO," and together with YAHOO,

"DEFENDANTS") as follows:

## JURISDICTION AND VENUE

1.      This action raises federal questions under, *inter alia,* 18 U.S.C. §§ 2510 *et seq.*

2.      This Court has original jurisdiction over the federal claims herein pursuant to 28 U.S.C. §§

1331 and 1332, and has supplemental jurisdiction over the state claims herein pursuant to 28 U.S.C.

§ 1367.

3.      This Court has authority to award the requested declaratory relief under, *inter alia*, 28 U.S.C.

§ 2201 and 18 U.S.C. § 2520, and the requested injunctive relief and damages (including reasonable

attorneys' fees and costs, and punitive damages) under, *inter alia*, 18 U.S.C. § 2520.

4.      Venue is proper under 28 U.S.C. § 1391 in the Northern District of California because a

substantial part of the actions or omissions giving rise to this case occurred within this District, and

YAHOO maintains its corporate headquarters in this district.

5.      Pursuant to Civil L.R. 3-2(c), this case is properly assigned to the San Jose Division, because

YAHOO maintains its corporate headquarters in Santa Clara County, California.

## PARTIES

6.      Plaintiff HOLOMAXX is a Pennsylvania S Corporation, with its principal place of business

in Montgomery County, Pennsylvania.

7.      Plaintiff HOLOMAXX is informed and believes, and on that basis alleges, that Defendant

YAHOO!, INC. ("YAHOO") is a corporation duly organized and existing under the laws of the state

of Delaware, with corporate headquarters at 701 First Avenue, Sunnyvale, CA 94089.

8.      Plaintiff HOLOMAXX is informed and believes, and on that basis alleges, that Defendant

CISCO IRONPORT SYSTEMS, LLC ("CISCO") is a limited liability company duly organized and existing under the laws of the state of Delaware, with corporate headquarters at 950 Elm Avenue, San Bruno, CA 94066.

## INTRODUCTION

9.      As detailed below, in this action Plaintiff HOLOMAXX seeks damages and injunctive relief against DEFENDANTS for their intentional interference with HOLOMAXX's ability to lawfully and properly send emails via the internet, to YAHOO users who had specifically requested these emails from HOLOMAXX.  By engaging in this conduct, YAHOO disrupted HOLOMAXX's contractual and business relationships.  YAHOO has intentionally and recklessly disregarded HOLOMAXX's repeated requests to cease their conduct, and both DEFENDANTS have refused to provide any information that would permit HOLOMAXX to remedy the situation.  To add insult to injury, YAHOO has informed HOLOMAXX that it will only consider accepting emails from HOLOMAXX after a six-month waiting period, and only if HOLOMAXX "significantly changes" its email policies - despite the fact that HOLOMAXX is sending legitimate email, and YAHOO has explicitly refused to identify any actual problem with any emails sent by HOLOMAXX.

10.     In addition, DEFENDANTS both intentionally intercepted and obtained information from HOLOMAXX's private communications with its clients, and CISCO has published false statements to third parties about HOLOMAXX's purported reputation for sending spam.  By engaging in the foregoing wrongful conduct, DEFENDANTS have exceeded their authorization to access facilities through which electronic communication services are provided, and to access computers used for interstate and foreign communications and commerce, and have obtained information thereby.

11.     As a direct result of DEFENDANTS' conduct, HOLOMAXX has suffered, and continues to suffer, direct and consequential damages in an excess of the jurisdictional limit of this court, in an amount to be proven at trial.  In addition, HOLOMAXX has suffered, and continues to suffer,

irreparable harm to its reputation and ongoing business relationships.  Because DEFENDANTS'

conduct has already damaged HOLOMAXX as described herein, and because their continuing

conduct threatens to cause HOLOMAXX irreparable injury, HOLOMAXX has had no choice but to

file this action.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

I.     **Parties**

      **A.**     **HOLOMAXX is a highly-esteemed email service provider, with an excellent**

                **reputation for sending legitimate, non-spam email on behalf of commercial**

                **clients since its founding in 2000.**

**12.**     HOLOMAXX is an ecommerce business development company, providing a full range of

services ranging from website development to creative media since its founding in 2000.  Among

other things, HOLOMAXX contracts with commercial clients to provide a fully-managed email

marketing service, including everything from creating advertisements to maintaining data for its

clients' customer lists.  HOLOMAXX began providing these email marketing services in 2002.

13.     In its role as an email service provider ("ESP"), HOLOMAXX enters into contracts with

commercial clients, pursuant to which HOLOMAXX sends marketing emails on its clients' behalf.

Because these contracts generally provide that HOLOMAXX will be paid a fixed amount per email

sent, HOLOMAXX's profits - as well as its business relationships and future economic viability -

depend on HOLOMAXX's proven track record of delivering emails to its clients day in and day out.

HOLOMAXX's clients, in turn, rely on HOLOMAXX to ensure that their customers - who, as

described below, have specifically *elected* to receive their emails - receive creative and valuable

marketing information, direct to their email inbox on a timely basis.

14.     HOLOMAXX's client companies all have an existing list of customers who have expressly

elected to receive correspondence; these clients simply do not want to deal with the technical challenges commonly associated with deploying and managing an email campaign. In order to protect its own reputation, HOLOMAXX requires that its clients acquire their list subscribers in accordance with the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), which provides federal standards for commercial email, in addition to adhering to Holomaxx's own privacy policy, which has been in effect since 2000, with revisions from time to time. ("Privacy Policy," at http://www.holomaxx.com/privacy.html.) Holomaxx also provides services to marketing firms who acquire opt-in leads via co-registration. These clients are accepted on a case-by-case basis, based on evidence that they maintain high standards and use legitimate, straightforward (and Can-Spam compliant) practices to build their subscriber lists. Among other things, HOLOMAXX's clients must typically require that subscribers provide their name, postal address, email and phone number. In order to prevent false registrations, subscriber registrations are then commonly confirmed via email; the client companies building these subscriber lists may also employ IP filtering, geo-location and CAPTCHA technologies: IP filtering prevents multiple registrations from the same IP address; geo-location ensures that the registration is geographically located in the area of the address entered by the user; and CAPTCHA prevents automated submissions commonly used by spammers.

15.    In short, HOLOMAXX has been a legitimate email service provider (including email to YAHOO users) since 2002. HOLOMAXX takes a straightforward approach to mailing and (as described in detail below), does not use many of the methods commonly employed by other email marketers.

16.    The volume of email that HOLOMAXX sends varies with the needs of the client and the size of the clients' subscriber lists; however, in an average busy month HOLOMAXX may send 10 million emails per day, including an estimated 6 million emails to YAHOO users worldwide. Both HOLOMAXX and its clients are rightly wary of being treated as spam, by customers, regulators, or

1   internet service providers ("ISPs").  HOLOMAXX therefore guards its reputation carefully,

2   adhering scrupulously to industry best practices for sending protocols and customer list

3   management, and monitoring its clients to ensure that they do the same.

4

5   17.    Among other things, to maintain its high standards and reputation, HOLOMAXX takes the

6   following precautions in accordance with the Can-Spam Act:

7          a.    All emails sent by HOLOMAXX contain clear and accurate transmission and header

8          information.  All email sent by HOLOMAXX originates from the same set of servers, all

9          ending with ".holomaxx.net."  HOLOMAXX does not make any attempt to disguise or hide

10         itself; indeed, all email sent by HOLOMAXX has the same reply-to address, making it easy

11         to identify HOLOMAXX as the source.  All outgoing email is validated by multiple domain-

12         identification services:  It is signed with DKIM (*i.e.,* DomainKeys Identified Mail, a service

13         validating the sender's domain-name identification), and HOLOMAXX's server supports

14         both SPF (Sender Policy Framework) and SenderID for verification purposes.  (SPF and

15         SenderID are both trade names for email authentication technology protocols that - like

16         DKIM - verify the domain name from which e-mail messages are sent.)

17         b.    In addition, HOLOMAXX sends all of its email from a relatively small number of IP

18         addresses (less than 100), whereas it is still commonplace in the industry for emailers to use

19

20         multiple entire blocks (256 or more) of IP addresses.  HOLOMAXX does not "turn and

21         burn" ranges of IP addresses; rather, it sends email from the same addresses, without ever

22         jumping around to different blocks in an attempt to avoid blacklists.  In other words,

23         HOLOMAXX does not register hundreds of throwaway domains and switch them with each

24         email campaign.  To the contrary, HOLOMAXX has been using the same IP addresses and

25         datacenter since 2004.

26

27         c.    In accord with HOLOMAXX's Privacy Policy (and the Can-Spam Act),

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOLOMAXX's Anti-Spam policy tolerates only permission-based email.  All emails sent by

HOLOMAXX (except for transactional emails: e.g., important account notifications and

billing information) contain a link permitting recipients to "opt out" of receiving further

email messages, as well as a clear and conspicuous explanation of how the recipient can opt

out of getting future email from HOLOMAXX.  (This option is also made available when a

subscriber first signs up for the email list.)  In addition, subscribers can unsubscribe by

emailing HOLOMAXX directly at support@holomaxx.com; or, if they believe that they

have received unsolicited commercial email from HOLOMAXX, they can report it at

abuse@holomaxx.net.  Furthermore, in every email sent by HOLOMAXX, the links

(including the reply-to email address) all use the same domain.

d.       HOLOMAXX has also registered its domains and IP addresses with all available

feedback loops (including YAHOO's), allowing HOLOMAXX to process email that

recipients have marked as "junk" by clicking a button on their email interface (as opposed to

clicking the "Unsubscribe" link provided within the email).  The email from the feedback

loop is processed automatically and is treated the same as an unsubscribe request.  All email

which is marked as "undeliverable" is also processed automatically and treated as an

unsubscribe request.

e.       HOLOMAXX honors all opt-out requests (as described above in subparagraphs (c)

and (d), above) within 10 business days.  HOLOMAXX does not charge any fee to

unsubscribe, does not require recipients to provide any personally identifying information

beyond an email address, and does not make the recipient take any steps other than sending a

reply email or visiting a single page on an Internet website as a condition for honoring an

opt-out request.  The reply address or other opt-out mechanism provided is always valid for

at least 30 days after the email is sent.  HOLOMAXX's "unsubscribe" function operates in

real-time and has a "global" effect, meaning that if someone chooses to unsubscribe, that email address will not receive any future email from HOLOMAXX even if their email address appears on another HOLOMAXX client's subscriber list.  Once a recipient has opted out, HOLOMAXX does not sell or transfer their email addresses, even in the form of a mailing list, except that HOLOMAXX may on occasion transfer the addresses to another company hired solely for the purpose of complying with the Can-Spam Act.

f.      All emails sent by HOLOMAXX contain clear and accurate subject headings that accurately reflect the content of the message.  All advertising emails sent by HOLOMAXX are clearly and conspicuously identified as such.

g.      All emails sent by HOLOMAXX include the current physical postal address of either HOLOMAXX or the client for whom HOLOMAXX is sending the email.  (Where an email contains the client's physical address, the client forwards the few unsubscribe requests that it receives by "snail mail" to HOLOMAXX for processing on a monthly basis.)

h.      HOLOMAXX monitors its clients' email lists and practices, requiring that they maintain compliance with HOLOMAXX's privacy policies and the Can-Spam Act.

18.     As a result of the foregoing, since it began keeping track of complaints in 2002, HOLOMAXX has maintained a complaint rate of between 0.1% and 0.3%; i.e., fewer than 3 in every 1,000 emails sent by HOLOMAXX is routed to an invalid address or results in a subscriber opt-out.  YAHOO's feedback loop data also shows an aggregate complaint rate of consistently at or below 0.1%.

**B.      YAHOO is an Internet Service Provider, interested in lowering costs at the expense of commercial free speech and internet communications.**

19.     YAHOO is an internet service provider ("ISP").  Among its other services, YAHOO hosts email accounts; in fact, YAHOO offers one of the largest (if not *the* largest) email services in the

world. Possibly seeking to cut costs in its service to its free email users, YAHOO improperly relies on a faulty automated spam filter ("SpamGuard") and third-party evaluation services to determine whether incoming email is spam. Unfortunately, SpamGuard has been programmed to identify spam based on certain mailing characteristics, without reference to whether the email in question actually violates the Can-Spam Act. The effect is that SpamGuard's determinations are often incorrect, leading YAHOO - as in this case - to label legitimate email as spam and prevent it from reaching end users.

20.    To make matters worse, once SpamGuard has wrongly determined that a sender is sending spam, YAHOO will not reverse this determination, will not remedy the situation (including permitting the sender to send any other email to its users), and will not provide any information that would permit a user to change its sending practices to fall within SpamGuard's guidelines.

C.    **DEFENDANT CISCO is a self-described provider of "sender reputation services"; it profits from offering senders' purported "Reputation Scores" to ISPs and other third parties, whether those scores are right or wrong.**

21.    Defendant CISCO is a wholly-owned subsidiary of Cisco, one of the world's largest technology corporations. CISCO provides "sender reputation" services to ISPs and other third parties, including an email monitoring service known as SenderBase which purports to identify organizations that send spam email. CISCO claims that SenderBase is "the world's largest email and Web traffic monitoring network, . . . collect[ing] nowadays data on more than 25 percent of the world's email traffic".

22.    In connection with its SenderBase services, CISCO develops a reputation score ("Reputation Score") for Internet IP addresses. It then publishes this Reputation Score, and related information, to third parties through, *inter alia,* its www.senderbase.org website. As stated at

www.senderbase.org, "SenderBase can be used like a 'credit reporting service' for email, providing comprehensive data that ISPs and companies can use to differentiate legitimate senders from spammers and other attackers . . . ." In other words, CISCO intends that ISPs and other companies will rely on its Reputation Scores to determine whether email senders are sending spam, or legitimate email.

23. HOLOMAXX is informed and believes, and based thereon alleges, that CISCO intercepted emails sent by HOLOMAXX in order to calculate HOLOMAXX's Reputation Score. Among other things, CISCO owns SpamCop, a free spam reporting service which allows email recipients to report spam to, *inter alia*, the senders' ISPs. SpamCop then uses these reports to compile a blacklist of computers sending spam. HOLOMAXX is informed and believes, and based thereon alleges, that CISCO uses information from SpamCop in connection with its SenderBase service. HOLOMAXX is also informed and believes, and based thereon alleges, that CISCO solicits ISPs to intercept emails and provide them to CISCO to include in its SenderBase data, and that YAHOO has forwarded emails sent by HOLOMAXX, to CISCO for this purpose.

24. Like YAHOO's automated SpamGuard service, SenderBase's algorithms often result in an incorrect determination. Also like SpamGuard, SenderBase is a "black-box" service: *i.e.*, once a sender has been identified as a spammer, CISCO refuses to provide any information that would allow the sender to change policies and reverse the determination.

II. **DEFENDANTS' Wrongful Conduct Has Caused HOLOMAXX Damages, and Their Continuing Wrongful Conduct Threatens to Cause HOLOMAXX Irreparable Injury.**

    A. **HOLOMAXX began sending emails from new IP addresses to YAHOO users on about June 7, 2010.**

25.     HOLOMAXX rarely changes its IP addresses; however, in about May 2010, HOLOMAXX

was able to acquire its own dedicated IP block: *i.e.,* 256 IP addresses within the same address range.

HOLOMAXX made this change to avoid improperly being associated with other email senders, who

might maintain lesser standards.  Before making the change, HOLOMAXX had faced service issues,

and its IP addresses had had their "reputations" affected, when spammers sent email from non-

HOLOMAXX addresses within the shared block.

26.     As a consequence of acquiring its own IP block, and as part of the process of renumbering all

of its network resources, HOLOMAXX replaced the IP addresses which it had previously been

using to send emails to YAHOO users (and which it had previously registered with YAHOO), with

new IP addresses in the range from 209.124.88.200 to 209.124.88.219 (the "IP Addresses").

27.     On or about May 27, 2010, HOLOMAXX submitted an online bulk mail application form

(the "Application") seeking to register the IP Addresses for bulk email use.  The form stated that

"[the IP Addresses] will be replacing our old IPs which are currently registered with you".

28.     HOLOMAXX began to send email (the "Email") to YAHOO users from the IP Addresses on

about June 7, 2010.


**B.      YAHOO has intercepted all emails sent by HOLOMAXX to its clients'**

**YAHOO-based customers since about June 7, 2010, thereby violating federal**

**law and interfering with HOLOMAXX's contractual and business relationships.**

29.     Immediately after HOLOMAXX began sending emails to YAHOO users from the IP

Addresses, YAHOO began to intercept them.  Specifically, beginning on or about June 7, 2010,

YAHOO has intentionally blocked all emails sent by HOLOMAXX to YAHOO users worldwide,

despite the fact that YAHOO users solicited these emails, and HOLOMAXX sent them in

accordance with the provisions of the Can-Spam Act.  YAHOO has failed and refused to deliver

email at all from most of HOLOMAXX's IP addresses; the few emails that YAHOO does accept are purposely routed to users' spam folders, despite the fact that users have elected to receive these emails, and whether or not the user has marked any other emails from HOLOMAXX as spam.

30.     YAHOO has stated that it is treating HOLOMAXX's emails as spam based on "potential issues" raised by its automatic "SpamGuard" filter; despite repeated requests from HOLOMAXX, YAHOO has never identified any actual problem with HOLOMAXX's emails, and has explicitly refused to provide any specific information about the "potential issues," citing the "proprietary nature" of information relating to SpamGuard.

31.     YAHOO has also stated - falsely - that SpamGuard intercepted emails sent by HOLOMAXX in response to user complaints. As noted by HOLOMAXX in several communications to YAHOO in about June, 2010, this is impossible, because YAHOO began intercepting HOLOMAXX's emails immediately after HOLOMAXX began using the IP Addresses, and were stopped at "SMTP time," *i.e.,* they were refused by YAHOO servers before any of the Emails had the chance to reach their end users. Tellingly, YAHOO offered the same excuse when it blocked test emails sent by HOLOMAXX from an IP message that had never been used before to send email. Furthermore, according to data provided by YAHOO's own feedback loop, HOLOMAXX's aggregate complaint rate for emails sent to YAHOO is consistently at or below 0.1%: *i.e.,* HOLOMAXX receives fewer than one complaint per 1,000 emails; this is generally considered a "clean threshold" (*i.e.,* not a cause for concern).

32.     HOLOMAXX is entitled to send legitimate, permission-based emails to its clients' customers *now*. However, despite HOLOMAXX's repeated requests, YAHOO has failed and refused to resolve the issue, causing HOLOMAXX to lose revenues and damaging HOLOMAXX's client relationships. Furthermore, YAHOO has informed HOLOMAXX that it will only *consider* accepting emails from HOLOMAXX after a six-month waiting period, and only if HOLOMAXX

"significantly changes" its email policies - despite the fact that HOLOMAXX is sending legitimate email, and YAHOO has explicitly refused to identify any actual problem with any emails sent by HOLOMAXX.

### C.   YAHOO knew that HOLOMAXX contracts with clients to send emails on their behalf, and that its conduct interferes with HOLOMAXX's contractual, economic, and business relationships.

33.   YAHOO knows full well that HOLOMAXX sends emails on behalf of commercial clients because, *inter alia*, HOLOMAXX has referenced its clients in numerous communications with YAHOO, including the Application.  YAHOO also knows that it is interfering with HOLOMAXX's client relationships; among other things, HOLOMAXX explicitly stated in an email to YAHOO on June 20, 2010 that its business relies on its ability "to reliably deliver permission-based email to all of our subscribers."

### D.   There was actual disruption of HOLOMAXX's contractual, economic, and business relationships with its clients.

34.   HOLOMAXX entered into contracts to send emails for its clients: These contracts generally provided that HOLOMAXX would be paid a fixed fee for each email that HOLOMAXX sent; a few contracts specified that HOLOMAXX will receive a direct share of the profits generated by the email campaign.  As a result of the conduct described herein, HOLOMAXX cannot perform its contracts, and its clients have not paid HOLOMAXX for the blocked emails that HOLOMAXX attempted to send on their behalf.  In addition, the resulting damage to HOLOMAXX's reputation - both as a legitimate email sender, and as a business partner that is able to follow through on its contractual commitments - has caused harm to HOLOMAXX's economic and business relationships.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E.      CISCO has intercepted emails sent by HOLOMAXX.**

35.      Like YAHOO, CISCO has wrongfully intercepted HOLOMAXX's legitimate emails. As

set forth fully below, CISCO used information collected from those emails to evaluate

HOLOMAXX's purported "reputation," and then published those false statements to YAHOO and

other internet service providers through, *inter alia*, its internet SenderBase service. Like YAHOO,

CISCO's SenderBase service is a "black box" - *i.e.*, CISCO does not provide any kind of useful

feedback about how it determines that a particular sender is sending spam, and senders are not able

to challenge its findings.

**F.      CISCO is aware that YAHOO has blocked all emails sent by HOLOMAXX, and**
**        intended this result.**

36.      HOLOMAXX is informed and believes, and based thereon alleges, that CISCO is aware

that YAHOO has blocked HOLOMAXX's emails, as described fully above; and indeed, by offering

YAHOO a "Reputation Score" and other information that purportedly identified HOLOMAXX as a

potential spammer, CISCO intended that YAHOO engage in this conduct.

**G.      DEFENDANTS both obtained information from HOLOMAXX's confidential**
**        email communications (and the computers where they were stored), and then**
**        used and disclosed this information.**

37.      HOLOMAXX is informed and believes, and based thereon alleges, that DEFENDANTS

both accessed computers on which HOLOMAXX's confidential email communications were stored,

and that DEFENDANTS also scanned the contents of those emails and obtained information

therefrom, without the consent of either HOLOMAXX or the intended recipients. CISCO then used,

disclosed, and relied on this information, by developing and publishing HOLOMAXX's purported "Reputation Score." YAHOO similarly used, disclosed, and relied on the contents of HOLOMAXX's emails, as well as information provided by CISCO about HOLOMAXX's purported "reputation," when it elected to treat HOLOMAXX's emails as spam. HOLOMAXX is informed and believes, and based thereon alleges, that YAHOO also disclosed the contents of its emails to CISCO, for CISCO's use in connection with its SenderBase service.

**H.     CISCO has published false, purportedly factual statements to third parties about HOLOMAXX, which would tend to injure HOLOMAXX's reputation in the community and lessen its profits.**

38.     HOLOMAXX is informed and believes, and based thereon alleges, that CISCO has intentionally published "Reputation Scores" and other information which falsely indicate to YAHOO and other third parties that HOLOMAXX may be sending spam from the IP Addresses. By publishing this false information to, *inter alia,* its SenderBase website, CISCO has injured HOLOMAXX's reputation as a legitimate email service provider, causing internet service providers to block email sent by HOLOMAXX and thereby lessening HOLOMAXX's profits as described fully below.

**I.      DEFENDANTS acted with malice, oppression, fraud, and reckless indifference, in engaging in the conduct described above.**

39.     DEFENDANTS have chosen to make legitimate email service providers the enemy, instead of working together with ESPs to protect both their clients' right to send legitimate email, and their customers' right to receive it.

1. **Yahoo's repeated refusal not merely to send the Email, but also to provide information or means of redress, reflects a larger pattern of abuse.**

40.    YAHOO's conduct, as described above, was part of a larger pattern of indiscriminately blocking legitimate emails, using cheap and ineffective technologies to avoid the expense of appropriately tracking and eliminating *only* spam email.  Tellingly, even after HOLOMAXX had repeatedly responded to YAHOO's requests for information, described its email practices in detail, affirmed that its email is Can-Spam compliant, noted its low complaint rate based on *YAHOO's own data*, and offered to make any *additional* changes required by YAHOO above and beyond the legal minimum, YAHOO responded that its determination was final, and that HOLOMAXX would have to significantly change its practices, in some unspecified manner - i.e., to guess at what changes might make its email acceptable - and then wait six months before YAHOO would even consider sending emails from HOLOMAXX to YAHOO users.

41.    Moreover, YAHOO would not provide any information as to how it made this determination, or how HOLOMAXX could revise its practices to get back into YAHOO's good graces.  Clearly, despite being informed that its conduct was causing damage to HOLOMAXX, YAHOO never intended to remedy this situation.  In the course of an electronic exchange between HOLOMAXX and YAHOO, beginning with HOLOMAXX's submission of the Application on about May 27, 2010, and continuing through July 8, 2010:

   a.    YAHOO repeatedly stated that emails from the IP Addresses were being blocked due to user complaints, despite the fact that YAHOO began intercepting HOLOMAXX's emails immediately after HOLOMAXX started to use the new IP Addresses.

   b.    YAHOO informed HOLOMAXX several times that it had taken steps to allow emails from HOLOMAXX to reach their intended recipients, but these steps had no

1   effect, and YAHOO then refused to make any changes that *would* be effective.

2   c.   YAHOO repeatedly directed HOLOMAXX to generic links about "best practices,"

3   despite detailed descriptions from HOLOMAXX about its practices. For example, in

4   an email to YAHOO dated June 26, 2010, HOLOMAXX wrote:

6

7           My company is not new to providing email marketing services - it is a

8           service we have offered for many years, so we are well aware of the best

9           practices and do our best to follow them. We require that our clients

10          provide full opt-in information for each subscriber on their list. Even

11          with that measure in place, we rely on your feedback loop to gauge our

12          clients' list integrity. If a particular list is generating too many

13          complaints we will warn the client and tell them to review their list. If

14          the complaint rate does not improve we will suspend or cancel their

15          mailing privileges.

16

17

18          The problem is that you are indiscriminately interfering with the

19          delivery of email, despite there not being any basis for it. Based on your

20          own feedback loop data our aggregate complaint rate is consistently at

21          or below 0.1% - and that is generally accepted as a clean threshold. If

22          we were seeing complaint rates of 1% or more over an extended period

23          of time then I would not disagree with your course of action...but in this

24          case I do not see any reason or justification.

25

26   d.   YAHOO repeatedly suggests that HOLOMAXX have its end users take active steps

27   to receive emails from HOLOMAXX, including, e.g., creating their own filters - even

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

after HOLOMAXX has informed YAHOO that (i) these users have already opted

into receiving emails from HOLOMAXX; (ii) this is an unreasonable request to make

of individual users; and (iii)  the emails are being stopped at SMTP time, i.e., before

the users have a chance to accept or reject them.

e.      Despite HOLOMAXX's repeated offers to customize its services and respond to any

actual problems, YAHOO repeatedly refuses to provide any specific information that

would allow HOLOMAXX to continue to send email to YAHOO users.

f.       YAHOO finally informed HOLOMAXX that it will only *consider* accepting emails

from HOLOMAXX after a six-month waiting period, and then only if HOLOMAXX

"significantly changes" its email policies - despite the fact that (a) YAHOO has not

identified any actual problem with HOLOMAXX's email practices, and (b)

HOLOMAXX's practices are already Can-Spam compliant.

**2.      CISCO acted with malice, oppression, fraud, and malicious indifference**

**because its profits do not depend on whether its provides accurate**

**assessments of legitimate email providers.**

42.      CISCO has built its SenderBase business on the backs of legitimate email senders like

HOLOMAXX.  Like YAHOO's SpamGuard, SenderBase relies on faulty indicators of spam to

falsely identifies legitimate ESPs like HOLOMAXX as spammers; it then denies such legitimate

senders any recourse or information that would allow them to challenge CISCO's determination.

CISCO profits from this malicious and egregious conduct, which allows CISCO to inflate the

perceived threat of spam, the concurrent need for its services, and its own reputation for accuracy,

while decreasing the costs that it would incur by accurately assessing email senders and responding

appropriately to their valid challenges.

43.     HOLOMAXX is informed and believes, and based thereon alleges, that CISCO has intentionally, maliciously, and wrongfully published Reputation Scores and other information that would falsely indicate to third parties that HOLOMAXX may be sending spam.  Among other things, HOLOMAXX is informed and believes, and based thereon alleges, that CISCO wrongfully published, and provided to YAHOO and other third parties, Reputation Scores and other information falsely indicating that HOLOMAXX may be sending spam from the IP Addresses.

## III.     Damages

44.     As a result of the foregoing conduct by DEFENDANTS, HOLOMAXX has suffered, and continues to suffer, direct and consequential damages in an excess of the jurisdictional limit of this court (including at least $5,000 in damages since June 7, 2010), in an amount to be proven at trial. In addition, HOLOMAXX has suffered, and continues to suffer, irreparable harm to its reputation and ongoing business relationships.

45.     Among other things, HOLOMAXX's contracts generally specify that HOLOMAXX will be paid a fixed fee for each email sent; a few contracts specify that HOLOMAXX will receive a direct share of the profits generated by the email campaign.  In addition to the loss of profits that would have accrued from sending each email, HOLOMAXX has also lost business from existing and prospective clients, based on the injury to its reputation and its inability to send email reliably on behalf of its clients.

46.     Furthermore, 18 U.S.C. §§ 2510 *et seq.* and 18 U.S.C. §§ 2701 *et seq.* each provide a statutory minimum for civil damages caused by violations thereof.

47.     Because YAHOO has refused even to consider sending email sent by HOLOMAXX for a six-month period, HOLOMAXX's damages are likely limited not only to lost profits and lost clients; in addition, HOLOMAXX risks the threat of business disruptions including employee

1    layoffs, unpaid bills, poor credit reports, damaged vendor relationships, and (potentially)

2    bankruptcy.

3                              **FIRST CAUSE OF ACTION**

4
     **(Violation of 18 U.S.C. §§ 2510 *et seq.* - The Wiretap Act)**
5

6                              **(Against All Defendants)**

7    48.      Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1

8    through 47 as if set forth herein.

9    49.      DEFENDANTS have intentionally intercepted electronic communications sent by

10   HOLOMAXX, in violation of 18 U.S.C. §§ 2510 *et seq.*  As described fully above, YAHOO has

11
     blocked all emails sent by HOLOMAXX to YAHOO users, and both DEFENDANTS have
12

13   intercepted emails to evaluate their purported spam-like characteristics.

14   50.      DEFENDANTS intentionally used and disclosed the contents of such electronic

15   communications sent by HOLOMAXX, while knowing or having reason to know that the

16   information was obtained through the interception of those communications in violation of 18

17   U.S.C. § 2511.  As described fully above, both DEFENDANTS have intercepted emails sent by

18   HOLOMAXX in order to evaluate their purported spam-like characteristics; and furthermore,

19
     HOLOMAXX is informed and believes, and based thereon alleges, that both DEFENDANTS
20

21   disclosed the contents of such emails to each other and to third parties for a similar purpose.

22   51.      DEFENDANTS' conduct, as described herein, was performed with malice, oppression,

23   fraud, and reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a

24   larger pattern or practice, tending to increase their own profits without regard for legitimate email

25   senders.

26
     52.      As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered,
27

28   and continues to suffer, damages in an amount to be proven at trial, including without limitation past

and future lost profits, and injury to reputation, as well as other consequential damages, in excess of the jurisdictional limit of this court.

53.     DEFENDANTS are continuing to engage in the unlawful actions alleged herein, and unless restrained and *enjoined* will continue to do so, causing irreparable harm to HOLOMAXX. It is difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for DEFENDANTS' continuing unlawful acts. HOLOMAXX's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

54.     HOLOMAXX is therefore entitled to:

    a.     A declaration that:

        i.     HOLOMAXX's current email practices, as set forth herein, are in accord with the Can-Spam Act;

        ii.     Emails sent by HOLOMAXX in accord with such practices are not spam;

        iii.     HOLOMAXX has the right to send such legitimate, non-spam emails directly to the intended recipient's primary inbox, without interception, deprioritization, blocking, delay, or other interference; and

        iv.     DEFENDANTS are prohibited from intercepting, deprioritizing, blocking, delaying, or interfering with any emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient.

    b.     A preliminary and permanent injunction:

        i.     prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with any emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),

including rerouting such emails away from the primary inbox of the intended recipient;

ii. requiring YAHOO to forward such emails directly and immediately to the primary inbox of the intended recipient;

iii. requiring YAHOO *to provide information to HOLOMAXX* about the grounds for blocking HOLOMAXX's emails;

iv. requiring CISCO *to provide information to HOLOMAXX* about the grounds for any information provided to YAHOO and other third parties about HOLOMAXX; and

v. requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

c. Compensatory damages, in an amount to be proven at trial, but in no event less than the statutory minimum provided for damages at 18 U.S.C. §§ 2510 *et seq.*

d. Reasonable attorneys' fees and costs of litigation.

e. Punitive damages.

## SECOND CAUSE OF ACTION

**(Violation of 18 U.S.C. §§ 2701 *et seq.* - The Stored Communications Act)**

**(Against All Defendants)**

55. Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 47 as if set forth herein.

56. By engaging in the wrongful conduct described herein, DEFENDANTS have intentionally exceeded their authorization to access facilities through which electronic communication services are provided, and have thereby obtained and prevented authorized access to wire or electronic communications sent by HOLOMAXX while they are in electronic storage in such system, in

violation of 18 U.S.C. §§ 2701 *et seq.*

57.     DEFENDANTS' conduct, as described herein, was performed with malice, oppression, fraud, and reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a larger pattern or practice, tending to increase their own profits without regard for legitimate email senders.

58.     As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation past and future lost profits, and injury to reputation, as well as other consequential damages, in excess of the jurisdictional limit of this court.

59.     DEFENDANTS are continuing to engage in the unlawful actions alleged herein, and unless restrained and *enjoined* will continue to do so, causing irreparable harm to HOLOMAXX.  It is difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for DEFENDANTS' continuing unlawful acts.  HOLOMAXX's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

60.     HOLOMAXX is therefore entitled to:

    a.     A declaration that:

        i.     HOLOMAXX's current email practices, as set forth herein, are in accord with the Can-Spam Act;

        ii.     Emails sent by HOLOMAXX in accord with such practices are not spam;

        iii.     HOLOMAXX has the right to send such legitimate, non-spam emails directly to the intended recipient's primary inbox, without interception, deprioritization, blocking, delay, or other interference; and

        iv.     DEFENDANTS are prohibited from intercepting, deprioritizing, blocking, delaying, or interfering with any emails sent by HOLOMAXX in accordance

with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),

including rerouting such emails away from the primary inbox of the intended

recipient.

b.    A preliminary and permanent injunction:

    i.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking,

delaying, or interfering with any emails sent by HOLOMAXX in accordance

with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),

including rerouting such emails away from the primary inbox of the intended

recipient;

    ii.    requiring YAHOO to forward such emails directly and immediately to the

primary inbox of the intended recipient;

    iii.    requiring YAHOO *to provide information to HOLOMAXX* about the grounds

for blocking HOLOMAXX's emails;

    iv.    requiring CISCO *to provide information to HOLOMAXX* about the grounds

for any information provided to YAHOO and other third parties about

HOLOMAXX; and

    v.    requiring DEFENDANTS to reconfigure any automated technology to

comply with the terms of the Court's order.

c.    Compensatory damages, in an amount to be proven at trial, but in no event less than

the statutory minimum provided for damages at 18 U.S.C. §§ 2701 *et seq.*

d.    Reasonable attorneys' fees and costs of litigation.

e.    Punitive damages.

## THIRD CAUSE OF ACTION

### (Violation of 18 U.S.C. §§ 1030 *et seq.* - Computer Fraud)

1

**(Against All Defendants)**

2

61.     Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1

3

through 47 as if set forth herein.

4

5

62.     DEFENDANTS have interfered with emails sent by HOLOMAXX, including emails sent to

6

interstate and foreign recipients.  As described fully above, YAHOO has blocked all emails sent by

7

HOLOMAXX to YAHOO users, and both DEFENDANTS have intercepted emails, and scanned

8

their contents, to evaluate their purported spam-like characteristics.

9

63.     By engaging in the wrongful conduct described herein, DEFENDANTS intentionally

10

exceeded their authorization to access computers used for interstate and foreign communications and

11

commerce, and obtained information from such computers, in violation of 18 U.S.C. §§ 1030 *et seq.*

12

13

64.     DEFENDANTS' conduct, as described herein, was performed with malice, oppression,

14

fraud, and reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a

15

larger pattern or practice, tending to increase their own profits without regard for legitimate email

16

senders.

17

65.     As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered,

18

and continues to suffer, damages in an amount to be proven at trial, including without limitation past

19

and future lost profits, and injury to reputation, as well as other consequential damages.

20

66.     DEFENDANTS are continuing to engage in the unlawful actions alleged herein, and unless

21

22

restrained and *enjoined* will continue to do so, causing irreparable harm to HOLOMAXX.  It is

23

difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for

24

DEFENDANTS' continuing unlawful acts.  HOLOMAXX's remedy at law is, therefore, inadequate

25

to compensate for the injuries threatened.

26

67.     HOLOMAXX is therefore entitled to:

27

        a.     A preliminary and permanent injunction:

28

     i.     prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with any emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient;

     ii.    requiring YAHOO to forward such emails directly and immediately to the primary inbox of the intended recipient;

     iii.   requiring YAHOO *to provide information to HOLOMAXX* about the grounds for blocking HOLOMAXX's emails;

     iv.   requiring CISCO *to provide information to HOLOMAXX* about the grounds for any information provided to YAHOO and other third parties about HOLOMAXX; and

     v.    requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

    b.    Compensatory damages, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Intentional Interference with Contract)

### (Against All Defendants)

68.    Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 47 as if set forth herein.

69.    As described fully above, HOLOMAXX has entered into contracts with commercial clients, pursuant to which (among other things) HOLOMAXX sends marketing emails on its clients' behalf.

70.    As described fully above, YAHOO knew of such contractual relationships.

71.    As described fully above, YAHOO engaged in intentional acts to disrupt HOLOMAXX's

contracts with its clients by, *inter alia*, intercepting and blocking all of HOLOMAXX's legitimate emails to its clients' customers.

72.     As described fully above, there was actual disruption of the contracts between HOLOMAXX and its clients. Among other things, HOLOMAXX was unable to perform its contracts, and its clients did not paid HOLOMAXX for the blocked emails that HOLOMAXX attempted to send on their behalf. In addition, the resulting damage to HOLOMAXX's reputation - both as a legitimate email sender, and as a business partner that is able to follow through on its contractual commitments - has caused harm to HOLOMAXX's economic and business relationships.

73.     YAHOO's conduct, as described herein, was performed with malice, oppression, fraud, and reckless indifference. As described fully above, DEFENDANTS' conduct was part of a larger pattern or practice, tending to increase their own profits without regard for legitimate email senders.

74.     As described fully above, HOLOMAXX is informed and believes, and based thereon alleges, that CISCO was aware that YAHOO planned to engage in the conduct described herein, and intended that YAHOO engage in such conduct.

75.     As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation past and future lost profits, and injury to reputation, as well as other consequential damages, in excess of the jurisdictional limit of this court.

76.     YAHOO is continuing to engage in the unlawful actions alleged herein, and unless restrained and *enjoined* will continue to do so, causing irreparable harm to HOLOMAXX. It is difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for YAHOO's continuing unlawful acts. HOLOMAXX's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

77.     HOLOMAXX is therefore entitled to:

a.   A preliminary and permanent injunction:

    i.   prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient.

    ii.   requiring YAHOO to forward such emails directly and immediately to the primary inbox of the intended recipient;

    iii.   requiring YAHOO *to provide information to HOLOMAXX* about the grounds for blocking HOLOMAXX's emails;

    iv.   requiring CISCO *to provide information to HOLOMAXX* about the grounds for any information provided to YAHOO and other third parties about HOLOMAXX; and

    v.   requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

b.   Compensatory damages, in an amount to be proven at trial.

c.   Punitive damages.

## FIFTH CAUSE OF ACTION

### (Intentional Interference with Prospective Business Advantage)

### (Against All Defendants)

78.   Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 47 as if set forth herein.

79.   As described fully above, HOLOMAXX maintains economic and business relationships with third parties, pursuant to which (among other things) HOLOMAXX sends marketing emails on their behalf.

80.     As described fully above, such economic and business relationships contain a probable future economic benefit or advantage to HOLOMAXX.

81.     As described fully above, YAHOO knew of the existence of such economic and business relationships.

82.     As described fully above, YAHOO engaged in intentional, wrongful acts to disrupt such economic and business relationships, by, *inter alia*, blocking emails sent by HOLOMAXX to YAHOO users on behalf of HOLOMAXX's commercial clients.

83.     As described fully above, there was actual disruption of such economic and business relationships, in that HOLOMAXX was unable to perform its contracts, and its clients did not paid HOLOMAXX for the blocked emails that HOLOMAXX attempted to send on their behalf.  In addition, the resulting damage to HOLOMAXX's reputation - both as a legitimate email sender, and as a business partner that is able to follow through on its contractual commitments - has caused harm to HOLOMAXX's economic and business relationships.

84.     YAHOO's conduct, as described herein, was performed with malice, oppression, fraud, and reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a larger pattern or practice, tending to increase their own profits without regard for legitimate email senders.

85.     As described fully above, HOLOMAXX is informed and believes, and based thereon alleges, that CISCO was aware that YAHOO planned to engage in the conduct described herein, and intended that YAHOO engage in such conduct.

86.     As a result of YAHOO's conduct, as described herein, HOLOMAXX has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation past and future lost profits, injury to reputation, and injury to reputation, as, as well as other consequential damages.

87.     YAHOO is continuing to engage in the unlawful actions alleged herein, and unless restrained

and *enjoined* will continue to do so, causing irreparable harm to HOLOMAXX.  It is difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for YAHOO's continuing unlawful acts.  HOLOMAXX's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

88.    HOLOMAXX is therefore entitled to:

   a.    A preliminary and permanent injunction:

      i.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including rerouting such emails away from the primary inbox of the intended recipient.;

      ii.    requiring YAHOO to forward such emails directly and immediately to the primary inbox of the intended recipient;

      iii.    requiring YAHOO *to provide information to HOLOMAXX* about the grounds for blocking HOLOMAXX's emails;

      iii.    requiring CISCO *to provide information to HOLOMAXX* about the grounds for any information provided to YAHOO and other third parties about HOLOMAXX; and

      iv.    requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

   b.    Compensatory damages, in an amount to be proven at trial.

   c.    Punitive damages.

## SIXTH CAUSE OF ACTION

### (Violation of California Penal Code §§ 630 *et seq.* - Wiretapping/Eavesdropping)

### (Against All Defendants)

89.     Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 47 as if set forth herein.

90.     As described fully above, HOLOMAXX is informed and believes, and based thereon alleges, that DEFENDANTS intentionally scanned and recorded the contents of confidential emails sent by HOLOMAXX, and attempted to learn the contents of such emails while they were in transit, without the consent of HOLOMAXX or the intended recipients.

91.     DEFENDANTS' conduct, as described herein, was performed with malice, oppression, fraud, and reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a larger pattern or practice, tending to increase their own profits without regard for legitimate email senders.

92.     As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation past and future lost profits, and injury to reputation, as well as other consequential damages, in excess of the jurisdictional limit of this court.

93.     DEFENDANTS are continuing to engage in the unlawful actions alleged herein, and unless restrained and *enjoined* will continue to do so, causing irreparable harm to HOLOMAXX.  It is difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for DEFENDANTS' continuing unlawful acts.  HOLOMAXX's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

94.     HOLOMAXX is therefore entitled to:

   a.     A preliminary and permanent injunction prohibiting DEFENDANTS from intercepting any emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), and/or scanning or recording the contents of such emails.

b.     Compensatory damages, in an amount to be proven at trial, and in no event less than

the greater of the following:  (i) Five thousand dollars; or (ii) Three times the amount

of actual damages sustained by HOLOMAXX.

## SEVENTH CAUSE OF ACTION

**(Violation of California Civil Code §§ 43 *et seq.* - Defamation/Libel)**

**(Against CISCO)**

95.     Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1

through 47 as if set forth herein.

96.     As set forth fully above, CISCO has published statements to third parties about

HOLOMAXX that would tend to injure HOLOMAXX's reputation in the community, and lessen its

profits.  Specifically, HOLOMAXX is informed and believes, and based thereon alleges, that

CISCO has intentionally published, on the internet, "Reputation Scores" and other information

which falsely indicates to YAHOO and other third parties that HOLOMAXX may be sending spam

from the IP Addresses.

97.     As set forth fully above, CISCO published these statements on the internet.

98.     The statements made by CISCO purported to provide factual data about HOLOMAXX.

99.     The statements made by CISCO were false.

100.    CISCO's conduct, as described herein, was performed with malice, oppression, fraud, and

reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a larger

pattern or practice, tending to increase their own profits without regard for legitimate email senders.

101.    As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered,

and continues to suffer, damages in an amount to be proven at trial, including without limitation past

and future lost profits, and injury to reputation, as well as other consequential damages, in excess of

the jurisdictional limit of this court.

102.   HOLOMAXX is therefore entitled to:

   a.   A preliminary and permanent injunction:

      i.   requiring CISCO to correct HOLOMAXX's Reputation Score immediately to reflect that HOLOMAXX sends only legitimate email;

      ii.   requiring CISCO to publish the corrected score in substantially as conspicuous a manner as the previous false statement;

      iii.   prohibiting CISCO from publishing false reports about HOLOMAXX;

      iv.   requiring CISCO *to provide information to HOLOMAXX* to HOLOMAXX about the grounds for HOLOMAXX's Reputation Score, and other information published about HOLOMAXX; and

      v.   requiring CISCO to reconfigure any automated technology to comply with the terms of the Court's order.

   b.   Compensatory damages, in an amount to be proven at trial.

   c.   Punitive damages.

## EIGHTH CAUSE OF ACTION

### (Violation of California Business & Professions Code §§ 17200 *et seq.*)

### (Against All Defendants)

103.   Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 47 as if set forth herein.

104.   By engaging in the conduct described herein, DEFENDANTS have engaged in unlawful, unfair, or fraudulent business acts or practices in violation of California Business & Professions Code §§ 17200 *et seq.*

105.   DEFENDANTS' conduct, as described herein, was performed with malice, oppression, fraud, and reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a

larger pattern or practice, tending to increase their own profits without regard for legitimate email

senders.

106.    As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered,

and continues to suffer, damages in an amount to be proven at trial, including without limitation past

and future lost profits, and injury to reputation, as well as other consequential damages, in excess of

the jurisdictional limit of this court.

107.    HOLOMAXX is therefore entitled to:

    a.    A declaration that:

        i.    HOLOMAXX's current email practices, as set forth herein, are in accord with

           the Can-Spam Act;

        ii.    Emails sent by HOLOMAXX in accord with such practices are not spam; and

        iii.    HOLOMAXX has the right to send such legitimate, non-spam emails directly

           to the intended recipient's primary inbox, without interception,

           deprioritization, blocking, delay, or other interference.

    b.    A preliminary and permanent injunction:

        i.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking,

           delaying, or interfering with emails sent by HOLOMAXX in accordance with

           the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including

           rerouting such emails away from the primary inbox of the intended recipient;

        ii.    requiring YAHOO to forward such emails directly and immediately to the

           primary inbox of the intended recipient;

        iii.    prohibiting DEFENDANTS from scanning or recording the contents of such

           emails;

        iv.    prohibiting DEFENDANTS from publishing false reports about

HOLOMAXX, or about emails sent by HOLOMAXX; and

    v.    requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

    c.    Restitution of any profits resulting to DEFENDANTS from the conduct alleged herein, in an amount to be proven at trial.

    d.    Reasonable attorneys' fees and costs of litigation.

### PRAYER

**WHEREFORE,** Plaintiff HOLOMAXX respectfully requests that the Court enter judgment against DEFENDANTS, and provide Plaintiff HOLOMAXX the following relief:

### ON THE FIRST CAUSE OF ACTION

### (Violation of 18 U.S.C. §§ 2510 *et seq.* - The Wiretap Act)

### (Against All Defendants)

1. A declaration that:

    a.    HOLOMAXX's current email practices, as set forth herein, are in accord with the Can-Spam Act;

    b.    Emails sent by HOLOMAXX in accord with such practices are not spam;

    c.    HOLOMAXX has the right to send such legitimate, non-spam emails directly to the intended recipient's primary inbox, without interception, deprioritization, blocking, delay, or other interference; and

    d.    DEFENDANTS are prohibited from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including rerouting such emails away from the primary inbox of the intended recipient.

2. A preliminary and permanent injunction:

a. prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient.

b. requiring YAHOO to forward such emails directly and immediately to the primary inbox of the intended recipient;

c. requiring YAHOO *to provide information to HOLOMAXX* about the grounds for blocking HOLOMAXX's emails;

d. requiring CISCO *to provide information to HOLOMAXX* about the grounds for any information provided to YAHOO and other third parties about HOLOMAXX; and

e. requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

3. Compensatory damages, in an amount to be proven at trial, but in no event less than the statutory minimum provided for damages at 18 U.S.C. §§ 2510 *et seq.*

4. Reasonable attorneys' fees and costs of litigation.

5. Punitive damages.

## ON THE SECOND CAUSE OF ACTION

### (Violation of 18 U.S.C. §§ 2701 *et seq.* - The Stored Communications Act)

### (Against All Defendants)

1. A declaration that:

a. HOLOMAXX's current email practices, as set forth herein, are in accord with the Can-Spam Act;

b. Emails sent by HOLOMAXX in accord with such practices are not spam;

c. HOLOMAXX has the right to send such legitimate, non-spam emails directly to the

intended recipient's primary inbox, without interception, deprioritization, blocking, delay, or other interference; and

d. DEFENDANTS are prohibited from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient.

2. A preliminary and permanent injunction:

a. prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient;

b. requiring YAHOO to forward such emails directly and immediately to the primary inbox of the intended recipient;

c. requiring YAHOO *to provide information to HOLOMAXX* about the grounds for blocking HOLOMAXX's emails;

d. requiring CISCO *to provide information to HOLOMAXX* about the grounds for any information provided to YAHOO and other third parties about HOLOMAXX; and

e. requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

3. Compensatory damages, in an amount to be proven at trial, but in no event less than the statutory minimum provided for damages at 18 U.S.C. §§ 2510 *et seq.*

4. Reasonable attorneys' fees and costs of litigation.

5. Punitive damages.

## ON THE THIRD CAUSE OF ACTION

**(Violation of 18 U.S.C. §§ 1030 *et seq.* - Computer Fraud)**

**(Against All Defendants)**

1.    A preliminary and permanent injunction:

    a.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including rerouting such emails away from the primary inbox of the intended recipient;

    b.    requiring YAHOO to forward such emails directly and immediately to the primary inbox of the intended recipient;

    c.    requiring YAHOO *to provide information to HOLOMAXX* about the grounds for blocking HOLOMAXX's emails;

    d.    requiring CISCO *to provide information to HOLOMAXX* about the grounds for any information provided to YAHOO and other third parties about HOLOMAXX; and

    e.    requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

2.    Compensatory damages, in an amount to be proven at trial.

## ON THE FOURTH CAUSE OF ACTION

**(Intentional Interference with Contract)**

**(Against All Defendants)**

1.    A preliminary and permanent injunction:

    a.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including rerouting such emails away from the primary inbox of the intended recipient;

b.   requiring YAHOO to forward such emails directly and immediately to the primary inbox of the intended recipient;

c.   requiring YAHOO *to provide information to HOLOMAXX* about the grounds for blocking HOLOMAXX's emails;

d.   requiring CISCO *to provide information to HOLOMAXX* about the grounds for any information provided to YAHOO and other third parties about HOLOMAXX; and

e.   requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

2.   Compensatory damages, in an amount to be proven at trial.

3.   Punitive damages.

## ON THE FIFTH CAUSE OF ACTION

### (Intentional Interference with Prospective Business Advantage)

### (Against All Defendants)

1.   A preliminary and permanent injunction:

a.   prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including rerouting such emails away from the primary inbox of the intended recipient;

b.   requiring YAHOO to forward such emails directly and immediately to the primary inbox of the intended recipient;

c.   requiring YAHOO *to provide information to HOLOMAXX* about the grounds for blocking HOLOMAXX's emails;

d.   requiring CISCO *to provide information to HOLOMAXX* about the grounds for any information provided to YAHOO and other third parties about HOLOMAXX; and

e.      requiring DEFENDANTS to reconfigure any automated technology to comply with

the terms of the Court's order.

2.    Compensatory damages, in an amount to be proven at trial.

3.    Punitive damages.

## ON THE SIXTH CAUSE OF ACTION

**(Violation of California Penal Code §§ 630 *et seq.* - Wiretapping/Eavesdropping)**

**(Against All Defendants)**

1.    A preliminary and permanent injunction prohibiting DEFENDANTS from intercepting any

emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103

U.S.C. §§ 7701 et seq.), and/or scanning or recording the contents of such emails.

2.    Compensatory damages, in an amount to be proven at trial, and in no event less than the

greater of the following:  (i) Five thousand dollars; or (ii) Three times the amount of actual

damages sustained by HOLOMAXX.

## ON THE SEVENTH CAUSE OF ACTION

**(Violation of California Civil Code §§ 43 *et seq.* - Defamation/Libel)**

**(Against CISCO)**

1.    A preliminary and permanent injunction:

a.      requiring CISCO to correct HOLOMAXX's Reputation Score immediately to reflect

that HOLOMAXX sends only legitimate email;

b.      requiring CISCO to publish the corrected score in substantially as conspicuous a

manner as the previous false statement;

c.      prohibiting CISCO from publishing false reports about HOLOMAXX;

d.      requiring CISCO to provide information to HOLOMAXX about the grounds for

HOLOMAXX's Reputation Score, and other information published about

HOLOMAXX; and

e.   requiring CISCO to reconfigure any automated technology to comply with the terms of the Court's order.

2.   Compensatory damages, in an amount to be proven at trial.

3.   Punitive damages.

### ON THE EIGHTH CAUSE OF ACTION

**(Violation of California Business & Professions Code §§ 17200 *et seq.*)**

**(Against All Defendants)**

1.   A declaration that:

a.   HOLOMAXX's current email practices, as set forth herein, are in accord with the Can-Spam Act;

b.   Emails sent by HOLOMAXX in accord with such practices are not spam; and

c.   HOLOMAXX has the right to send such legitimate, non-spam emails directly to the intended recipient's primary inbox, without interception, deprioritization, blocking, delay, or other interference.

2.   A preliminary and permanent injunction:

a.   prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient;

b.   requiring YAHOO to forward such emails directly and immediately to the primary inbox of the intended recipient;

c.   prohibiting DEFENDANTS from scanning or recording the contents of such emails;

d.   prohibiting DEFENDANTS from publishing false reports about HOLOMAXX, or

-41-
COMPLAINT

about emails sent by HOLOMAXX; and

e.    requiring DEFENDANTS to reconfigure any automated technology to comply with

the terms of the Court's order.

3.    Restitution of any profits resulting to DEFENDANTS from the conduct alleged herein, in an

amount to be proven at trial.

4.    Reasonable attorneys' fees and costs of litigation

## **ON ALL CAUSES OF ACTION**

1.    Such other relief as the court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff HOLOMAXX

demands trial by jury in this action of all issues so triable.

DATED: 10-25, 2010                          ERIK S. SYVERSON, ATTORNEY AT LAW

                                            By:
                                                Erik S. Syverson
                                            Attorneys for Plaintiff Holomaxx Technologies
                                            Corporation, a Pennsylvania S Corporation