ANN MARIE MORTIMER (SBN 169077)
amortimer@hunton.com
DIANA BIASON (SBN 247274)
dbiason@hunton.com
HUNTON & WILLIAMS LLP
550 South Hope Street, Suite 2000
Los Angeles, California  90071-2627
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

JOHN WOODS (Admitted *Pro Hac Vice*)
jwoods@hunton.com
HUNTON & WILLIAMS LLP
1900 K Street, NW
Washington, DC  20006
Phone (202) 955-1500
Fax (202) 778-2201

Attorneys for Defendant
YAHOO! INC.

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOLOMAXX TECHNOLOGIES CORPORATION, a Pennsylvania Corporation<br><br>Plaintiff,<br><br>v.<br><br>YAHOO!, INC., a Delaware corporation, and CISCO IRONPORT SYSTEMS, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO.:  CV10-04926 JF(PG)<br><br>**DEFENDANT YAHOO! INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:             February 25, 2011<br>TIME:             9:00 A.M.<br>JUDGE:           Honorable Jeremy Fogel<br>COURTROOM:  Courtroom 3, 5th Floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 9:00 a.m. on February, 25, 2011 or as soon thereafter as the matter may be heard in Courtroom 3 (Fifth Floor) of the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, Defendant Yahoo! Inc. ("Yahoo!") will, and hereby does, move the Court for an Order dismissing the Complaint of Plaintiff Holomaxx Technologies Corporation, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, without leave to amend.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the declaration of Diana F. Biason, and all pleadings and papers on file, and upon such oral argument as may be made at the hearing on this Motion.

DATED: December 23, 2010                    HUNTON & WILLIAMS LLP

                                            By:  /S/ ANN MARIE MORTIMER
                                                 Ann Marie Mortimer
                                                 Attorneys for Defendant
                                                 YAHOO! INC.

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL BACKGROUND .......................................................................................3

III.   ARGUMENT ...............................................................................................................4

    A.   The Complaint Fails To State Any Plausible Claims Based On Particularized Facts As Required To Pass Rule 12(b)(6) Muster. ..........................................4

    B.   The Communications Decency Act Immunizes Yahoo!'s Conduct. .........................5

        1.   Yahoo! Is An "Interactive Computer Service" ................................................6

        2.   By Plaintiff's Own Allegations, Yahoo! Restricted Access To Or The Availability Of Material That It Considered Objectionable ..............................6

        3.   By Plaintiff's Own Allegations, Yahoo! Acted In Good Faith........................7

    C.   Plaintiff Fails To State A Claim Under The Federal Wiretap Act................................9

    D.   Plaintiff Fails To State A Claim Under The  Stored Communications Act................12

    E.   Plaintiff Fails To State A Claim For Violation Of The Computer Fraud And Abuse Act................................................................................................................13

    F.   All Of Plaintiff's Remaining State Law Claims Are Likewise Barred By The CDA And Fail For Reasons Independent Of The CDA. ..............................................16

        1.   Plaintiff Fails To State A Claim For Intentional Interference With Contract..........................................................................................................16

            a.   Yahoo Has No Obligation To Deliver Plaintiff's Emails. ...................16

            b.   Yahoo!'s Conduct Was Justified As A Matter of Law. ......................17

            c.   Plaintiff Fails To Allege The Essential Elements Of The Claim.........18

        2.   Plaintiff Fails To State A Claim For Intentional Interference With Prospective Business Advantage. ....................................................................19

        3.   Plaintiff Fails To State A Claim For Wiretapping Or Eavesdropping Under California Law. ...................................................................................20

            a.   Plaintiff Fails To State A Wiretapping Claim (§ 631).......................21

            b.   Plaintiff Fails To State An Eavesdropping Claim (§ 632)..................22

         4.   Plaintiff Fails To State A Claim For Violation Of California's Unfair Competition Law. ..........................................................................................22

IV.   CONCLUSION ..........................................................................................................24

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

i

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003) ..................................................18

4

5

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)...........................................................4, 5, 21

6

*Bank of N.Y. v. Fremont General Corp.*,
523 F.3d 902 (9th Cir. 2008) ...........................................................19

7

*Barnes v. Yahoo! Inc.*,
570 F.3d 1096 (9th Cir. 2009) ...........................................................6

8

9

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007)...........................................................4

10

*Bradley v. Google*,
2006 U.S. Dist. LEXIS 94455 (N.D. Cal. Dec. 22, 2006) ...................................9

11

*Bunnell v. Motion Picture Association of America*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) .................................................20

12

13

*Cabanas v. Gloodt Associates*,
942 F. Supp. 1295 (E.D. Cal. 1996)....................................................17

14

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ...........................................................6

15

16

*Columbia Pictures, Inc. v. Bunnell*,
245 F.R.D. 443 (C.D. Cal. 2007) ........................................................13

17

*Continental Grp., Investment v. Kw Prop. Management, LLC*,
622 F. Supp. 2d 1357 (S.D. Fla. 2009) .................................................14

18

19

*Crowley v. Cybersource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ...........................................9, 12, 13

20

*In re DoubleClick Inc. Privacy Litigation*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)..............................................11, 15

21

22

*e360Insight, LLC v. Comcast Corp.*,
546 F. Supp. 2d 605 (N.D. Ill. 2008) ........................................5, 6, 7, 8, 15, 16

23

24

*Fraser v. Nationwide Mutual Insurance Co.*,
352 F.3d 107 (3rd Cir. 2003) ...........................................................13

25

*Holden v. Hagopian*,
978 F.2d 1115 (9th Cir. 1992) ...........................................................9

26

27

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
2007 WL 4394447 (W.D. Pa. Dec. 13, 2007)........................................9, 10

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

ii

*Jewel Cos., Inc. v. Pay Less Drug Stores Northwest, Inc.*,
    510 F. Supp. 1006 (N.D. Cal. 1981) ....................................................17

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ...........................................................10

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) .............................................13, 14, 15

*MySpace, Inc. v. Wallace*,
    498 F. Supp. 2d 1293 (C.D. Cal. 2007) ..........................................17

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008)
    aff'd, 322 Fed. Appx. 489 (9th Cir. Apr. 2, 2009) .............................5

*Optinrealbig.com, LLC v. Ironport System, Inc.*,
    323 F. Supp. 2d 1037 (N.D. Cal. 2004) .............................................5

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) .........................................................16

*Role Models America, Inc. v. Jones*,
    305 F. Supp. 2d 564 (D. Md. 2004) .................................................15

*Romero v. Countrywide Bank, N.A.*,
    ___ F. Supp. 2d ___, 2010 WL 2985539 (N.D. Cal. Jul. 27, 2010) ...........23

*Rosal v. First Federal  Bank of California*,
    671 F. Supp. 2d 1111 (N.D. Cal. 2009) ...........................................23

*Snow v. DirecTV, Inc.*,
    450 F.3d 1314 (11th Cir. 2006) .......................................................12

*Steve Jackson Games, Inc. v. United States Secret Service*,
    36 F.3d 457 (5th Cir. 1994) ..........................................................10

*Summit Machine Tool Manufacturing Corp. v. Victor CNC System, Inc.*,
    7 F.3d 1434 (9th Cir. 1993) ..........................................................18

*Sussman v. ABC, Inc.*,
    186 F.3d 1200 (9th Cir. 1999) .......................................................12

*In re Toys R Us, Inc., Privacy Litig.*,
    2001 U.S. Dist. LEXIS 16947 (N.D. Cal. Oct. 9, 2001)..........................13

*United States v. Amen*,
    831 F.2d 373 (2d Cir. 1987)..........................................................11

*United States v. Turner*,
    528 F.2d 143 (9th Cir. 1975) .........................................................21

*United States v. Villanueva*,
    32 F. Supp. 2d 635 (S.D.N.Y. 1988)................................................10

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

iii

*White Buffalo Ventures, LLC v. University of Texas*,
420 F.3d 366 (5th Cir. 2005) ..................................................................7

*Zango, Inc. v. Kaspersky Laboratory, Inc.*,
568 F.3d 1169 (9th Cir. 2009) .............................................................5, 16

*Zango, Inc. v. Kaspersky Laboratory, Inc.*,
2007 U.S. Dist. LEXIS 97332 (W.D. Wash. June 6, 2007)................................7

**STATE CASES**

*Atpac v. Aptitude Solutions, Inc.*,
2010 WL 3069255 (E.D. Cal. Aug. 4, 2010).................................................14

*Berryman v. Merit Prop. Management, Inc.*,
152 Cal. App. 4th 1544 (2007) ..............................................................23

*Bradley v. Google, Inc.*,
2006 WL 3798134 (N.D. Cal. Dec. 22, 2006)...............................................21

*Cal-Medicon v. Los Angeles County Medical Association*,
20 Cal. App. 3d 148 (1971) ..................................................................17

*CashCall, Inc. v. Superior Court*,
159 Cal. App. 4th 273 (2008) ................................................................21

*Cel-Technology Commc'n, Inc. v. Los Angeles Cellular Telegraph Co.*,
20 Cal. 4th 163 (1999) ......................................................................23

*Chavez v. Whirlpool Corp.*,
93 Cal. App. 4th 363 (2001) .................................................................23

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
11 Cal. 4th 376 (1995) ....................................................................19, 20

*Dryden v. Tri-Valley Growers*,
65 Cal. App. 3d 990 (1977 ) .................................................................19

*Garcia v. Haskett*,
2006 WL 1821232 (N.D. Cal. June 30, 2006) ...............................................22

*Gentry v. eBay, Inc.*,
99 Cal. App. 4th 816 (2002) ..................................................................6

*Gregory v. Albertson's, Inc.*,
104 Cal. App. 4th 845 (2002) ................................................................23

*Khoury v. Maly's of California, Inc.*,
14 Cal. App. 4th 612 (1993) .................................................................23

*Korea Supply Co v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .....................................................................20

*Lazar v. Hertz Corp.*,
69 Cal. App. 4th 1494 (1999) ................................................................23

iv

*Motorola, Inc. v. Lemko Corp.*,
   2010 WL 960348 (N.D. Ill. March 15, 2010) ........................................................12

*Nakamoto v. Lockheed Martin Corp.*,
   2010 WL 2348634 (N.D. Cal. June 8, 2010) .......................................................11

*Nygard, Inc. v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027 (2008) ...........................................................................18

*People v. Chavez*,
   44 Cal. App. 4th 1144 (1996) .............................................................................21

*People v. Nakai*,
   183 Cal. App. 4th 499 (2010) .............................................................................22

*People v. Ratekin*,
   212 Cal. App. 3d 1165 (1989) ............................................................................21

*Perkins-Carrillo v. Systemax, Inc.*,
   2006 WL 1553957 (N.D. Ga. May 26, 2006) ....................................................11

*Schindler v. Marshfield Clinic*,
   2006 WL 1589647 (W.D. Wis. June 2, 2006) .....................................................17

*Show Management v. Hearst Publishing Co.*,
   196 Cal. App. 2d 606 (1961) ...............................................................................17

*Tuchscher Development Enterprises v. San Diego Unified Port District*,
   106 Cal. App. 4th 1219 (2003) ...........................................................................18

*Westside Ctr. Associates v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) ...............................................................................19

*White Buffalo Ventures, LLC v. University of Texas*,
   2004 WL 1854168 (W.D. Tex. Mar. 22, 2004) ...................................................18

**FEDERAL STATUTES**

15 U.S.C. § 7701 .................................................................................................7

15 U.S.C. § 7707 .................................................................................................7

18 U.S.C. § 1030 ..................................................................................13, 14, 15

18 U.S.C. § 2510 .................................................................................................9

18 U.S.C. § 2511 ..................................................................................9, 10, 11

18 U.S.C. § 2518 ...............................................................................................20

18 U.S.C. § 2701(a) ....................................................................................12, 13

47 U.S.C. § 230(c)(2) ..........................................................................1, 5, 6, 8

Fed. R. Civ. P. 9(b) ...........................................................................................23

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

v

Fed. R. Evid. 201 .................................................................................................................11

## STATE STATUTES

Cal Bus. & Prof. Code § 17200 .........................................................................................22

Cal. Penal Code § 632(a) ....................................................................................................22

Cal. Penal Code § 631....................................................................................................20, 21

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.     INTRODUCTION**

3

This is a lawsuit by a frustrated spammer to attempt to force Defendant Yahoo! Inc.

4

("Yahoo!") to deliver <u>millions</u> of Plaintiff's mass marketing emails <u>each day</u> to Yahoo! customers—

5

namely, users of Yahoo! Mail.  No matter the legal theory Plaintiff advances, Yahoo! has no legal

6

obligation to do so.  Several courts already have confronted similar claims and soundly rejected

7

attempts by mass e-mail marketers to impose civil liability on email service providers like Yahoo!

8

for blocking bulk commercial email.  This Court should as well.

9

Indeed, Congress has spoken directly to the issue presented by this case.  Yahoo!'s efforts to

10

protect its customers and its own systems from a constant barrage of email advertising is expressly

11

immunized by federal law under the "Good Samaritan" provision of the Communications Decency

12

Act ("CDA"), 47 U.S.C. § 230(c)(2).  Through the CDA, Congress authorized providers of email

13

services to block objectionable material, including mass marketing emails, based on their own

14

subjective assessments.  This immunity applies irrespective of whether Plaintiff's emails are

15

properly characterized as "spam," and even if 20/20 hindsight were to show that the proprietary

16

spam filtering techniques Yahoo! uses are either over- or under-inclusive.  Both the CDA and

17

decisional law interpreting it make clear that providers like Yahoo! are not to be second-guessed for

18

the efforts they use to shield their users from an unacceptable level of email marketing efforts by

19

third parties like Plaintiff.  No matter how creatively Plaintiff styles its claims, the clear thrust of its

20

case is that Yahoo! blocked and/or refused to deliver its bulk email.  Because the CDA immunizes

21

this conduct, Plaintiffs' Complaint should be dismissed.

22

Independent of the CDA, each of Plaintiff's claims fails for additional reasons obvious from

23

the face of the Complaint:

24

First, Plaintiff fails to state a claim for violation of the Federal Wiretap Act.  As a threshold

25

matter, Yahoo!'s passive receipt of emails on its own servers does not qualify as an interception

26

under the Act.  Further, Yahoo!'s alleged conduct falls squarely within the "service provider"

27

exemption from the Act, in which Congress made clear that providers of a communication service

28

shall not be liable for interception, disclosure, or use of a communication while rendering the

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

services they provide.  Still further, the consent of Yahoo!'s users that allows Yahoo! to prescreen content that is transmitted over its servers and provide spam filtering nullifies any claim because there can be no Wiretap Act violation where one of the parties to the communication has given consent prior to interception.  Finally, Plaintiff fails to plead the essential elements of "interception" by means of a device, lack of consent, and acquisition during transmission.

Second, Plaintiff has not stated a claim for violation of the Stored Communications Act ("SCA") because it fails to plead the essential elements of the claim—including the unauthorized access of any facility or stored communications—since Yahoo! did nothing more than access its own email servers, according to Plaintiff's allegations.  An email service provider can never be liable for violating the SCA for accessing email on its own systems.  Plaintiff further ignores the plain language of the SCA providing that the consent of Yahoo!'s users for Yahoo! to access communications intended for them bars any claim.  Finally, claims for violation of the Wiretap Act and SCA are mutually exclusive, and Plaintiff fails to plead either adequately.

Third, Plaintiff fails to state a claim against Yahoo! under the Computer Fraud and Abuse Act ("CFAA").  Indeed, it fails to identify even a single computer accessed in violation of the Act.  The only computers Yahoo! accesses to administer email services are its own servers, which it is fully authorized to do without liability under the CFAA.

Fourth, each of Plaintiff's state law claims is barred by the CDA, and, in any event fall independently for failure to state a claim.  Plaintiff has no right—contractual or otherwise—to use Yahoo!'s systems to deliver a single email, nor does Yahoo! have an affirmative legal obligation to deliver any of Plaintiff's emails.  Absent such a right by Plaintiff, or a duty by Yahoo!,  Yahoo! cannot be held to interfere with Plaintiff's contracts, its business expectancies, or otherwise under the state law theories Plaintiff attempts to plead.

With its Complaint, Plaintiff attempts to turn the whole federal statutory scheme governing electronic communications on its head, and to impose through state law claims affirmative legal obligations on Yahoo! that do not exist.  The Court should reject Plaintiff's invitation and dismiss Plaintiff's claims, accordingly.

2

## II.   FACTUAL BACKGROUND

Yahoo! "is an internet service provider ('ISP')" that "hosts email accounts" and "offers . . . email services."[1]  Compl. ¶ 19.  In the ordinary course of its business, Yahoo! takes prophylactic steps to protect the integrity of its network and to screen users from an onslaught of unsolicited, objectionable communications by employing highly proprietary spam-filtering techniques.

As a condition of participating in the Yahoo! network—applicable to both senders and recipients of email since they are using Yahoo!'s systems and computers—users consent to certain standard terms and conditions of service ("TOS"), including a Universal Anti-SPAM policy ("Spam Policy").  The TOS provides in pertinent part:

> You acknowledge that Yahoo! may or may not pre-screen Content, but that Yahoo! and its designees shall have the right (but not the obligation) in their sole discretion to pre-screen, refuse, or remove any Content that is available via the Yahoo! Services. Without limiting the foregoing, Yahoo! and its designees shall have the right to remove any Content that violates the TOS or is otherwise objectionable.  ["Content" is defined as "all information, data, text, software, music, sound, photographs, graphics, video, messages, or other materials" emailed, transmitted, or otherwise made available via Yahoo!'s Services.]

Request for Judicial Notice ("RJN"), Ex. 1 ¶ 6.  Users agree not to use Yahoo!'s services to email unauthorized advertising promotional materials, "junk mail," "spam," or Content that is "otherwise objectionable" (*id.* ¶ 6(a), (g)), and to abide its Spam Policy, which also prohibits the "us[e] [of] Yahoo! computer systems to facilitate the transmission of unsolicited or unauthorized material[,]" including "promotional materials" as well as "junk mail."  RJN, Ex. 2.  The Spam Policy also makes clear, "Nothing in this policy is intended to grant any right to transmit email to or through Yahoo!'s computer systems."  *Id.*

Plaintiff is a self-described mass marketer that attempts to send over 6 million "marketing" emails per day to Yahoo! users.  Compl. ¶ 16.  By Plaintiff's own characterization, Yahoo! users complained consistently and vociferously about Plaintiff's spamming, registering between 6,000-18,000 complaints a day about Plaintiff's marketing activities.  *Id.* ¶ 18.  In an effort to assist Plaintiff in better complying with Yahoo!'s terms of use, Yahoo! both warned Plaintiff about the escalating user complaints and directed Plaintiff to review and implement Yahoo's policy on email

---

[1] Plaintiff's allegations are accepted as true for purposes of this motion only.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    use and best practices.  *Id.* ¶ 41(a), (c).

2        Plaintiff does not allege it ever complied with these best practices.  Nor does Plaintiff allege

3    that Yahoo! deviated in any way from its standard policies in filtering Plaintiff's emails as spam.

4    The application of Yahoo!'s usual and customary filtering techniques, triggered by the virtual tidal

5    wave of Plaintiff's mass marketing emails and resulting Yahoo! user complaints, coupled with

6    Plaintiff's apparent failure to bring its practices in conformity with Yahoo!'s policies, resulted in the

7    blockage of "most" of Plaintiff's emails by Yahoo! servers, prior to delivery.  *See id.*[2]

8    **III.    ARGUMENT**

9        **A.    The Complaint Fails To State Any Plausible Claims Based On Particularized**

10           **Facts As Required To Pass Rule 12(b)(6) Muster.**

11       As the Supreme Court recently clarified, Rule 12(b)(6) is not a toothless tiger; simply

12   incanting the elements of a claim is not sufficient to survive a pleading challenge.  "To survive a

13   motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

14   claim to relief that is plausible."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. v.*

15   *Twombly*, 550 U.S. 544, 570 (2007) (emphasis added)).  Rejecting the oft-cited myth that a

16   complaint may only be dismissed if it is "beyond doubt" that no set of facts would support the

17   claims, the Supreme Court admonished, "the phrase [no set of facts] is best forgotten as an

18   incomplete, negative gloss on the accepted pleading standard."  *Twombly*, 550 U.S. at 563.  A simple

19   "formulaic recitation of the elements of a cause of action will not do"; rather, an adequate pleading

20   must contain particularized factual allegations that are "enough to raise a right to relief above the

21   speculative level."  *Id.* at 555.

22       In *Iqbal*, the Supreme Court reinforced this focus on the adequacy and plausibility of

23   pleading by emphasizing two important principles of *Twombly* : (1) "Threadbare recitals of the

24   elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [and (2)]

25   where the well pleaded facts do not permit the court to infer more than the mere possibility of

26

27   [2] Plaintiff has filed a similar action against Microsoft Corporation ("Microsoft"), which is also
     pending before this Court.  *Holomaxx Techs. v. Microsoft Corp.*, No. CV 10-04924-JF.  Microsoft
28   has likewise filed a motion to dismiss, also scheduled to be heard on February 25, 2011, raising
     many of the same issues presented in Yahoo!'s motion.

4

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1949-50 (internal citations omitted).  Consistent with these admonitions, this Court need not "accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences."  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008), *aff'd*, 322 Fed. Appx. 489 (9th Cir. Apr. 2, 2009).  Plaintiff does not and cannot meet its pleading burden—its claims are barred by the CDA, which provides Yahoo! with broad immunity for the conduct about which Plaintiff complains, and they likewise fail for numerous reasons independent of CDA immunity.

### B.     The Communications Decency Act Immunizes Yahoo!'s Conduct.

The CDA immunizes Yahoo! for filtering emails directed at its users.  Section 230(c) of the CDA, entitled "Protection for 'Good Samaritan' Blocking and Screening of Offensive Material," provides in pertinent part:

> No provider or user of an interactive computer service shall be held liable on account of –
>
> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be . . . objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph [(A)].

47 U.S.C. § 230(c)(2) (emphasis added).[3]

Courts have interpreted the Good Samaritan provision of the CDA broadly to grant providers of an interactive computer service like Yahoo! immunity for their good faith, subjective decisions to block bulk or otherwise objectionable e-mails.  *See e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 607 (N.D. Ill. 2008) (immunity for ISP's blocking of emails it deemed objectionable, including bulk mail from internet marketing company); *Cf. Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1175 (9th Cir. 2009) (immunity for provider of software that blocks adware).  Broad application of Section 230(c) immunity is mandated because, in enacting the CDA, Congress

---

[3] The original text of 47 U.S.C. § 230(c)(2)(B) refers to "paragraph (1)," but it appears that the reference should instead be to subparagraph (A). *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1173 n.5 (9th Cir. 2009).

intended that "unsolicited and bulk e-mails (whether you call them spam or mass marketing mailings) are the sort of communications an [ISP] could deem to be objectionable." *e360Insight*, 546 F. Supp. 2d at 607.  Based on Plaintiff's own allegations, Yahoo! meets all elements needed to establish CDA immunity here:

### 1.     Yahoo! Is An "Interactive Computer Service"

Section 230 defines an "interactive computer service" as "any information, service, system, or access software provider that provides or enables computer access by multiple users to a computer server…."  47 U.S.C. § 230(f)(2).  Web-based services such as those provided by Yahoo! are routinely held to be interactive computer services for purposes of Section 230.  *See, e.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122-25 (9th Cir. 2003) (matchmaker.com web-based dating service); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 831 n.7 (2002) (eBay web-based auction site). In fact, the Ninth Circuit has already found that Yahoo! is indisputably an "interactive computer service" for purposes of the CDA.  *See Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009) ("Barnes did not contest in the district court that Yahoo! is a provider of an interactive computer service, and we have no trouble concluding that it qualifies as one.").  Yahoo!, therefore, is a "provider" of "interactive computer services" entitled to the protections of Section 230.

### 2.     By Plaintiff's Own Allegations, Yahoo! Restricted Access To Or The Availability Of Material That It Considered Objectionable

Plaintiff alleges that Yahoo!, by filtering and blocking its millions of emails, restricted access to material it sought to deliver to Yahoo! customers.  In short, Plaintiff pleads that Yahoo! has done exactly what Congress immunized it to do in enacting Section 230(c).  For this, Yahoo! cannot be held liable.

In *e360Insight*, the defendant service provider "indiscriminately" blocked all of  plaintiff's emails, refusing to transmit those emails to its customers.  *e360Insight*, 546 F. Supp. 2d at 608.  As in this case, the plaintiff in *e360Insight* rejected the defendant's characterization of it as a "spammer," claiming that despite its compliance with the CAN-SPAM Act, alleged limitation of emails to opt-in users, and adoption of best practices for mass marketing, the defendant unreasonably blocked plaintiff's access to the defendant's service.  Rejecting the very allegations Plaintiff makes

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

6

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

here, the *e360Insight* Court noted that the defendant—like Yahoo!—is a private entity, that "has no obligation to honor the free speech rights of e360"; as such, it cannot be forced to deliver a third party's bulk email. *Id.* at 609.

Plaintiff's allegation that it is a "highly esteemed email service provider" offering a "fully-managed email marketing service" that complies with the CAN-SPAM Act does nothing to alter this analysis or limit Yahoo!'s immunity. Compl. ¶¶ 12, 17. Indeed, the express provisions of the CAN-SPAM Act make clear that it cannot be invoked offensively to limit provider policies designed to filter or block objectionable mass emails:

> Nothing in this Act shall be construed to have any effect on the lawfulness or unlawfulness, under any other provision of law, of the adoption, implementation, or enforcement by a provider of Internet access service of a policy of declining to transmit, route, relay, handle, or store certain types of electronic mail messages.

15 U.S.C. § 7707(c). Thus, "compliance with CAN-SPAM, Congress decreed, does not evict the right of the provider to make its own good faith judgment to block mailings." *e360Insight*, 546 F. Supp. 2d at 608-609; *see also White Buffalo Ventures, LLC v. Univ. of Texas*, 420 F.3d 366, 371, 373 (5th Cir. 2005) (CDA immunity applies irrespective of CAN-SPAM compliance).[4]

### 3.     By Plaintiff's Own Allegations, Yahoo! Acted In Good Faith

Whether Yahoo! was objectively justified in filtering any of Plaintiff's mass e-mailings as junk mail is similarly irrelevant for purposes of Section 230(c) immunity analysis, so long as Yahoo! acted in good faith, because Section 230 applies a <u>subjective</u> standard. *e360Insight*, 546 F. Supp. 2d at 609; *see also Zango, Inc. v. Kaspersky Lab, Inc.,* 2007 U.S. Dist. LEXIS 97332 at *11 (W.D. Wash. June 6, 2007) (application of Section 230(c)(2) immunity "does not require that the material

---

[4] To the extent the CAN-SPAM Act of 2003 is relevant at all, it supports Yahoo!'s position here. As the language of the Act and its legislative history make clear, there are good reasons to allow Internet companies like Yahoo! to employ spam filtering as unchecked spam "decreases the convenience of electronic mail and creates a risk that wanted electronic mail messages. . .will be lost, overlooked, or discarded amidst the larger volume of unwanted messages." 15 U.S.C. § 7701(a)(4). *See also* 15 U.S.C. § 7701(a)(2) ("Unsolicited commercial electronic mail is currently estimated to account for over half of all electronic mail traffic, up from an estimated 7 percent in 2001, and the volume continues to rise. Most of these messages are fraudulent or deceptive in more than one respect."). Congress further noted "the problems associated with the rapid growth and abuse of unsolicited commercial email . . . cannot be solved by Federal legislation alone" but require the "development and adoption of technological approaches . . . ." *Id.* at § 7701(a)(12).

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    actually be objectionable; rather it affords protection for blocking material 'that the provider or user

2    considers to be' objectionable." (citing 47 U.S.C. § 230(C)(2)(a))).  In other words, in the absence of

3    concrete facts evincing bad faith, the provider is granted immunity even if its business practice could

4    be judged overly restrictive, making a factual determination of the reasonableness of Yahoo!'s

5    actions irrelevant for purposes of this motion.  *See e360Insight*, 546 F. Supp. 2d at 607 (Congress

6    passed Good Samaritan provision permitting providers to prevent access to objectionable content

7    since internet providers "feared [that] they might be held liable for blocking too much").  That

8    Yahoo! refused to change its regular business practices or "lower the filtration standard" in response

9    to a complaint of a bulk email sender such as Plaintiff falls far short of the mark of bad faith.  *Id.* 546

10    F. Supp. 2d at 609.

11        To subject every blocking decision to costly, time-consuming litigation would defeat the very

12    purpose of Section 230 immunity: "Under the law, a mistaken choice to block, if made in good faith,

13    cannot be the basis for liability under federal or state law.  To force a provider . . . to litigate the

14    question of whether what it blocked was or was not spam would render § 230(c)(2) nearly

15    meaningless." *Id.* at 609.  Other than bald allegations that Yahoo! acted with malice, oppression,

16    fraud and reckless indifference, nowhere in the Complaint does Plaintiff allege any specific acts of

17    bad faith. To the contrary, the allegations in the Complaint themselves evidence Yahoo's good faith.

18    As Plaintiff acknowledges, Yahoo! directed Plaintiff to its standard "best practices" that could assist

19    it in complying with Yahoo!'s policies and recommended several options (i.e., creating individual

20    filters) that Plaintiff could direct Yahoo! email users to take in order to opt in to receiving Plaintiff's

21    emails.  Despite Plaintiff's apparent unwillingness to adopt these suggestions, Yahoo! offered to re-

22    examine Plaintiff's status in six months.  Compl. ¶ 41.  Although Plaintiff complains that Yahoo!

23    declined to provide details about its proprietary filtering technology (*see id.* ¶30), Yahoo! is under no

24    obligation to educate Plaintiff on more effective spamming and, indeed, would be doing a disservice

25    to its customers if it allowed Plaintiff such insight.

26        While Plaintiff attempts to plead its claims creatively under numerous legal theories, the

27    clear gravamen of its Complaint is that Yahoo! blocked its millions of daily email solicitations.

28    Accordingly, the Court should find that the CDA immunizes this conduct as a matter of law and

8

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   dismiss the Complaint on this basis alone.  Independent of CDA immunity, however, Plaintiff's

2   claims also fail for several, individualized reasons discussed below.

3         **C.**      **Plaintiff Fails To State A Claim Under The Federal Wiretap Act.**

4           To state a claim for interception under the Federal Wiretap Act, a plaintiff must allege the

5   unauthorized: (1) intentional (2) acquisition of (3) the content of an electronic communication (4)

6   through the use of a device (5) at the time of transmission.  18 U.S.C. §§ 2510, 2511.  The Court

7   need not accept as true conclusory allegations of a wiretap violation.  *Holden v. Hagopian,* 978 F.2d

8   1115, 1121 (9th Cir. 1992).

9           As a starting point, Plaintiff fails to allege that an interception took place within the meaning

10  of the Act.  Yahoo!'s administration of emails sent to its servers does not qualify as an actionable

11  interception for purposes of the Act.  *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.,* 2007 WL

12  4394447 at *9-11 (W.D. Pa. Dec. 13, 2007) (dismissal of Wiretap Act claim where defendant had

13  right to monitor emails sent to one of its email addresses to protect users and network); *Bradley v.*

14  *Google, Inc.,* 2006 WL 3798134, at *14 (N.D. Cal. Dec. 22, 2006) (no wiretap claim where provider

15  deleted emails stored on its servers).  To qualify as an "interception," the email must have been

16  captured by a device other than a server on which it was received.  *Crowley v. Cybersource Corp.,*

17  166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (finding no interception under the Wiretap Act where

18  communication was not acquired by "us[e] [of] a device other than the drive or server on which the

19  e-mail was received").  Here, Plaintiff has made no allegation that any "device" other than Yahoo!'s

20  servers were used to "intercept" Plaintiff's email communication; indeed, it is Plaintiff who by its

21  own allegations has purposefully directed its emails at Yahoo!'s servers, attempting to solicit Yahoo!

22  Mail users.  To hold a provider of email services liable for receiving emails on its servers "would be

23  akin to holding that one who picks up a telephone to receive a call has intercepted a

24  communication."  *Id.* at 1269.

25          Moreover, Plaintiff's Complaint contradicts its own cursory interception allegations by

26  stating that Yahoo! accessed emails sent by Plaintiff <u>while they were in electronic storage</u> on Yahoo!

27  servers.  Compl. ¶ 56.  It is black letter law that accessing emails while they are in storage does not

28  qualify as an "interception" under the Act, since for purposes of the Act, interception means

9

acquisition <u>at the time of transmission</u>.  *See Steve Jackson Games, Inc. v. United States Secret Service,* 36 F.3d 457, 460 (5th Cir. 1994).  Electronic communications in storage are specifically excluded from reach of the Act.   In making this distinction, Congress not only carved out access to electronically stored communications as an actionable Wiretap violation, but "deliberately structured [ECPA] to afford electronic communications *in storage* less protection than other forms of communication."  *Id.* at 462-464;  *Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 878 (9th Cir. 2002) (to violate the Wiretap Act an electronic transmission "must be acquired during transmission, not while in electronic storage").  Absent an "interception," there can be no liability.  *See Ideal Aerosmith,* 2007 WL 4394447 at *4 ("It follows that, absent an interception, neither the disclosure nor use of the contents of the use of the communication violates the Wiretap Act.").

Second, Yahoo! is authorized to "intercept, disclose, or use" communications as necessary in the normal course of its business under the Wiretap Act's exemption for "service providers," which states:

> It shall not be unlawful under this chapter for . . . an officer, employee, or agent of a provider of [a] wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service. . . .

18 U.S.C. § 2511(2)(a)(i).

Spam filtering by a provider of email services is the quintessential example of immunized conduct expressly allowed by the service provider exemption of the Act.  Plaintiff admits that Yahoo! is a provider of an electronic communication service whose facilities are used in the transmission of electronic communications.  Specifically, as Plaintiff alleges, "YAHOO hosts email accounts; in fact, YAHOO offers one of the largest (if not *the* largest) email services in the world." Compl. ¶ 19.  Nor can there be any dispute that to the extent an interception occurred at all, it occurred in the normal course of Yahoo!'s business and was necessary to the rendition of Yahoo!'s services: spam filtering is a basic feature of email service in general and, as Plaintiff's lawsuit acknowledges, Yahoo!'s email service in particular.  *Id.*; *see also United States v. Villanueva,* 32 F.

10

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   Supp. 2d 635, 639 (S.D.N.Y. 1988) (service provider authorized to intercept customer

2   communications to protect its rights or property).  As Plaintiff concedes, its emails were blocked by

3   Yahoo!'s automated spam filtering technologies in the normal course of business operation.  Compl.

4   ¶ 40.  Although Plaintiff complains (without any apparent factual basis) that Yahoo!'s filters rely on

5   "cheap and ineffective technologies," Yahoo! did nothing purposefully directed to Plaintiff or to

6   block its emails specifically—to the contrary, Plaintiff describes Yahoo!'s blocking as

7   "indiscriminate"—the very opposite of targeted.  *Id.* at ¶ 40.  Accordingly, the service provider

8   exemption squarely applies to Yahoo! and the conduct Plaintiff challenges here.

9       Third, the consent given by Yahoo!'s customers to allow Yahoo! to pre-screen their email to

10  protect against spam provides yet another independent basis for the failure of Plaintiff's Wiretap Act

11  claim.[5]  Interception of an individual's electronic communications is not unlawful where at least one

12  party to the communication consented to it.  18 U.S.C. § 2511(2)(d) ("It shall not be unlawful . . . to

13  intercept a(n) . . . electronic communication where . . . one of the parties to the communication has

14  given prior consent to such interception . . . .").  The consent exception has been construed broadly,

15  even to include implied consent.  *See In re DoubleClick Inc. Privacy Litig.,* 154 F. Supp. 2d 497, 514

16  (S.D.N.Y. 2001) ("[C]ourts have emphasized that 'consent' must be construed broadly under the

17  Wiretap Act.") (citing *United States v. Amen,* 831 F.2d 373, 378 (2d Cir. 1987)); *Perkins-Carrillo v.*

18  *Systemax, Inc.,* 2006 WL 1553957, at *15 (N.D. Ga. May 26, 2006); *Amen,* 831 F.2d at 378 (no

19  interception where prison inmates impliedly consented to interception as they were "on notice" of

20  prison's interception policy).  Here, Yahoo!'s users consent to allow Yahoo! to pre-screen all

21  Content, including emails, made available via use of Yahoo!'s services.  *See* Part II, *supra*; RJN,

22  Exs. 1 ¶ 6, 3.  This consent—a necessity for any provider of email services to administer its

23  ─────────────────

24  [5] Perhaps in an effort to avoid the issue of consent, Plaintiff fails to reference or attach to the
     Complaint Yahoo!'s Terms of Service (the "TOS"), Universal Anti-Spam Policy and Yahoo! Mail
25  Privacy Policy which are incorporated by reference.  The Court may take judicial notice of these
     documents, which are not subject to genuine dispute as to authenticity, core to the issues at stake,
26  and directly implicated by Plaintiff's claims.  Fed. R. Evid. 201; *Nakamoto v. Lockheed Martin
     Corp.*, 2010 WL 2348634, at *5 (N.D. Cal. June 8, 2010) ("Although a court generally may not
     consider matters beyond the pleadings on a Rule 12(b)(6) motion, when the plaintiff fails to
27  introduce a pertinent document as part of his pleading, the defendant may introduce the exhibit as
     part of his motion attacking the pleadings.") (citations omitted).  Plaintiff has put at issue Yahoo!'s
28  filtering policies and the issue of whether Yahoo! was authorized to access, intercept or block email.
     Compl. ¶¶ 10, 29, 32, 37, 41(a),(c), 50, 56, 63, 90.  Accordingly, judicial notice is appropriate.

network—is fatal to Plaintiff's Wiretap Act claim.

Finally, Plaintiff omits other necessary elements of a Federal Wiretap Act claim.  Each element noted above is critical to relief, and the Court need not accept conclusory allegations that conduct alleged in the Complaint constitutes a violation of the Act.   *Crowley,* 166 F. Supp. 2d at 1268.  Plaintiff defaults to a cursory assertion that Yahoo! has "intentionally intercepted electronic communications sent by Holomaxx, in violation of [the Act]."  Compl. ¶ 48.  Plaintiff fails to plead—because it cannot—use of any device, interception at the time of transmission and lack of consent.  The Complaint is silent as to what—if any—device was used for the alleged interception, silent as to the time of the alleged interception, silent on the issue of consent, and it fails to advance any facts suggesting that Yahoo! acted with the requisite wrongful intent.  "Under section 2511, 'the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for interception—its intended use—was criminal or tortious'. . . .  Where the purpose . . . is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Sussman v. ABC, Inc.,* 186 F.3d 1200, 1202-03 (9th Cir. 1999).  These pleading shortcomings should result in dismissal of Plaintiff's claim.  *See, e.g., Crowley,* 166 F. Supp. 2d at 1269 (dismissing Wiretap Act claim for failure to plead device other than server on which email is received).

### D.       **Plaintiff Fails To State A Claim Under The  Stored Communications Act.**

Seeking to assert a claim under the Stored Communications Act ("SCA"), 18 U.S.C. § 2701(a), Plaintiff alleges that Yahoo! "intentionally exceeded [its] authorization to access facilities through which electronic communication services are provided, and have thereby obtained and prevented authorized access to wire or electronic communications sent by HOLOMAXX while they are in electronic storage in such system."  Compl. ¶ 56.  Plaintiff recites the basic elements of the claim, but again fails to specify what "facilities" Yahoo! purportedly accessed that are not its own servers, which alone merits dismissal.  *See Motorola, Inc. v. Lemko Corp.*, 2010 WL 960348 at *4 (N.D. Ill. March 15, 2010) (Stored Communications Act claim dismissed for failure to plead access without authorization); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1220 (11th Cir. 2006) (affirming dismissal of claim where Plaintiff "did not allege the material elements necessary to state claim under the SCA").

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

12

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1      Further, the SCA itself makes clear, "Subsection (a) of this section does not apply with

2  respect to conduct authorized— (1) by the person or entity providing a wire or electronic

3  communications service; [or] (2) by a user of that service with respect to a communication of or

4  intended for that user."  18 U.S.C. § 2701(c).  Thus, like the Wiretap Act, the SCA likewise provides

5  both an exemption for service providers as well as an exception for user consent.

6      First, under Section 2701(c)(1), Yahoo! cannot violate the Act by accessing its own "facility"

7  or servers as a matter of law.  *Crowley,* 166 F. Supp. 2d at 1272 (provider's access to its own

8  systems is not limited by SCA).  Indeed, "'service providers [may] do as they wish when it comes to

9  accessing communications in electronic storage.'"  *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d

10  107, 114-115 (3rd Cir. 2003) (citation omitted) (email service provider's access to email on its own

11  server is exempted from SCA by 18 U.S.C. § 2701(c)(1)).  Second, under Section 2701(c)(2),

12  Plaintiff's claim must fail because—as discussed above—the intended recipients of Plaintiff's emails

13  are Yahoo! account holders; those customers expressly authorized Yahoo! to pre-screen email

14  pursuant to the TOS.  *See In re Toys R Us, Inc., Privacy Litig.,* No. C00-2746-MMC-2001 U.S. Dist.

15  LEXIS 16947 at *18 (N.D. Cal. Oct. 9, 2001) (dismissing SCA claim where consent was provided).[6]

16      Each of these reasons, independently considered, warrants dismissal of Plaintiff's SCA

17  claim.

18      **E.**      **Plaintiff Fails To State A Claim For Violation Of The Computer Fraud And**

19          **Abuse Act.**

20      Like Plaintiff's other claims, Plaintiff's Computer Fraud and Abuse Act ("CFAA") claim for

21  violation of 18 U.S.C. §§ 1030, *et seq.*, is fatally defective.  The stated purpose of the CFAA is to

22  enhance the government's ability to prosecute computer crimes by prohibiting conduct ranging from

23  hacking, to disruption of computer functionality, to stealing information.  *See, e.g., LVRC Holdings*

24  *LLC v. Brekka,* 581 F.3d 1127, 1130-31 (9th Cir. 2009) (CFAA designed to criminalize information

25

26  _____

[6] Still further, Plaintiff cannot plead both a Federal Wiretap and SCA theory based on the same
27  predicate conduct.  *See, e.g., Columbia Pictures, Inc. v. Bunnell,*  245 F.R.D. 443, 450 (C.D. Cal.
2007) (conduct cannot both violate the Wiretap Act and SCA as the theories of interception at
28  transmission or access to storage are mutually exclusive).

theft and computer destruction by hackers).  Plaintiff strays far from the CFAA's goals and reach in attempting to convert the Act's criminal prohibition on hacking and computer mischief into a civil claim against the provider of an email service for protecting its users and systems by filtering spam. *See, e.g.*, *Atpac v. Aptitude Solutions, Inc.,* 2010 WL 3069255, *6 (E.D. Cal. Aug. 4, 2010) (holding CFAA should be construed narrowly based on Supreme Court's admonition "against interpreting criminal statutes in surprising and novel ways that impose unexpected burdens on defendants").

Nor has Plaintiff alleged the requisite elements of a CFAA claim.  To plead a claim under the civil remedy provisions of the CFAA for losses of at least $5,000 in value, Plaintiff must allege that Yahoo! (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that it (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication) and that (5) there was a loss to one or more persons during a one-year period of at least $5,000.  *LVRC Holdings LLC,* 581 F.3d at 1132.  To prove a violation of Section 1030(a)(4), Plaintiff must show a "knowing" "intent to defraud."  *Id.*

Although the language of the Complaint loosely paraphrases 18 U.S.C. § 1030(a)(2) by claiming that Yahoo! "intentionally exceeded their authorization to access computers used for interstate . . . commerce, and obtained information from such computers" (Compl. ¶ 63), Plaintiff does not identify any "knowing" or "wrongful" conduct, any provision of the Act violated, any actual damages, or even what computers were allegedly accessed.  Plaintiff fails to identify any specific computer(s) accessed for good reason.  The only computers Yahoo! accesses in the provision of its email services are its own.  Plaintiff acknowledges that its emails "were stopped at 'SMTP time,' *i.e.*, they were refused by YAHOO servers before any of the Emails had the chance to reach their end users."  Compl. ¶ 31 (emphasis added).  A provider's access of its own servers is not, and could never be, prohibited conduct under the CFAA.  Yahoo! of course is permitted "to control and define authorization to access its own computer systems."  *Cont'l Grp., Inv. v. Kw Prop. Mgmt, LLC,* 622 F. Supp. 2d 1357, 1372 (S.D. Fla. 2009).  Dismissing an almost identical CFAA claim in a similar lawsuit brought against Comcast (which had filtered the plaintiff's bulk email), another District Court explained:

It is . . . impossible to see the allegations here as stating that Comcast intentionally

14

accesses a computer without authorization. Unless these computers operate in non-standard ways, the initiation of access is laid at e360's door, not at Comcast's.

*e360Insight*, 546 F. Supp. 2d at 608.  Moreover, the act of receiving email is not for purposes of the CFAA the same as "accessing" a computer.  Indeed, the passive act of receiving electronic information does not qualify as "accessing" a computer at all under the Act.  *Role Models Am., Inc. v. Jones,* 305 F. Supp. 2d 564, 567 n.4 (D. Md. 2004).  With this limitation in mind, Plaintiff has failed to plead actionable access by Yahoo!.  Without access, there can be no claim.

Further, Plaintiff does not dispute that Yahoo! has authorization to use its own computers to administer Plaintiff's emails.  At most, Plaintiff alleges that Yahoo! should administer them in a different way than it allegedly does (*i.e.,* deliver them to Yahoo! users inboxes).  The Ninth Circuit has held that where a person has authorization to access a computer and handle a particular document, that person does not act "without authorization or exceed authorized access" by accessing the computer to handle the document in an improper (or even unlawful) fashion.  *LVRC Holdings LLC*, 581 F.3d at 1134-35 (dismissing § 1030(a)(2) and (a)(4) claims against a disloyal employee who used his access to his employer's computer to email his wife files to use in a competing business).  It is thus no surprise that when the Complaint alleges that Yahoo! "accessed computers on which HOLOMAXX's confidential email communications were stored, and . . . also . . . obtained information therefrom, without the consent of either HOLOMAXX or the intended recipients" (Compl. § 37), it does <u>not</u> allege that this access was without authorization or in excess of authorization.  Missing this critical element, the claim should be dismissed.

Finally, Plaintiffs' CFAA claim fails to allege adequately the remaining elements of Section 1030(a)(4).  Plaintiff's allegation that Yahoo!'s "conduct . . . was performed with . . . fraud . . . tending to increase their own profits" (Compl. ¶ 64), does not even rise to a threadbare recital of the elements of a CFAA fraud claim, which apply only to a person who (i) "knowingly and with intent to defraud" (ii) "accesses a protected computer without authorization, or exceeds authorized access," and (iii) "by means of such conduct furthers the intended fraud and obtains anything of value."  18 U.S.C. § 1030(a)(4).  Besides failing to plead any facts showing access or acting in excess of authority, the Complaint also fails to plead whether any access to any particular computer caused

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

15

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    damages to meet the statutory threshold.  *See In re DoubleClick Privacy Litig.,* 154 F. Supp. 2d at

2    525-26 (stark allegation of damage to goodwill and reputation insufficient to meet pleading

3    requirements of CFAA).  For all of these reasons, Plaintiff's CFAA claim should be dismissed.

4        **F.    All Of Plaintiff's Remaining State Law Claims Are Likewise Barred By The**

5             **CDA And Fail For Reasons Independent Of The CDA.**

6            As discussed previously, the CDA completely immunizes Yahoo! against all claims

7    associated with Yahoo!'s use of spam filtering technologies; none of the state law claims alleged by

8    Plaintiff—no matter how styled—can limit the protection granted by Section 230.  *See, e.g., Zango*,

9    568 F.3d at 1177 ("[W]e have interpreted § 230 to cover business torts."); *Perfect 10, Inc. v. CCBill*

10   *LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007) (finding CDA § 230 immunity against state unfair

11   competition action).  Plaintiff's state law claims fail for the following, independent reasons:

12           **1.    Plaintiff Fails To State A Claim For Intentional Interference With**

13                **Contract.**

14           Even aside from CDA immunity, Plaintiff's claim for intentional interference with contract

15   still fails for at least three independent reasons: (1) Yahoo! has no legal duty to deliver Plaintiff's

16   emails; (2) Yahoo!'s use of spam filtering technology and resulting blockage of Plaintiff's emails

17   was justified and privileged as a matter of law; and (3) Plaintiff has failed to plead facts sufficient to

18   demonstrate intentional interference with a contract.

19                **a.    Yahoo Has No Obligation To Deliver Plaintiff's Emails.**

20           Underlying Plaintiff's claim for intentional interference is the assumption that Yahoo! had an

21   affirmative obligation to act in a way that would either facilitate or allow Plaintiff to maximize its

22   profits under contracts that pay Plaintiff for delivering mail to Yahoo! users.  No such duty exists,

23   under California law or otherwise, and Yahoo! cannot be held liable for failing to act to maximize

24   Plaintiff's profits where it had no legal obligation to do so.  *See e360Insight*, 546 F. Supp. 2d at 609

25   n. 3 (provider has no obligation to deliver messages or run advertisements, finding no cases where

26   "refusal to allow a plaintiff to run an advertisement in a medium with wide circulation . . .

27   constitutes a tortious interference").  Plaintiff has no right to use Yahoo!'s systems, contractual or

28   otherwise, to deliver its email.  Similarly, Plaintiff has not alleged, and cannot allege, any duty owed

                                                16

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    by Yahoo! to send any of Plaintiff's emails, much less spam, to its subscribers.  Indeed, Plaintiff's

2    use of Yahoo!'s systems is governed by Yahoo!'s TOS and Spam Policy, which each explicitly

3    <u>prohibit</u> use of Yahoo!'s computer systems to facilitate the email transmission of unsolicited or

4    unauthorized material, among other things.  RJN, Exs. 1, 2.  The Spam Policy further <u>disclaims</u> that

5    users shall have no "right" to transmit email to or through Yahoo!'s computer systems.  RJN, Ex. 2.

6    Therefore, in the absence of an affirmative duty to act by Yahoo!, or some right of Plaintiff to use

7    Yahoo!'s computer systems to deliver its millions of daily email solicitations, Plaintiff's claim must

8    fail.  *See, e.g., Schindler v. Marshfield Clinic*, No. 05-C-705-C, 2006 WL 1589647 at * 1 (W.D. Wis.

9    June 2, 2006) (without a showing that the defendant was "duty-bound to perform the acts he alleged

10   it had not performed" motion to dismiss must be granted).

                    **b.    Yahoo!'s Conduct Was Justified As A Matter of Law.**

11        Plaintiff's claim fails for the independent reason that Yahoo!'s conduct was privileged and

12   justified as a matter of law, based not only on Yahoo!'s financial privilege, but also on society's

13   interest in being free from unwanted bulk email.  It is black letter law that "[n]ot every interference

14   with contract or economic advantage is a tort."  *Cabanas v. Gloodt Assocs.*, 942 F. Supp. 1295, 1306

15   (E.D. Cal. 1996).  That an interference is alleged to have occurred is the beginning, not the end of

16   the inquiry, since an interference that is justified is not actionable.  *See Show Mgm't v. Hearst Publ'g

17   Co.*, 196 Cal. App. 2d 606, 612 (1961).  Interference with a contract is justified "when the person is

18   seeking to protect an interest of greater social value than that attached to the stability of the contract

19   involved."  *Jewel Cos., Inc. v. Pay Less Drug Stores Nw., Inc.,* 510 F. Supp. 1006, 1011 (N.D. Cal.

20   1981).   Whether an interference is justified depends on a balancing of the importance of the

21   objective advanced by the interference with the contract and considering all circumstances.  *Cal-

22   Medicon v. Los Angeles County Med. Ass'n*, 20 Cal. App. 3d 148, 152 (1971).

23        In this case, Yahoo! is justified by its own economic interest in being able to provide email

24   services that promote a good user experience (i.e., as free as practicable from bulk email

25   advertisements), and that do not tax its systems and resources.  There is also a broader social interest

26   at stake in reducing exposure to bulk email.  *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1306

27   (C.D. Cal. 2007).  The cost to providers of email services and Internet users has been recognized

expressly by the courts:

> Spam imposes significant economic burdens on ISPs, consumers, and businesses. Left unchecked at its present rate of increase, spam may soon undermine the usefulness and efficiency of e-mail as a communications tool. Massive volumes of spam can clog a computer network, slowing Internet service for those who share that network. ISPs must respond to rising volumes of spam by investing in new equipment to increase capacity and customer service personnel to deal with increased subscriber complaints.

*White Buffalo Ventures, LLC v. Univ. of Texas*, 2004 WL 1854168 at *5 (W.D. Tex. Mar. 22, 2004) (detailing the burden of spam). These burdens fully justify providers in filtering email and doing exactly what Plaintiff says Yahoo! did—refusing to deliver its millions upon millions of email advertisements every day to Yahoo! Mail users.

c.      **Plaintiff Fails To Allege The Essential Elements Of The Claim.**

To state a claim for intentional interference with contract, Plaintiff must plead (1) a valid contract between Plaintiff and a third-party; (2) Yahoo!'s knowledge of the contract; (3) Yahoo!'s intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages. *See, e.g.*, *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1047 (2008). Simply incanting the "magic language" of the requisite elements of the claim is not sufficient to withstand a motion to dismiss. Instead, Plaintiff must plead facts sufficient to establish not only actual knowledge of existing contracts, but a specific relationship that was interfered with, and actual, purposeful interference. *See, e,g, Summit Mach. Tool Mf'g Corp. v. Victor CNC Sys., Inc.,* 7 F.3d 1434, 1442-43 (9th Cir. 1993) (actual knowledge of specific contracts required); *Accuimage Diagnostics Corp. v. Terarecon, Inc.,* 260 F. Supp. 2d 941, 956-57 (N.D. Cal. 2003) (unsupported allegations of interference with unidentified third parties insufficient as a matter of law); *Tuchscher Dev. Enters. v. San Diego Unified Port Dist.,* 106 Cal. App. 4th 1219, 1240 (2003) (striking a complaint where "the record is absent any admissible direct evidence or evidence from which we may infer respondents' actions induced a breach or disruption.").

Plaintiff's pleading fails this test. In place of facts demonstrating that Yahoo!'s action specifically induced the breach of any particular contracts, Plaintiff instead defaults to vague

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

18

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   references to "contracts with commercial clients" that Yahoo! allegedly "knew" about and that were

2   "actually disrupted" because Plaintiff "was unable to perform its contracts and clients did not paid

3   [sic] HOLOMAXX for blocked emails."  Compl. ¶¶ 68-75.  There are no allegations sufficiently

4   identifying any contract or third party with whom Plaintiff contracted.  *See Westside Ctr. Assocs. v.*

5   *Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 523 (1996).  There are no allegations that Yahoo! was

6   aware of the terms of Plaintiff's contracts.  There are no allegations that Yahoo! was "certain or

7   substantially certain" that its spam filtering would lead to an interference.  *See Bank of N.Y. v.*

8   *Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir. 2008).  Finally, there are no allegations

9   demonstrating that <u>Yahoo!</u>'s conduct caused an actual disruption or termination of the contracts

10  Plaintiff refers to with its unidentified customers—if indeed Plaintiff imposes upon itself contractual

11  obligations to third parties guaranteeing that its email ads will actually reach end users, then any

12  disruption is only attributable to Plaintiff since it should be presumed to know that service providers

13  may choose freely to reject bulk mail.  For all of these reasons, Plaintiff's claim should be dismissed.

14        **2.      Plaintiff Fails To State A Claim For Intentional Interference With**

15                  **Prospective Business Advantage.**

16        To state a claim for intentional interference with prospective business advantage, Plaintiff

17  must allege (1) an economic relationship between Plaintiff and some third-person containing the

18  probability of future economic benefit to Plaintiff; (2) knowledge by Yahoo! of an existence of the

19  relationship; (3) intentional acts on the part of Yahoo! designed to disrupt the relationship; (4) actual

20  disruption of the relationship; and (5) resulting damage.  *Della Penna v. Toyota Motor Sales, U.S.A.,*

21  *Inc.,* 11 Cal. 4th 376, 393 (1995).   Plaintiff cannot satisfy this pleading burden.

22        Critically missing from Plaintiff's complaint are facts demonstrating (1) the existence of and

23  Yahoo!'s specific awareness of any particular prospective business relationships; (2) intentional acts

24  by Yahoo! that were "certain or substantially certain" to cause disruption; (3) actual disruption; (4)

25  resulting damage.  The burden is on Plaintiff to not only allege these facts, but make an affirmative

26  showing of causation.  *Dryden v. Tri-Valley Growers,* 65 Cal. App. 3d 990, 997-98 (1977 )

27  (requiring each element be supported by facts showing proximate causation).  Plaintiff has done

28  neither.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Further, missing from Plaintiff's allegations is the required showing that Yahoo!'s conduct was wrongful by some measure beyond the alleged interference itself. *Della Penna*, 11 Cal. 4th 376, 392-393 (1995). An act is independently wrongful it if prohibited by some constitutional, statutory, regulatory, common law, or other determinable legal standard. *Korea Supply Co v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003). Plaintiff fails to identify the independent wrongful conduct it seeks to rely on for this claim. Instead, Plaintiff merely asserts that "YAHOO engaged in intentional, wrongful acts to disrupt such economic and business relationships" and that "YAHOO is continuing to engage in the unlawful actions alleged herein." Compl. ¶¶ 82, 87. Such allegations do not meet the standard set forth in *Korea Supply*. Moreover, to the extent that Plaintiff seeks to rely on its other claims to establish independent wrongful conduct, the instant interference claim still fails because Yahoo!'s conduct was expressly immunized by the CDA and because Plaintiff has failed to identify any duty—under contract, tort, or otherwise—for Yahoo! to deliver its emails. There is none. As discussed above, Plaintiff can point to no right to use Yahoo!'s systems to deliver its mail. Therefore, Yahoo!'s rejection of its emails cannot constitute the necessary "wrongful" conduct required by *Della Penna*.

### 3.    Plaintiff Fails To State A Claim For Wiretapping Or Eavesdropping Under California Law.

First, claims under California Penal Code sections 630, *et seq.*, are expressly preempted by the Federal Wiretap Act, which provides: "The remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications." 18 U.S.C. § 2518(10)(c). *See also Bunnell v. Motion Picture Ass'n of Am.,* 567 F. Supp. 2d 1148 (C.D. Cal. 2007) (federal wiretap act preempts Cal. Penal Code § 631 claim). The Court need look no further to dispose of this claim.

Second, even absent preemption, Plaintiff's Section 631 (wiretapping) and Section 632 (eavesdropping) theories fail as a matter of law since Plaintiff cannot plead the requisite facts to withstand a motion to dismiss. First, neither statute ever was intended to apply to electronic mail, but is instead limited by its plain terms to other instrumentalities. Section 631 applies to wiretapping

20

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   telephones or telegraphs that rely on physical cables or transmission lines; Section 632 applies to

2   eavesdropping on private communications by use of an amplification or other device.  *See, e.g.,*

3   *United States v. Turner*, 528 F.2d 143, 155 (9th Cir. 1975) ("California law makes criminal the

4   tapping of *telegraph or telephone lines*, Cal. Penal Code § 631 . . . .") (emphasis added); *People v.*

5   *Chavez*, 44 Cal. App. 4th 1144, 1150 (1996) ("In order to violate section 631 it is necessary that the

6   intercepted communication be carried over '. . . telegraph or telephone wire, line, cable, or

7   instrument of any internal telephonic communication system . . . .'" (citing Cal. Penal Code § 631

8   (alterations in original)); *People v. Ratekin*, 212 Cal. App. 3d 1165, 1168 (1989) (defining

9   eavesdropping as "the interception of communications by the use of equipment which is not

10  connected to any transmission line").  Yahoo! is aware of no authority holding the reach of these

11  statutes to apply to electronic mail.  Even if Section 630 did apply to email, the fact that <u>consent to</u>

12  <u>screening of emails is a condition of use of the Yahoo! email systems under the applicable</u>

13  <u>provisions of the TOS</u> is fatal to a Section 630 claim.

14              **a.       Plaintiff Fails To State A Wiretapping Claim (§ 631)**

15              Penal Code section 631 prohibits three distinct patterns of conduct: (1) intentional

16  wiretapping; (2) willfully attempting to learn the contents of a communication in transit over a wire;

17  and (3) attempting to use or communicate information obtained as a result of engaging in either of

18  the previous two activities.  Cal. Pen. Code § 631(a); *see also CashCall, Inc. v. Superior Court*, 159

19  Cal. App. 4th 273, 294 (2008) (public policy underlying Penal Code sections 631 and 632 "is to

20  protect individuals' privacy rights against the secret eavesdropping (e.g., monitoring) of their

21  *telephone calls*" (emphasis added)).  Plaintiff fails to allege facts showing any intentional tapping or

22  unauthorized connection resulting from Yahoo!'s own spam filtering methods much less any

23  "willful[]" or "unauthorized" "read[ing]" or "attempt[] to read," or "to learn" "the contents or

24  meaning of any message, report, or communication" "while the same is in transit" and "without . . .

25  consent."  Cal. Pen. Code § 631; *see* Compl. ¶¶ 89-94.  Nor can Plaintiff allege any "unauthorized"

26  conduct because under the TOS, customers authorize Yahoo!'s conduct.  Still further, besides mere

27  conclusory statements, Plaintiff pleads no facts suggesting any attempt by Yahoo! to learn or use the

28  contents of the email messages while they are "in transit" or passing from any "wire, line or cable."

21

*See Bradley v. Google, Inc.*, 2006 WL 3798134 at * 5-6 (N.D. Cal. Dec. 22, 2006) (state wiretapping claim fails for failure to allege interception during transmission).  In fact, Plaintiff alleges that Yahoo! obtained and accessed Plaintiff's communications (and the computers where they <u>were stored</u>).  Compl. ¶¶ 37, 56.  Even before *Iqbal* imposed more stringent pleading requirements, courts rejected unsubstantiated claims that emails were accessed while "in transit," particularly where other aspects of a complaint stated otherwise.  *Cf. Garcia v. Haskett*, 2006 WL 1821232 at * 4 (N.D. Cal. June 30, 2006) (dismissing Federal Wiretap Act claim where plaintiff's allegation that emails were "in transit" was belied by allegation that defendant "intentionally . . . obtained access to Plaintiff's Stored Emails while they were in electronic storage").

### b.    Plaintiff Fails To State An Eavesdropping Claim (§ 632)

The essential elements of a violation of Penal Code § 632 are: (1) the "intentional[]" "eavesdrop[ing]" or "record[ing]"; (2) of a "confidential communication"; (3) "without the consent of the parties"; (4) "by means of any electronic or amplifying or recording device" and regardless of whether the communication "is carried on among the parties in the presence of one another" or by "telegraph, telephone, or other device."  Cal. Penal Code §632(a).   Although Plaintiff attempts to recite the elements of this claim, Plaintiff alleges no facts that Yahoo! used an "electronic or amplifying" device to listen to or record conversation to secretly monitor private communications.  To the contrary, Plaintiff's mass marketing emails cannot qualify as a confidential communication within the meaning contemplated by the statute.  *See, e.g., People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (no expectation of privacy in Yahoo! online chats for § 632 purposes where Yahoo! instructs users that communications may be monitored and are subject to privacy and other terms of use policies).  As in *Nakai,* there can be no § 632 violation where Yahoo!'s TOS disclose and authorize email monitoring and spam filtration.  For all of these reasons, Plaintiff's claims under California Penal Code sections 631 and 632 must fail.

### 4.    Plaintiff Fails To State A Claim For Violation Of California's Unfair Competition Law.

California's Unfair Competition law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal Bus. & Prof. Code §§ 17200, *et seq*.  Plaintiff does not specify the

22

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   prong(s) under which it brings its UCL claim.  Irrespective, it fails under all three, since Plaintiff has

2   failed to allege "with reasonable particularity" conduct that is <u>unfair</u> because it "threatens an

3   incipient violation of an antitrust law. . . otherwise significantly threatens or harms competition";

4   conduct that is <u>fraudulent</u> because it deceives members of the public;[7] or conduct that is <u>unlawful</u>.

5   *Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999); *Berryman v.*

6   *Merit Prop. Mgm't, Inc.,* 152 Cal. App. 4th 1544, 1554 (2007).  It is plainly a tag-along claim,

7   derivative of the same alleged conduct, in which Plaintiff relies on the boilerplate allegation that

8   Yahoo! has "engaged in unlawful, unfair, or fraudulent acts or practices in violation of [Section

9   17200]."  Compl. ¶ 104.  This type of rote pleading is insufficient to survive a motion to dismiss.

10  There are no facts pleaded that Yahoo! did anything to mislead the public (fraudulent conduct), or

11  did anything that "ha[d] an adverse effect on competition" (unfair competition). *Gregory v.*

12  *Albertson's, Inc.*, 104 Cal. App. 4th 845, 856 (2002).  Nor has Plaintiff identified any viable claim of

13  illegality.  In short, Plaintiff has failed to identify a single factual act or legal wrongdoing to plead a

14  UCL claim.  And, here, it is clear that Congress specifically authorized in the CDA the very conduct

15  about which Plaintiff complains.  *See, e.g., Chavez v. Whirlpool Corp.,* 93 Cal. App. 4th 363, 375

16  (2001) (conduct that is not unlawful cannot be unfair); *Lazar v. Hertz Corp.,* 69 Cal. App. 4th 1494,

17  1505-06 (1999) (UCL does not apply to statutorily authorized conduct).

18          In short, Plaintiff cannot convert Yahoo!'s authorized use of spam filtering technology into

19  an actionable UCL claim because there is nothing about that conduct that misleads the public, has an

20  injurious impact on competition, or is unlawful, and Plaintiff has made no serious effort to plead

21  such a claim other than one-sentence recitation of the language of the UCL statute itself.  Plaintiff's

22  claim must therefore fail.  *See, e.g., Khoury v. Maly's of California, Inc.,* 14 Cal. App. 4th 612, 619

23  (1993) (failure to describe particular facts showing deceptive advertising, misleading consumers or

24  unlawful conduct fatal to complaint); *Rosal*, 671 F. Supp. 2d at 1126; *Berryman*, 152 Cal. App. 4th

25  ──────────────────

26  [7] To satisfy the "fraudulent" prong under the UCL, Plaintiff cannot rely on conclusory allegations of wrongdoing, but must meet the heightened pleading standard under Fed. R. Civ. P. 9(b), including

27  alleging the time, place and nature of the fraudulent activities, the actors involved, the nature of the statements involved.  *See, e.g., Rosal v. First Fed. Bank of California,* 671 F. Supp. 2d 1111, 1127 (N.D. Cal. 2009); *Romero v. Countrywide Bank, N.A.,* ___ F. Supp. 2d ___, 2010 WL 2985539 at *

28  15 (N.D. Cal. Jul. 27, 2010).

at 1554.

**IV.   <u>CONCLUSION</u>**

For the reasons stated above, Plaintiff's Complaint should be dismissed in its entirety without leave to amend.  Amendment would be futile in this case.


DATED: December 23, 2010                    HUNTON & WILLIAMS LLP


By:   <u>/S/ ANN MARIE MORTIMER</u>
Ann Marie Mortimer
Attorneys for Defendant
YAHOO! INC.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627