1 Erik S. Syverson (SBN 221933)
PICK & BOYDSTON, LLP
2 617 South Olive Street, Suite 400
Los Angeles, CA 90014
3 Phone: 213-624-1996
Fax: 213-624-9073
4
5 Attorneys for Plaintiff
HOLOMAXX TECHNOLOGIES CORPORATION
6
7
8
9 UNITED STATES DISTRICT COURT

10 NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION
11
12 HOLOMAXX TECHNOLOGIES ) Case No. CV10-04926 JF(PG
CORPORATION, a Pennsylvania S )
13 Corporation, )
)
14 Plaintiff, ) **OPPOSITION TO DEFENDANT YAHOO!**
) **INC.'S MOTION TO DISMISS**
15 v. ) **COMPLAINT PURSUANT TO FED. R.**
) **CIV. P. RULE 12(b)(6**
16 YAHOO!, INC., a Delaware corporation, and )
CISCO IRONPORT SYSTEMS, LLC, a ) Date: February 25, 2011
17 Delaware limited liability company, ) Time: 9:00 a.m.
) Judge: Hon. Jeremy Fogel
18 Defendants. ) Court: Courtroom 3, 5th Floor
)
19 )
)
20 _____ )
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ........................................................................................iii

I.   INTRODUCTION..............................................................................................1

II.  ARGUMENT ......................................................................................................2

    A.   Legal Standard ..........................................................................................2

    B.   Yahoo Is Not Immune Under the Communications Decency Act
        ("CDA")......................................................................................................3

        1.   The Communications *Decency* Act provides immunity for
              filtering inappropriate and offensive materials – *NOT* the
              routine business communications at issue here.....................................4

        2.   The Complaint alleges that Yahoo acted in bad faith – and
              not in good faith. ...................................................................................7

    C.   Holomaxx States a Claim Under Each Cause of Action ...................................9

        1.   Intentional Interference with Contract and Intentional
              Interference with Prospective Business Advantage ...............................9

            a.   Intentional Interference with Contract ("IIC") .......................9

            b.   Intentional Interference with Prospective Business
                 Advantage ("IIPBA") ..................................................................12

        2.   18 U.S.C. §§ 2510 *et seq.* (Federal Wiretap Act) ..................................14

            a.   Holomaxx has properly alleged interception............................14

            b.   Holomaxx is not required to negative any statutory
               exceptions – and Section 2511(2)(a)(i) (the
               "operator exception") does not apply here. ...............................16

            c.   Holomaxx is not required to negative the consent
              exception (and has not alleged consent). ...................................17

             d.   Holomaxx has properly alleged use of a device.......................19

        3.   18 U.S.C. §§ 2701 et seq. (The Stored Communications
              Act) .......................................................................................................19

        4.   18 U.S.C. § 1030 (Computer Fraud & Abuse Act)..............................20

        5.   California Penal Code §§ 630 et seq.
              (Wiretapping/Eavesdropping) ...............................................................21

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1          6.      California Business & Professions Code §§ 17200 *et seq.* .................. 24

2   III.   CONCLUSION.............................................................................................. 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1 **TABLE OF AUTHORITIES**

2 **Federal Cases**

3 *625 3rd St. Assocs., LP v. Alliant Credit Union*, 633 F. Supp. 2d 1040
(N.D. Cal. 2009)............................................................................................................... 13

4
*Acculmage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941
5 (N.D. Cal. 2003)......................................................................................................... 11, 12

6 *Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662 (7th Cir. 2007) .................................. 10

7 *Andersen Consulting LLP v. UOP,* 991 F. Supp. 1041 (N.D. Ill. 1998)........................... 15, 19, 20

8 *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................... 2, 3, 4

9 *Bailey v. Household Fin. Corp.*, 2010 U.S. Dist. Lexis 117866 (S.D. Cal. 2010)........................ 22

10 *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 911 (9th Cir. 2008)...................................... 12

11 *Batzel v. Smith*, 333 F.3d 1018 (9th Cir.2003).................................................................. 4

12 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 2, 3, 4

13 *Boddie v. ABC*, 731 F.2d 333 (6th Cir. 1984)......................................................... 18, 19

14 *Bradley v. Google, Inc.*, 2006 U.S. Dist. Lexis 94455 (N.D. Cal. 2006)................... 15, 16, 22, 23

15 *Cabanas v. Gloodt Assocs.*, 942 F. Supp. 1295 (E.D. Cal. 1996).................................. 10

16 *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443 (C.D. Cal. 2007).......................... 16

17 *Cont'l Grp. v. Kw Prop. Mgmt, LLC,* 22 F. Supp. 2d 1357 (S.D. Fla. 2009) ................................. 21

18 *Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009)........................................................ 2

19 *Crowley v. Cybersource Corp.,* 166 F. Supp. 2d 1263 (N.D. Cal. 2001) .................. 15, 16, 19, 20

20 *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099 (9th Cir. 2006) ......... 13, 24

21 *Doe v. GTE Corp.,* 347 F.3d 655, 657 (7th Cir. 2003) .................................................... 4

22 *Dorr v. Yahoo! Inc.,* 2007 U.S. Dist. Lexis 59126 (N.D. Cal. 2007)............................................ 18

23 *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605 (N.D. Ill. 2008) ................... 8, 9, 10, 21

24 *eBay, Inc. v. Digital Point Solutions, Inc.,* 608 F. Supp. 2d 1156 (N.D. Cal. 2009) .................... 21

25 *Fraser v. Nationwide Mut. Ins. Co,* 352 F.3d 107 (3d Cir. 2003)................................... 20

26 *Garcia v. Haskett,* 2006 U.S. Dist. Lexis 46303 (N.D. Cal. 2006)............................. 15, 16, 22, 23

27 *Goddard v. Google, Inc.*, 2008 U.S. Dist. Lexis 101890 (N.D. Cal. Dec. 17, 2008)
("*Goddard I*").......................................................................................................... 5, 6

28
*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542 (9th Cir. 1990) ............... 3

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

*Holden v. Hagopian,* 978 F.2d 1115 (9th Cir. 1992) ........................................................ 14

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc,* 2007 U.S. Dist. Lexis 91644
    (W.D. Pa. 2007) .............................................................................................................. 15

*In re DoubleClick Inc.,* 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................. 18, 20

*In re Pharmatrak,* 329 F.3d 9 (1st Cir. 2003) .................................................... 14, 17, 19

*In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665 (9th Cir. 2007) ........................... 24

*In re Toys R Us,* U.S. Dist. Lexis 16947 (N.D. Cal. 2001) ............................................. 20

*Jewel Cos., Inc. v. Pay Less Drug Stores Nw., Inc.,* 510 F. Supp. 1006
    (N.D. Cal. 1981) ............................................................................................................. 10

*Jones v. AIG Risk Mgmt.,* 2010 U.S. Dist. Lexis 81662 (N.D. Cal. 2010) ...................... 3

*Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868 (9th Cir. 2002) .............................. 16, 23

*Lucas v. Dep't of Corr.*, 66 F.3d 245 (9th Cir. 1995) ........................................................ 1

*LVRC Holdings LLC v. Brekka,* 581 F.3d 1127 (9th Cir. 2009) .............................. 20, 21

*McKelvey v. United States,* 260 U.S. 353, 357 (1922) ...................................................... 3

*Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, (9th Cir. 2008) ...................... 2

*Molsbergen v. United States,* 757 F.2d 1016 (9th Cir. 1985) ........................................... 3

*Motorola, Inc. v. Lemko Corp.,* 2010 U.S. Dist. Lexis 25778 (N.D. Ill. 2010) ...... 19, 20

*MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293 (C.D. Cal. 2007) ............................... 11

*Nat'l Numismatic Certification, LLC v. eBay, Inc.*, 2008 U.S. Dist. Lexis 109793
    (M.D. Fla. 2008) ............................................................................................................... 6

*Online Policy Group v. Diebold, Inc.,* 337 F. Supp. 2d 1195 (N.D. Cal. 2004) ............ 10

*PAE Gov't Servs., Inc. v. MPRI, Inc.,* 514 F.3d 856 (9th Cir. 2007) ............................... 3

*Perfect 10, Inc. v. CC Bill LLC,* 488 F.3d 1102 (9th Cir.2007) ....................................... 5

*Perfect 10, Inc. v. Google, Inc.*, 2008 U.S. Dist. Lexis 79200 (C.D. Cal. Jul. 16, 2008) .............. 3

*Perkins-Carrillo v. Systemax, Inc.,* 2006 U.S. Dist. Lexis 39894
    (N.D. Ga. May 26, 2006) ............................................................................................... 18

*Pollstar v. Gigmania, Ltd.,* 170 F. Supp. 2d 974 (E.D. Cal. 2000) ............................... 18

*Potter v. Havlicek,* 2007 U.S. Dist. Lexis 10677 (W.D. Ohio 2007) ............................. 15

*Role Models Am., Inc. v. Jones,* 305 F. Supp. 2d 564 (D. Md. 2004) ............................ 21

*Romero v. Countrywide Bank, N.A.,* 2010 U.S. Dist. Lexis 89935 (N.D. Cal. 2010) ................... 24

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

*Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111 (N.D. Cal. 2009) ..................................... 24

*Santiago v. Walls*, 599 F.3d 749 (7th Cir. 2010) ............................................................................. 3

*Schindler v. Marshfield Clinic*, 2006 U.S. Dist. Lexis 37937 (W.D. Wisc. 2006)....................... 10

*Sebastian Int'l, Inc. v. Russolillo*, 128 F. Supp. 2d 630 (C.D. Cal. 2000) .............................. 10, 11

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 U.S. Dist. Lexis 39599
   (N.D. Cal. 2007)............................................................................................................................. 11

*Smith v. TRUSTe*, 2010 U.S. Dist. Lexis 43360 (D.N.J. 2010)........................................................ 7

*Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006) ................................................................. 19

*SOAProjects, Inc. v. SCM Microsystems, Inc.*, 2010 U.S. Dist. Lexis 133596
   (N.D. Cal. 2010).............................................................................................................................. 3

*Specht v. Netscape Comms. Corp.*, 306 F.3d 17 (2nd Cir. 2002)...................................................... 18

*United States v. Councilman*, 418 F.3d 67 (1st Cir. 2005) (*en banc*)........................................... 15

*Steve Jackson Games, Inc. v. United States Secret Serv.*, 36 F.3d 457 (5th Cir. 1994)................ 15

*Summit Mach. Tool Mf'g Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434 (9th Cir. 1993)............... 12

*Sussman v. ABC, Inc.*, 186 F.3d 1200 (9th Cir. 1999) .................................................................... 18

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004)........................................................... 16, 21

*United States v. Amen*, 831 F.2d 373 (2d Cir. 1987) ...................................................................... 18

*United States v. Lowry*, 512 F.3d 1194 (9th Cir. Cal. 2008)............................................................ 3

*United States v. Morris*, 928 F.2d 504 (2d Cir. 1991) .................................................................... 20

*United States v. Szymuszkiewicz*, 2009 U.S. Dist. Lexis 60755 (E.D. Wisc.), *aff'd,*
   *Szymuszkiewicz II*, 622 F.3d 701 (7th Cir. 2010)......................................................................... 15

*United States v. Szymuszkiewicz (Szymusziewicz II)*, 622 F.3d 701 (7th Cir. 2010)......... 14, 15, 18

*United States v. Turner*, 528 F.2d 143 (9th Cir. 1975) ................................................................... 23

*United States v. Villanueva*, 32 F. Supp. 2d 635 (S.D.N.Y. 1988). ............................................... 17

*United States v. Warshak,* 2010 U.S. App. Lexis 25415 (6th Cir. 2010) .......................... 15, 21, 23

*White Buffalo Ventures, LLC v. Univ. of Texas*, 2004 U.S. Dist. Lexis 19152......................... 8, 11

*Wilshire Westwood Assocs. v. ARCO*, 881 F.2d 801 (9th Cir. 1989) ............................................. 16

*Zango v Kaspersky Lab, Inc.*, 2007 U.S. Dist. Lexis 97332 (W.D. Wash.) ("*Zango*
   *I*"), *aff'd* 568 F.3d 1169 (9th Cir. 2009)..................................................................................... 5, 7, 8

*Zango v Kaspersky Lab, Inc.*, 568 F.3d 1169 (9th Cir. 2009) ("*Zango II*")............................. 5, 6, 8

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

**State Cases**

*Cal-Medicon v. Los Angeles County Med. Ass'n*, 20 Cal. App. 3d 148 (1971)............................ 10

*CashCall, Inc. v. Super. Ct.,* 159 Cal. App. 4th 273 (2008) ............................................................ 23

*Cel-Tech Comm., Inc. v. LA Cellular Tel. Co.,* 20 Cal. 4th 163 (1999)........................................... 25

*Della Penna v. Toyota Motor Sales, USA, Inc.,* 11 Cal. 4th 376 (1995) ................................ 12, 13

*Dryden v. Tri-Valley Growers,* 65 Cal. App. 3d 990 (1977) ............................................................. 13

*Korea Supply Co. v. Lockheed Martin Corp,* 29 Cal. 4th 1134 (2003) ......................................... 12

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118 (1990) ........................................ 9

*People v. Chavez,* 44 Cal. App. 4th 1144 (1996).............................................................................. 23

*People v. Nakai,* 183 Cal. App. 4th 499 (2010)........................................................................ 23, 24

*People v. Ratekin,* 212 Cal. App. 3d 1165 (1989) ........................................................................... 23

*Quelimane Co. v. Stewart Title Guar Co,* 19 Cal. 4th 26 (1998)............................................... 9, 12

*Show Mgm't v. Hearst Publ'g Co.,* 196 Cal. App. 2d 606 (1961) .................................................. 10

*Tuchscher Dev. Ents. v. San Diego UPD*, 106 Cal. App. 4th 1219 (2003) .................................. 12

*Westside Center Assocs. v. Safeway Stores 23, Inc.,* 42 Cal. App. 4th 507 (1996) ............... 11, 12

**Federal Statutes**

15 U.S.C. §§ 7701 *et seq.* ("Can-Spam Act") ............................................................... 1, 6, 8, 11

15 U.S.C. § 7703(c) ........................................................................................................................ 8

18 U.S.C. § 1030. ("Computer Fraud & Abuse Act") .................................................. 20, 21, 24

18 U.S.C. § 1030(a)(2)................................................................................................................. 20

18 U.S.C. § 1030(a)(4)................................................................................................................. 20

18 U.S.C. § 1030(e)(6)................................................................................................................. 20

18 U.S.C. §§ 2510 *et. seq.* & §§ 2701–2710
    ("Electronic Communications Privacy Act") ........................................... 15, 17, 19, 22

18 U.S.C. §§ 2510 *et seq.* ("Federal Wiretap Act") .............................................................. *passim*

18 U.S.C. § 2510............................................................................................................................ 14

18 U.S.C. § 2511............................................................................................................................ 14

18 U.S.C. § 2511(2)(a)(i)....................................................................................................... 16, 17

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1   18 U.S.C. § 2511(2)(d) .......................................................................................... 18

2   18 U.S.C. §§ 2701 *et seq.* ("Stored Communications Act") ................................. *passim*

3   18 U.S.C. § 2701(a) ............................................................................................... 19

4   18 U.S.C. § 2707(a) ............................................................................................... 19

5   47 U.S.C. § 230 ("Communications Decency Act") ............................................ *passim*

6   47 U.S.C. § 230(b) .................................................................................................. 4

7   47 U.S.C. § 230(b)(2) .............................................................................................. 2

8   47 U.S.C. § 230(b)(3) .............................................................................................. 7

9   47 U.S.C. § 230(c)(1) ........................................................................................... 5, 6

10  47 U.S.C. § 230(c)(2) ...................................................................................... 2, 5, 6

11  47 U.S.C. § 230(c)(2)(A) ................................................................................. 4, 5, 7

12  47 U.S.C. § 230(c)(2)(B) ...................................................................................... 5-8

13  47 U.S.C. § 230(e)(4) .............................................................................................. 3

14

15  **Federal Regulations**

16  *In re Preserving the Open Internet,* FCC 10-201
            (adopting 47 C.F.R. Part 8, Dec. 21, 2010) ................................................. 2

17

18  **Federal Rules**

19  Fed. R. Civ. Proc. 8(a)(2) ....................................................................................... 2

20  Fed. R. Civ. Proc. 8(e)(2) ....................................................................................... 3

21  Fed. R. Civ. Proc. 8(e)(3) ....................................................................................... 3

22  Fed. R. Civ. Proc. 12(b)(6) .................................................................................

23  Fed. R. Evid. 201 .................................................................................................. 16

24

25  **State Statutes**

26  Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("Unfair Competition Law") .................. 13, 14, 24, 25

27  Cal. Corp. Code § 309(a) ...................................................................................... 10

28  Cal. Penal Code §§ 630 *et seq.* ("Wiretapping/Eavesdropping") ..................... 22, 23, 24

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

Cal. Penal Code § 631 ................................................................................................... 22, 23

Cal. Penal Code § 631(a) ............................................................................................... 23, 24

Cal. Penal Code § 632 ........................................................................................................ 23

Cal. Penal Code § 632(a) ............................................................................................... 23, 24

Cal. Penal Code § 637.2 .................................................................................................... 24

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

# I. **INTRODUCTION**

The gravamen of this action is that Yahoo is intentionally killing Holomaxx's business by blocking its legitimate commercial emails – and the heart of the action is whether Yahoo can kill small businesses like Holomaxx with impunity.

Yahoo engages in inappropriate name-calling, in order to influence the court and distract from the holes in its legal arguments. As alleged in the Complaint, Holomaxx's emails are all solicited, its protocols exceed the requirements of the Can-Spam Act (15 U.S.C. § 7701 *et seq.*), and its email campaigns generate a very low user complaint rate. And as set forth below, "spam" means only *unsolicited* email – yet Yahoo would paint all senders with the same "spammer" brush, because (as alleged by Holomaxx) Yahoo has a bad-faith motive to block legitimate commercial emails.[1]

The Complaint validly states business tort claims, as well as wiretap and fraud claims based on Yahoo's interception of its emails.[2] This case will therefore turn on whether Yahoo can (as it believes) act with impunity – whether it is entitled to blanket immunity, as it proposes (MTD 1:12-19), or whether other businesses can also participate in the competitive marketplace that Congress recognized and intended when it enacted the Communications Decency Act.  47 U.S.C. § 230.

"Spam," and "spammers," are universally reviled – but as any retailer (and many shoppers) will tell you, email is a welcome and necessary tool for marketing a modern business.  Defendant relies heavily on just one Illinois district court case for the proposition that it can block *any* content, including legitimate commercial email.  However, the case law is not as "well-settled" as

---

[1] Yahoo recounts the millions of emails allegedly sent by Holomaxx (and inaccurately characterizes Holomaxx's calculations as "user complaints"), MTD 3:22-25, to distract from Holomaxx's low *rate* of bounced emails, its low sending profile among the billions (or trillions) of emails handled daily by Yahoo, and the fact that (as alleged) Yahoo began intercepting Holomaxx's emails immediately, before any users had a *chance* to complain about them.  Compl. ¶ 31.  Moreover, because Yahoo's filters operate as a "black box," we have only Yahoo's word for the alleged rate of user complaints – and Yahoo's word is highly suspect.  *See,* e.g., MTD 3:26-27 (falsely asserting that Yahoo "warned Plaintiff about . . . user complaints"), despite allegation of immediate blocking.  Finally, although not alleged in the Complaint, Holomaxx's email campaigns ordinarily generate a tremendous *positive* response.

[2] As set forth herein, Holomaxx has stated a claim for all causes of action.  If the Court finds the allegations of the Complaint insufficient in any respect, Holomaxx requests leave to amend. "Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1 | Defendant would have this court believe – and in fact, this very court has stated that 47 U.S.C.

2 | Section 230 (c)(2) does not provide immunity for business-related content.

3 | In enacting Section 230, Congress sought "to preserve the vibrant and competitive free market"

4 | (47 U.S.C. § 230(b)(2)) – but the plain fact is that internet service providers like Yahoo now have

5 | so much power to control the discourse, that permitting them to block emails at whim would be

6 | devastating to both business and private communications – especially to business, where Yahoo

7 | can demand extortionate fees and may act from anticompetitive motives.[3]

8 | Finally, Yahoo argues that Holomaxx's allegations are merely conclusory, overlooking both

9 | explicit pleading rules and the clear allegations of the Complaint. Among other things (and despite

10 | *Iqbal* and *Twombly*), plaintiffs are not required to allege facts that are known only by defendants.

11 | This rule is especially important here, where Yahoo's filters operate as a "black box," so that only

12 | Yahoo knows how and why it blocks commercial emails.

13 | It is the rare email marketer who has both the will and the resources to fight off a giant like

14 | Yahoo. If Yahoo is permitted to block Holomaxx's emails with impunity, it will continue to bully

15 | small businesses, and crush the market, in ways never intended by Congress.

16 | ## II. ARGUMENT

17 | ## A. Legal Standard

18 | All allegations of material fact in the complaint are taken as true and construed in the light most

19 | favorable to the plaintiff, *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); dismissal is

20 | appropriate "only where the complaint lacks a cognizable legal theory or sufficient facts to support

21 | a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir.

22 | 2008). FRCP "8(a)(2) requires only 'a short and plain statement of the claim'"; a complaint "does

23 | not need detailed factual allegations," but "must contain "enough facts to state a claim to relief that

24 | is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); "a claim has

25 | facial plausibility when the plaintiff pleads factual content that allows the court to draw the

26 |

27 | [3] *See In re Preserving the Open Internet,* FCC 10-201 at 37 (adopting 47 CFR Part 8, Dec. 21, 2010) ("The freedom to send and receive lawful content . . . without fear of blocking is essential to

28 | the Internet's openness").

2

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129

2  S. Ct. 1937, 1949 (2009).[4]

3      Importantly, "the federal rules allow plaintiffs to plead inconsistent claims and theories".

4  *SOAProjects, Inc. v. SCM Microsystems, Inc.*, 2010 U.S. Dist. Lexis 133596, *24 (N.D. Cal. 2010)

5  (*citing Molsbergen v. United States,* 757 F.2d 1016, 1018 n.3 (9th Cir. 1985) (FRCP "explicitly

6  authorize[s] litigants to present alternative and inconsistent pleadings.")); FRCP Rules 8(e)(2) &

7  (3); *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) (parties are often

8  uncertain about the facts and the law when filing complaint; "In recognition of these uncertainties. .

9  . . we allow pleadings in the alternative – even if the alternatives are mutually exclusive").

10     Moreover, even after *Iqbal* and *Twombly*, it is improper to dismiss a complaint where lack of

11 specificity is due to facts that plaintiff cannot know for certain without discovery. *Santiago v.*

12 *Walls*, 599 F.3d 749, 758-59 (7th Cir. 2010); *cf. Jones v. AIG Risk Mgmt.*, 2010 U.S. Dist. Lexis

13 81662, *13-14 (N.D. Cal. 2010) (where facts known only by defendants, plaintiff should be

14 afforded discovery and opportunity to amend pleadings) (citations omitted).

15     Finally, Holomaxx is not required to negative any exceptions. "It is a 'settled rule' that [a]

16 pleading . . . need not negative the matter of an exception . . . , and that it is incumbent on one who

17 relies on such an exception to set it up and establish it.'" *United States v. Lowry,* 512 F.3d 1194,

18 1199 (9th Cir. Cal. 2008) (quoting *McKelvey v. United States*, 260 U.S. 353, 357 (1922).

19 **B.  Yahoo Is Not Immune Under the Communications Decency Act ("CDA")[5]**

20     The Communications Decency Act should not even be considered on a rule 12(b)(6) motion.

21 *Perfect 10, Inc. v. Google, Inc.*, 2008 U.S. Dist. Lexis 79200, *22 (C.D. Cal. Jul. 16, 2008)

22 ("[P]reemption under the CDA is an affirmative defense that is not proper to raise in a Rule

23

24 [4] In general, a court ruling on a motion to dismiss is limited to the four corners of the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).
25 Yahoo has requested judicial notice of its purported terms of service, privacy policy, and anti-spam policy; *see* Holomaxx's Opposition to RJN ("Opp. to RJN"), detailing why such notice is
26 inappropriate.

27 [5] Although not stated explicitly by Yahoo, the Communications Decency Act does not extend to Holomaxx's federal claims under the Wiretap Act and the Stored Communications Act.  47 U.S.C.
28 § 230(e)(4).

OPPOSITION TO YAHOO, INC.'S
                                                                          MOTION TO DISMISS

1  12(b)(6) motion.") (*citing Doe v. GTE Corp.,* 347 F.3d 655, 657 (7th Cir. 2003) ([CDA immunity]

2  is an affirmative defense that plaintiff is not required to plead around)); *compare Twombly,* 550

3  U.S. at 556 (plaintiff must plead agreement in antitrust case); *Iqbal,* 129 S. Ct. at 1948 (plaintiff

4  must plead discriminatory purpose in *Bivens* action).

5      Even if the issue of CDA protection were properly before the Court, Yahoo's argument fails

6  because it is not entitled to immunity under the CDA (47 U.S.C. § 230), as follows:  (i) the

7  Decency Act permits providers to restrict only truly inappropriate and offensive materials (like

8  pornography, graphic violence, or harassment) – and *not* the routine business communications at

9  issue in this case; and (ii) Section (c)(2)(A) requires that the defendant entered into the blocking in

10 good faith, and the Complaint alleges that Yahoo acted in bad faith.  Compl. ¶¶ 9, 19-20, 31, 39-41,

11 105.

12  **1.  The Communications *Decency* Act provides immunity for filtering inappropriate and**

13      **offensive materials – *NOT* the routine business communications at issue here.**

14      As its name suggests, the Communications Decency Act was not (as Yahoo would have it)

15 enacted to provide service providers with complete immunity to block routine business

16 communications (MTD 1:12-19), even when such providers abuse their power to protect their share

17 of the market; instead, it "was enacted 'to control the exposure of minors to indecent material' on

18 the Internet."[6] *Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir.2003).  Section 230 provides:

19

20 [6] A few notable themes underlie the enactment of the Communications Decency Act:  (i) the
   preservation of a "vibrant and competitive free market" (§ 230(b)(1)-(2)); (ii) "user control" (§

21 230(b)(3)-(4)); and (iii) the protection of children and others threatened by "inappropriate online
   material," including "obscenity, stalking, and harassment" (§ 230(b)(3)-(5)).  Section 230(b) states

22 the policies underlying the Act:

23      (1) to promote the ***continued development of the Internet*** and other interactive computer
          services and other interactive media;  ¶

24      (2) to preserve ***the vibrant and competitive free market*** that presently exists for the Internet
25          and other interactive computer services, unfettered by Federal or State regulation;

26      (3) ***to encourage the development of technologies which maximize user control over what
          information is received by individuals, families, and schools*** who use the Internet and
27          other interactive computer services;

28      (4) to remove disincentives for the development and utilization of blocking and filtering

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

(c) **Protection for 'Good Samaritan' blocking and screening of *offensive* material -**

(1) **Treatment of publisher or speaker** – No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) **Civil liability** – No provider or user of an interactive computer service shall be held liable on account of –

(A) any action voluntarily taken *in good faith* to restrict access to or availability of material that the provider or user considers to be *obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable*, whether or not such material is constitutionally protected; or

(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph [(A)].

(Emphasis added.)  Note the content limitations contained in section (c)(2)(A), identifying "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable" materials.  Section 230(c)(1) "contains no such limitations"; however, because it governs only publication, it does not apply here.  *Goddard v. Google, Inc.*, 2008 U.S. Dist. Lexis 101890, *1-27 (N.D. Cal. Dec. 17, 2008) ("*Goddard I*").  Cases decided under section (c)(1) are therefore inapposite.  *E.g., Perfect 10, Inc. v. CC Bill LLC*, 488 F.3d 1102 (9th Cir.2007) ((c)(1)).  Similarly, section (c)(2)(B) governs only the provision of filtering instructions and/or software to third parties, *see Zango v Kaspersky Lab, Inc.*, 2007 U.S. Dist. Lexis 97332 (W.D. Wash.) ("*Zango I*"), *aff'd* 568 F.3d 1169 (9th Cir. 2009) ("*Zango II*").  Section (c)(2)(B) borrows section (c)(2)(A)'s content limitations, but does not contain (or borrow) a good faith requirement.  *Id.*  Cases decided under section (c)(2)(B) (like *Zango*) are therefore of limited relevance.

That leaves only section (c)(2)(A) – and any argument that Yahoo is entitled to immunity under section (c)(2)(A) fails, because that section was *not* intended to immunize the blocking of routine business emails, like those sent by Holomaxx.  In *Goddard I*, this Court found, based on the clear

---

technologies that *empower parents to restrict their children's access to objectionable or inappropriate online material*; and

(5) to ensure vigorous enforcement of Federal criminal laws to deter and punish *trafficking in obscenity, stalking, and harassment* by means of computer.

(Emphasis added.)  The Act, which was enacted with the title "Online Family Empowerment," is also titled "Broadcast Obscenity and Violence," and subtitled "Obscene, Harassing, and Wrongful Utilization of Telecommunications Facilities."

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

intent of the Decency Act, that immunity is unavailable under Section 230(c)(2) for business-related content.[7]  2008 U.S. Dist. Lexis 101890, *21-22 (rejecting defendant's argument that § (c)(2) provided immunity even if § 230(c)(1) did not apply) (citing *Nat'l Numismatic Certification, LLC v. eBay, Inc.*, 2008 U.S. Dist. Lexis 109793 (M.D. Fla. 2008) (finding that auctions of counterfeit goods did not qualify as "objectionable" content)).  As stated in *Goddard I:*

> In National Numismatic . . . eBay argued that it was immune from liability based on its policy of removing "objectionable" material under § 230(c)(2).  The district court noted the vagueness of the word "objectionable," and observed that "[i]n the context of section 230, 'objectionable' is preceded by the words 'obscene, lewd, lascivious, filthy, excessively violent, [and] harassing.'" *Id.*  Applying the canon of ejusdem generis, the court concluded that "[i]t is difficult to accept . . . that Congress intended the general term 'objectionable' to encompass an auction of potentially-counterfeit coins when the word is preceded by seven other words that describe pornography, graphic violence, obscenity, and harassment." In the instant case, the relevant portions of Google 's Content Policy require that MSSPs provide pricing and cancellation information regarding their services. *These requirements relate to business norms of fair play and transparency and are beyond the scope of § 230(c)(2).*

*Id.* (emphasis added).  And as stated in *Nat'l Numismatic:*

> One may find an array of items objectionable; for instance, a sports fan may find the auction of a rival team's jersey objectionable.  However, Congress provided guidance on the term "objectionable" by providing a list of seven examples and a statement of the policy behind section 230.  Accordingly, the Court concludes that "objectionable" content must, at a minimum, involve or be similar to pornography, graphic violence, obscenity, or harassment.

2008 U.S. Dist. Lexis 109793, *82.

Section (c)(2) is especially not intended to immunize *providers* (like Yahoo) for filtering routine business content.  Thus, in *Zango II*, the plaintiff (which was under a consent decree due to its website's alleged deceptive practices) alleged that defendant had provided filtering software to users that allowed those *users* to block its website, and the Court affirmed summary judgment under section 230(c)(2)(B). 568 F.3d at 1170.  Judge Fisher, concurring, noted that plaintiff had waived any argument about the "otherwise objectionable" language. *Zango II,* 568 F.3d at 1178.  He warned against extending the court's finding beyond its facts, precisely because permitting *providers* to deem content "otherwise objectionable" might lead to the kind of blanket immunity that Yahoo seeks here:

> [E]xtending immunity beyond the facts of this case could pose serious problems if

---

[7] Note that Congress provided explicit protection from unsolicited "spam" email in the Can-Spam Act, 15 U.S.C. §§ 7701 *et seq.*; it elected not to provide such protection in Section 230.

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

providers of blocking software were to be given free license to *unilaterally* block the dissemination of material by content providers under the literal terms of §230(c)(2)(A). The risk inheres in the disjunctive language of the statute – which permits blocking of "material that the *provider* or *user* considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable . . ." – and the unbounded catchall phrase, "otherwise objectionable." (Citation omitted.)

. . . . Congress plainly intended to give computer users the tools to filter the Internet's deluge of material *users* would find objectionable, in part by immunizing the providers of blocking software from liability. *See* § 230(b)(3). But under the generous coverage of § 230(c)(2)(B)'s immunity language, a blocking software provider might abuse that immunity to block content for anticompetitive purposes or merely at its malicious whim, under the cover of considering such material "otherwise objectionable."

*Id.* (Fisher, J., concurring) (footnote omitted; emphasis in original). In short, section (c)(2)(A) was

drafted to allow *users* to screen out truly objectionable material – *i.e.,* material that might be

considered obscene, violent, or harassing. It was never intended to provide blanket immunity for

providers like Yahoo, which (as alleged here) has blocked Holomaxx's lawful, business-related

conduct unilaterally, "at its malicious whim."

**2. The Complaint alleges that Yahoo acted in bad faith – and not in good faith.**

As set forth above, Holomaxx is not required to plead around the Decency Act, because it is an

affirmative defense; however, the Complaint properly alleges that Yahoo acted in bad faith.

Specifically, Holomaxx alleged that Yahoo blocked its emails based on cheap and overzealous

automated technology, motivated by profit to block the good along with the bad.[8] Compl. ¶¶ 9, 19-

20, 31, 39-41, 105; *see Smith v. TRUSTe,* 2010 U.S. Dist. Lexis 43360, *2 (D.N.J. 2010) (finding

bad faith where defendant allegedly told plaintiff "that he would not have to worry about . . . email

blocking if he subscribed to a higher level of service.").

Yahoo relies on *Zango I* for the notion that it can block email that it merely *considers*

objectionable; however, its argument proves too much. MTD 7:19-8:2. As warned by Judge

---

[8] Yahoo makes much of Holomaxx's use of the word "indiscriminate" to describe its filtering practices, but ignores allegations that both its filtering *and* its failure to respond to legitimate complaints were part of a larger practice, and was enacted with malice (*i.e.,* bad faith). Compl. ¶¶ 40-41, 73. In its fruitless search for an allegation of good faith in the Complaint, Yahoo also mischaracterizes Holomaxx's allegations that it provided useless links to boilerplate "best practices" as actual helpfulness, and entirely disregards allegations that Yahoo continued to provide the same tired links *after Holomaxx informed Yahoo that it was already complying with those best practices.* Compl. ¶ 41(c); *see* MTD 8:18-24; 4:2. Moreover, "indiscriminate" does not necessarily mean "random," as suggested by Yahoo; as used in the Complaint, it rightly describes Yahoo's conduct as "wanton" and "profligate."

1  Fisher in *Zango II*, allowing providers – and not merely *users* – to make this kind of subjective

2  judgment would override Section 230's good-faith exception:  If senders cannot lawfully challenge

3  an ISP's automated, unilateral "determinations" – if an allegation of blocking necessarily implies

4  that the service provider "considers" the blocked content "objectionable" – then no plaintiff can

5  ever succeed against an ISP on a cause of action for blocked content, and Yahoo truly does have

6  blanket immunity to kill small businesses at whim.[9]

7     Yahoo's caselaw on the issue is either distinguishable or entirely inapposite.  As noted above,

8  *Zango* was decided under Section (c)(2)(B), and that section does not contain a good faith

9  requirement; moreover, the Court in *Zango II* found that (even if section (c)(2)(B) required good

10  faith), the plaintiff had waived any good faith argument.  568 F.3d at 1178 & n.1. *E360Insight* is

11  also distinguishable: *E360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill.

12  2008) (judgment on the pleadings; plaintiff's sole allegation of bad faith was that the defendant

13  allowed other companies to send bulk emails, and its affidavit failed to evidence the policy).

14  Unlike *e360Insight*, Holomaxx has specifically alleged that Yahoo profited from its refusal to send

15  Holomaxx's legitimate marketing emails, and that its conduct was part of a larger practice that

16  included providing false information to cover its tracks – moreover, this case has not proceeded to

17

18

19  [9] Yahoo incorrectly argues that Holomaxx's fine reputation and alleged Can-Spam compliance are
   irrelevant.  MTD 7:4-6.  Holomaxx actually alleges that it *exceeds* the requirements of the Can-

20  Spam Act, because (among other things) its emails were all solicited.  Compl. ¶¶ 13-14; even if
   Holomaxx's emails were merely Can-Spam compliant, the Can-Spam Act is relevant, *inter alia*,

21  because it underscores Congress's intent in enacting Section 230.  Specifically, the Can-Spam Act,
   like the Communications Decency Act, was enacted to address truly serious issues, including

22  pornography, child sexual abuse, and fraud. *See* 15 U.S.C. § 7703(c) ("It is the sense of Congress
   that (1) Spam has become the method of choice for those who distribute pornography, perpetrate

23  fraudulent schemes, and introduce viruses, worms, and Trojan horses into personal and business
   computer systems; and (2) the Department of Justice should use all existing law enforcement tools

24  to investigate and prosecute those who send bulk commercial e-mail to facilitate the commission of
   Federal crimes, including the tools contained in chapters 47 and 63 of title 18 (relating to fraud and

25  false statements); chapter 71 of title 18 (relating to obscenity); chapter 110 of title 18 (relating to
   the sexual exploitation of children); and chapter 95 of title 18 (relating to racketeering), as

26  appropriate.").  Yahoo relies on *White Buffalo Ventures, LLC v. Univ. of Texas*, for the principle
   that "CDA immunity applies irrespective of CAN-SPAM compliance"; however, *White Buffalo*

27  was a First Amendment action, and does not even mention the Communications Decency Act.
   *White Buffalo Ventures, LLC v. Univ. of Texas*, 420 F.3d 366, 371, 373 (5th Cir. 2005).

28

8

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1  proof.[10]  Compl. ¶¶ 19-20, 31, 39-40, 105.  Holomaxx has therefore properly alleged bad faith.

2  For all of the reasons above, Yahoo is not entitled to protection under Section 230.

3  **C.  Holomaxx States a Claim Under Each Cause of Action**

4  **1.  Intentional Interference with Contract and Intentional Interference with Prospective**

5  **Business Advantage**

6  Yahoo states a lot of rules about intentional interference with contract and intentional

7  interference with prospective business advantage (most of them incorrectly), and little or no legal

8  precedent (all of it either misstated or entirely irrelevant).  Yahoo also consistently conflates the

9  two torts, and cites cases without providing any factual background or any indication of which

10  cause of action (or which rule) they might apply to.  As set forth below, the Complaint states causes

11  of action for both types of intentional interference.

12  **a.  Intentional Interference with Contract ("IIC")**

13  The elements of a claim for intentional interference with contract are: "(1) a valid contract

14  between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's

15  intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual

16  breach or disruption of the contractual relationship; and (5) resulting damage."  *Pacific Gas &*

17  *Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990).  Holomaxx has pleaded all of the

18  elements of this claim.  Compl. ¶¶ 12-13, 33-34, 44-47, 69-76.

19  Yahoo does not dispute that Holomaxx has pleaded the above elements; instead, it wrongly

20  reads four extra elements into this cause of action:  (i) duty; (ii) justification; (iii) knowledge of

21  particular contracts; and (iv) specific intent.[11]  These "elements" all fail, as set forth below.

22  First, despite Yahoo's forceful rhetoric, duty is not an element of either tort, *see Quelimane Co.*

23  _____

[10] Yahoo quotes *e360Insight* for the principle that it need not "lower its filtration standard," but that
24  language (and that principle) does not appear anywhere in *e360Insight*.  546 F. Supp. at 605.
*E360Insight* is distinguished at Part II.C(1)(b) with respect to the state law claims in that action.

25  [11] Yahoo also adds, without benefit of a citation, that "There are no allegations that Yahoo! was
26  aware of the *terms* of Plaintiff's contracts."  Obviously, this is not an element of the claim.  Yahoo
also apparently argues (tautologically, and again without any authority) that Holomaxx caused its
27  own damages because it should *expect* providers to reject its lawful commercial email at whim.
Yahoo's argument appears to be based on its purported blanket immunity under the Decency Act –
28  although this is precisely the question before the Court.  MTD 19:8-13; *see* Part II.B.

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1  *v. Stewart Title Guar Co,* 19 Cal. 4th 26, 56-58 (1998) (plaintiff who failed to allege duty stated a

2  claim for IIPBA), and Holomaxx need therefore not allege that Yahoo had an obligation to deliver

3  its emails.[12]  (*See* MTD 16:19-17:10.).

4    Second, Holomaxx is not required to plead any lack of justification.  *Online Policy Group v.*

5  *Diebold, Inc.,* 337 F. Supp. 2d 1195, 1205 (N.D. Cal. 2004) (*defendant* may show justification, as

6  affirmative defense to IIC claim) – and "justification," as borne out by Yahoo's own caselaw, must

7  be conferred by either statute or special relationship, *see Cabanas v. Gloodt Assocs.*, 942 F. Supp.

8  1295, 1306 n.13 (E.D. Cal. 1996) ("advisor's privilege"; *see* Cal. Civ. Code § 47); *Jewel Cos., Inc.*

9  *v. Pay Less Drug Stores Nw., Inc.,* 510 F. Supp. 1006, 1011 (N.D. Cal. 1981) (directors' fiduciary

10  duty; Cal. Corp. Code § 309(a)); *Cal-Medicon v. Los Angeles County Med. Ass'n,* 20 Cal. App. 3d

11  148, 152 (1971) (special relationship between medical association and its members) – and *not*

12  merely by the defendant's "own economic interest," *Show Mgm't v. Hearst Publ'g Co.*, 196 Cal.

13  App. 2d 606, 612 (1961) (defendant could not be liable for misrepresenting his own show, but

14  could be liable for actual interference with plaintiff).

15    Even if Yahoo did correctly state the rule, its "justification" argument fails because it is

16  premised on the notion that Holomaxx is sending unsolicited "spam" email – which is both

17

18  [12] Yahoo's authorities on this point are inapposite.  *e360Insight,* 546 F. Supp. at 607 (Illinois law requires *plaintiff* to plead lack of justification or privilege in action for tortious interference with

19  PBA; judgment on the pleadings, with court reviewing evidence); *see Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 667 (7th Cir. 2007) (stating Illinois requirements for tortious interference);

20  *Sebastian Int'l,* 128 F. Supp. 2d at 630 (re reasoning appropriate to 12(b)(6)); *Schindler v. Marshfield Clinic,* 2006 U.S. Dist. Lexis 37937, *1-2 (W.D. Wisc. 2006) (Wisconsin, same

21  pleading requirements).  In addition, Yahoo misrepresents *e360Insight,* by quoting as grounds for its duty argument a passage that actually concerns the question of damages.  MTD 16:24-28.

22  Specifically, Yahoo's quotation is followed directly by the Court's observation that:

23    Usually the prospective economic advantage is far more concrete than selling to [the] public which consists of people on a very, very long opt-in list.  It is illegal to interfere with a fair

24    number of prospects, but usually they are a class of easily identified individuals and usually the interference is that of the defendant interacting directly with the prospective buyers.

25  *E360Insight,* 546 F. Supp. at 609 n.3.  Even if this passage were applicable to duty, it does not

26  prove Yahoo's point, because here, unlike *e360Insight,* Holomaxx has alleged a class of easily identifiable prospects – *and* contracts.  Specifically, Holomaxx has alleged disruption of contracts

27  with clients, who pay it a per-email fee. Compl. ¶¶ 12-13.  Yahoo's purported policies are inadmissible, and in any event would not save Yahoo's duty argument.  *See* Opp. to RJN & Part

28  II.C(2)(c).

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

incorrect and *contrary to the allegations of the Complaint.* MTD 17:24-18:10 (*citing White Buffalo Ventures, LLC v. Univ. of Texas*, 2004 U.S. Dist. Lexis 19152, *16-17 (Mar. 22, 2004) (plaintiff sent *unsolicited* emails; quoted language is legislative history for *the Can-Spam Act*); *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1298-99 (C.D. Cal. 2007) ("phisher" hijacked accounts to send adult-themed spam, in violation of the Can-Spam Act)). As set forth in Part II.B, Section 230 does not provide Yahoo with the kind of blanket immunity that would justify its interference with Holomaxx's transmission of lawful, business-related content.

Third, Holomaxx is not required to plead the names of specific clients. *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 U.S. Dist. Lexis 39599, *11 (N.D. Cal. 2007) (allegation that customers were required to enter into license agreement stating that software could only be used with its chips was sufficient to state a claim for IIC; "While Silicon Image does not identify the customers by name, its allegations are sufficiently specific to place Analogix on notice of the contractual relationship at issue"); of course, it follows that Holomaxx is not required to allege *knowledge* of any specific contract,[13] and Yahoo's purported precedent for this position is accordingly inapposite. *Westside Center Assocs. v. Safeway Stores 23, Inc.,* 42 Cal. App. 4th 507, 510 (1996) (parties presented evidence pretrial, in IIPBA case; where shopping center owner alleged that defendant's abandonment had forced it to sell at a loss, court rejected approach to damages approach based on class of all possible buyers, because "it allows recovery no matter how speculative the plaintiff's expectancy"); *see Sebastian Int'l, Inc. v. Russolillo*, 128 F. Supp. 2d 630, 637 (C.D. Cal. 2000) (rejecting *Westside*'s reasoning on motion to dismiss, because "*Westside* had proceeded past the pleading stage, and therefore its reasoning is inapposite"); *AccuImage Diagnostics Corp. v. Terarecon, Inc*., 260 F. Supp. 2d 941, 946, 956 (N.D. Cal. 2003) (where only alleged "business relationships" were customers for plaintiff's software product, court dismissed IIPBA claim because the allegations were so vague that they failed to indicate even the *nature* of

---

[13] Holomaxx alleged that Yahoo generally knew of its contracts, Compl. ¶¶ 33, 69-70. Holomaxx notes that it would be unreasonable to require full disclosure of its contracts and clients, in view of its implicit allegations that Yahoo has engaged in anticompetitive behavior.

11                                          OPPOSITION TO YAHOO, INC.'S
                                            MOTION TO DISMISS

1  the contract at issue).[14]  As reflected in their fact patterns, both *Westside* and *Acculmage* are IIPBA

2  cases.  Here, unlike *Acculmage*, Holomaxx has alleged the nature of its business relationships:  *I.e.,*

3  contracts with commercial clients who pay it to send emails on their behalf.  Compl. ¶¶12-13.  It

4  follows that, unlike *Westside*, Holomaxx's prospective business advantage was not merely

5  speculative.

6      Fourth, Holomaxx alleged that Yahoo intentionally interfered with its contracts.  Compl. ¶¶ 29-

7  34. Yahoo argues that Holomaxx must allege "actual, purposeful interference," MTD 18:17-19; it

8  isn't clear what caselaw Yahoo relies on, and in fact Yahoo is incorrect.  Holomaxx need only

9  allege that Yahoo knew the interference was certain or substantially certain to occur as a result of

10 its conduct.  *Quelimane,* 19 Cal. 4th at 56 (intentional interference with contract); *see Korea Supply*

11 *Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1156-57, 1162 (2003) (rejecting specific intent

12 requirement in IIPBA case).  With respect to "substantial certainty," Holomaxx need not use that

13 "magic language," and in any event need not allege *Yahoo's* substantial certainty; it is sufficient to

14 allege that Yahoo's *conduct* was substantially certain to lead to interference, *cf. Bank of N.Y. v.*

15 *Fremont Gen. Corp.,* 523 F.3d 902, 911 (9th Cir. 2008) ("the jury may 'infer culpable intent from

16 *conduct* "substantially certain" to interfere with the contract.'") (citation omitted).  Holomaxx has

17 so alleged. Compl. ¶¶ 29-33.

18          **b.  Intentional Interference with Prospective Business Advantage ("IIPBA")**

19     The Complaint also states a cause of action for intentional interference with prospective

20 business advantage. *Della Penna* states the elements as follows: "(1) an economic relationship

21 between the plaintiff and another, 'containing a probable future economic benefit or advantage to

22 plaintiff,' (2) defendant's knowledge of the existence of the relationship, (3) that defendant

23 'intentionally engaged in [wrongful] acts or conduct designed to interfere with or disrupt' the

24

25 [14] *Summit* and *Tuchscher* are even further afield:  *Summit Mach. Tool Mf'g Corp. v. Victor CNC Sys., Inc.,* 7 F.3d 1434, 1436 (9th Cir. 1993) (plaintiff contracted with Chinese company to

26 manufacture lathes it had designed for exclusive sale in the US; "[t]he primary issue at trial was the degree of similarity between Summit's lathes and the lathes sold to [defendant]"); *Tuchscher Dev.*

27 *Ents. v. San Diego UPD,* 106 Cal. App. 4th 1219, 1226, 1240-41 (2003) (Court struck complaint under anti-SLAPP because there was no evidence even of a *contract,* only a negotiating agreement

28 which expired by its terms).

OPPOSITION TO YAHOO, INC.'S
                                                                            MOTION TO DISMISS

1  relationship, (4) actual disruption, and (5) damage to the plaintiff as a result of defendant's acts."
2  *Della Penna v. Toyota Motor Sales, USA, Inc.,* 11 Cal. 4th 376, 380 n.1 (1995). In addition to the
3  elements for IIC (which Holomaxx has properly alleged, *see* Part II.C(1)(a)), Yahoo therefore
4  argues that Holomaxx must plead some wrongful conduct by the defendant.[15]  Yahoo also adds the
5  additional element of causation, in reliance on *Dryden v. Tri-Valley Growers,* 65 Cal. App. 3d 990
6  (1977). Yahoo's arguments fail: As set forth below, Holomaxx has properly pleaded wrongful
7  conduct; of course, Holomaxx has also properly pleaded causation, Compl. ¶ 34, and Yahoo does
8  not provide any legal precedent to the contrary.[16]

9      Wrongfulness does not mean that defendant's conduct must be unlawful; it is sufficient that the
10  conduct alleged be "outside the realm of legitimate business transactions," and "[w]rongfulness
11  may lie in the method used or by virtue of an improper motive." *625 3rd St. Assocs., LP v. Alliant*
12  *Credit Union*, 633 F. Supp. 2d 1040, 1044-45, 1049 (N.D. Cal. 2009) (plaintiff lessor stated a claim
13  where it alleged only that the defendant had a malicious intent to weaken plaintiff's lessee to the
14  point of forcing it into liquidation) (quoting *Della Penna,* 11 Cal. 4th at 380 n.1).

15      Relying on the incorrect notion that Holomaxx must allege some unlawful conduct, Yahoo falls
16  back on its purported CDA protection to establish that its conduct was not wrongful. MTD 20:11
17  (stating boldly, and incorrectly, that "Yahoo's conduct was expressly immunized by the CDA").
18  Even if Yahoo were applying the correct legal standard, its argument fails because Yahoo's
19  conduct is not immune under the Decency Act, *see* Part II.B, and because Holomaxx has alleged
20  that Yahoo's conduct violated state and federal communications statutes, *see* Part II.C.
21  Furthermore, where (as here) the plaintiff has alleged both UCL violations and an IIPBA claim, the
22  UCL violations will serve as the independently wrongful act for the IIPBA claim. *CRST Van*
23  *Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1110 (9th Cir. 2006) (also ruling that

---

24  [15] A claim for IIPBA also substitutes "economic relationship containing a probable future
25  economic benefit," for "existing contract." As set forth in Part II.C(1)(a), Holomaxx has pleaded
    this element. *See also* Compl. ¶¶ 13-14.

26  [16] *Dryden* is inapposite. *Dryden,* 65 Cal. App. 3d at 997-98 (no causation where defendant was a
27  party to the contract, and "performance of the disputed contracts had been abandoned and
    discontinued . . . many months prior" to the alleged interfering conduct). Here, the alleged
28  contracts are continuing, and Yahoo is not a party to the alleged contracts.

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1   alleged IIC violation served as UCL violation).  Thus, Holomaxx has properly pleaded wrongful

2   conduct. Compl. ¶¶ 103-106.

3      As set forth above, Holomaxx has properly alleged claims for both IIC and IIBPA.

4      **2.  18 U.S.C. §§ 2510 *et seq.* (Federal Wiretap Act)**

5      Holomaxx has properly pleaded the elements of a *prima facie* civil case under the federal

6   Wiretap Act ("FWA"), *i.e.*: (i) the intentional acquisition of a wire, oral, or electronic

7   communication (through the use of a device), or (ii) the intentional use or disclosure (or attempted

8   use or disclosure) of the contents of such communication, knowing that it was obtained in violation

9   of the FWA.  18 U.S.C. §§ 2510, 2511; *see, e.g.,* Compl. ¶¶ 10, 29, 49-50.  Yahoo wrongly argues

10  that: (i) Holomaxx must allege that the emails were intercepted contemporaneously, *i.e.,* "in

11  transit", (ii) Yahoo falls within both the "operator exception" and the "consent exception"; (iii)

12  Holomaxx has not properly alleged a device; and (iv) Holomaxx's claims are conclusory.[17]  These

13  arguments all fail, as set forth below.

14      **a.  Holomaxx has properly alleged interception.**

15     Holomaxx has properly alleged interception.  Yahoo mistakenly argues that the Complaint fails

16  to state a claim under the FWA because Holomaxx has not alleged that its emails were blocked "in

17  transit."  First, the FWA does not contain any "in transit" requirement, and "judges ought not add

18  to statutory definitions."  *United States v. Szymuszkiewicz (Szymusziewicz II)*, 622 F.3d 701, 706

19  (7th Cir. 2010) (rejecting contemporaneity requirement because "there is no timing requirement in

20  the Wiretap Act").  Furthermore, Yahoo's "understanding of 'interception' as 'catching a thing in

21  flight' is sensible enough for football, but for email there is no single 'thing' that flies straight from

22  sender to recipient." *Szymuszkiewicz II*, 622 F.3d at 705 (creation of rule forwarding emails from

23  server to defendant's inbox was interception for purposes of FWA).

24      This is because "'[t]echnology has, to some extent, overtaken language.  Traveling the internet,

25  electronic communications are often – perhaps constantly – both "in transit" and "in storage"

26  simultaneously, a linguistic but not a technological paradox.'" *In re Pharmatrak,* 329 F.3d 9, 21-

---

27  [17] Yahoo cites *Holden v. Hagopian* for this point – but *Holden* is a securities case, and does not
28  even mention the FWA.  *Holden v. Hagopian,* 978 F.2d 1115 (9th Cir. 1992).

1  22 (1st Cir. 2003) (interception would be justified even under "contemporaneous" standard, where

2  program "automatically duplicated part of the communication between a user and a pharmaceutical

3  client and sent this information to a third party); *see United States v. Councilman,* 418 F.3d 67, 79

4  (1st Cir. 2005) (*en banc*) (upholding FWA indictment where defendant email provider copied

5  incoming emails from server for his own use, because "the term 'electronic communication'

6  includes transient electronic storage that is intrinsic to the communication process"); *see also*

7  *Garcia v. Haskett,* 2006 U.S. Dist. Lexis 46303, *9-10 (N.D. Cal. 2006) (distinguishing between

8  permanent and temporary storage for purposes of FWA; citing *Councilman* with approval) *and*

9  *Potter v. Havlicek,* 2007 U.S. Dist. Lexis 10677, *7 (W.D. Ohio 2007) (rejecting the distinction

10  between "in transit" and "in storage").

11      Again, Yahoo's cases are not on point. *Ideal Aerosmith, Inc. v. Acutronic USA, Inc,* 2007 U.S.

12  Dist. Lexis 91644, *4-6 (W.D. Pa. 2007) (defendant purchaser of assets in bankruptcy, including

13  employee email addresses, was entitled as successor-in-interest to read emails because it stood in

14  shoes of employer, and monitoring was necessary to ensure that email messages were answered

15  promptly) (citation omitted); *see Andersen Consulting LLP v. UOP,* 991 F. Supp. 1041 (N.D. Ill.

16  1998) (employers are not generally liable under the Electronic Communications Privacy Act

17  ("ECPA"), because they do not provide services to the public);[18] *Bradley v. Google, Inc.*, 2006 U.S.

18  Dist. Lexis 94455, *3-4 (N.D. Cal. 2006) (emails seized from plaintiff's inbox); *Crowley v.*

19  *Cybersource Corp.,* 166 F. Supp. 2d 1263 (N.D. Cal. 2001) (plaintiff sent information directly to

20  the defendant); *see United States v. Szymuszkiewicz,* 2009 U.S. Dist. Lexis 60755, *18 (E.D. Wisc.)

21  (*aff'd, Szymuszkiewicz II,* 622 F.3d at 701) (distinguishing *Crowley* and *Ideal* because they "both

22  concerned defendants who received information directed by the sender *to them;* in neither case did

23  the defendants take any action to re-direct to themselves a communication addressed *to another*")

24  (footnote omitted; emphasis in original); *Steve Jackson Games, Inc. v. United States Secret Serv.,*

25

---

26  [18] Unlike employers, ISP's like Yahoo can be liable under the ECPA – and unlike employees, subscribers enjoy "a reasonable expectation of privacy in the contents of emails 'that are stored

27  with, or sent or received through, a commercial ISP'". *United States v. Warshak,* 2010 U.S. App. Lexis 25415, *43 (6th Cir. 2010) (citation omitted). The ECPA includes both the Wiretap Act and

28  the Stored Communications Act.

15                                          OPPOSITION TO YAHOO, INC.'S
                                                    MOTION TO DISMISS

1  36 F.3d 457, 458 (5th Cir. 1994) (government seized plaintiff's actual computer). Yahoo relies

2  heavily on the broad language of *Konop v. Hawaiian Airlines, Inc.*; however, *Konop* does not

3  concern email blocking at all (or even *email*), and is therefore also inapposite. *Konop v. Hawaiian*

4  *Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002) (defendant allegedly used someone else's login

5  information to access plaintiff's secure website; "the intersection of these two statutes 'is a

6  complex, often convoluted, area of the law," "ill-suited to address modern forms of communication

7  like [a] secure website").[19]

8     The complaint is properly pleaded in any event, because Holomaxx alleges that its emails were

9  intercepted in storage and/or in transit, *e.g.*, Compl. ¶¶ 29, 35, 37, 49-50; as set forth in Part II.A,

10 this is proper because: (i) Holomaxx is not in a position to know the facts; and (ii) alternate

11 pleading is permitted. Holomaxx has properly alleged that Yahoo intercepted, used and disclosed

12 its emails, and has therefore stated a claim under the FWA.

13     **b. Holomaxx is not required to negative any statutory exceptions – and Section**

14        **2511(2)(a)(i) (the "operator exception) does not apply here.**

15    As set forth in Part II.A, Holomaxx is not required to negative any exceptions to the statute.

16 Even if Holomaxx were required to negative such exceptions, Yahoo's argument that Section

17 2511(2)(a)(i) provides immunity to service providers still fails. First, by its own terms, Section

18 2511(2)(a)(i) applies only to "an operator of a switchboard, or an officer, employee, or agent" of a

19

20

---

21 [19] *Konop* offers scant review of modern communications technology; more importantly, *Konop* relies on an incorrect definition of "intercept." Specifically, the Court states that its "conclusion is
22 consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival,'" 302 F.3d at 878 (quoting *Webster's Ninth New Collegiate Dictionary*
23 ("*Webster's*"), *see* Syverson Declaration, Exh. 1); however, *Webster's* actually defines "intercept" as "to stop, seize, or interrupt in progress or course *or* before arrival." Yahoo did allegedly "stop"
24 Holomaxx's emails "before arrival" in users' inboxes; a conclusion that Yahoo "intercepted" those emails is therefore consistent with *Webster's,* as intended by *Konop.* Because the misquoted
25 version may suggest a different result, cases relying on *Konop*'s reasoning must also fail. *E.g., Theofel v. Farey-Jones*, 359 F.3d 1066, 1070 (9th Cir. 2004); *Garcia v. Haskett*, 2006 U.S. Dist.
26 Lexis 46303; *Bradley v. Google, Inc.*, 2006 U.S. Dist. Lexis 94455, *14-15 (N.D. Cal. 2006); *Columbia Pictures, Inc. v. Bunnell,* 245 F.R.D. 443, 450 (C.D. Cal. 2007); *Crowley,* 166 F. Supp.
27 2d at 1269. The Court may take notice of dictionary definitions. FRE Rule 201; *Wilshire Westwood Assocs. v. ARCO*, 881 F.2d 801 (9th Cir. 1989).

28

---

16                    OPPOSITION TO YAHOO, INC.'S
                         MOTION TO DISMISS

provider, acting "in the normal course of his employment."[20]   The only reference to providers in this section is an explicit exception to the exception, which does not apply here: *i.e.,* "a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks."

Second, even if Section 2511(2)(a)(i) applied to providers, Yahoo's argument fails because, despite Yahoo's baseless assertion, Holomaxx has not alleged that Yahoo blocked its emails in the ordinary course of business.  Instead, Holomaxx alleged that Yahoo acted with improper motives, blocking lawful emails and profiting thereby.  Compl. ¶¶ 9, 19-20, 29, 39-40, 105.   Yahoo's argument that it uses the same wrongful conduct to defeat other small businesses, also, *see* MTD 11:4-8, cannot make that wrongful conduct a "normal" business practice.  Furthermore, even if Holomaxx had not alleged an improper purpose, Yahoo's authority for the principle that it may routinely *block* lawful business communications – that it may not merely monitor, but keep such lawful emails from *ever* reaching their intended recipients – is inapposite.  *United States v. Villanueva* (MTD 10:28-11:2) (court in wire fraud case allowed evidence of telephone conversations monitored by AT&T employees as part of investigation into larger fraud scheme).  *United States v. Villanueva,* 32 F. Supp. 2d 635, 640 (S.D.N.Y. 1988).

Holomaxx is not required to negative the operator exception.  Even if Holomaxx were required to negative the exception, it does not apply here.

### c.  Holomaxx is not required to negative the consent exception (and has not alleged consent).

Yahoo next argues, based solely on exhibits not referenced in the Complaint, that users consented to its interception of Holomaxx's emails.  Yahoo's argument fails, for all of the following reasons: (i) consent is an exception to the FWA, and Holomaxx is therefore not required to negative it in the Complaint, *Pharmatrak,* 329 F.3d at 19 ("for the consent exception under the ECPA in civil cases, [] it makes more sense to place the burden of showing consent on the party seeking the benefit of the exception, and so hold"); *see* Part II.A; (ii) the Exhibits are inadmissible

---

[20] Perhaps because it makes clear that Section 2511(2)(a)(i) does not apply to the *provider,* Yahoo omits "an operator of a switchboard" when quoting this section.  MTD 10:14-18.

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1  (*see* Holomaxx's Opposition to Request for Judicial Notice ("Opp. To RJN"); (iii) the Exhibits do

2  not "prove" consent, *id*.; *e.g., Specht v. Netscape Comms. Corp.,* 306 F.3d 17, 28 (2nd Cir. 2002) (re

3  formation defects in online "clickwrap" agreements); and (iv) introduction of the Exhibits would

4  raise factual issues (including issues of contract formation and interpretation) that are inappropriate

5  on a Rule 12(b)(6) motion, Opp. to RJN; *Dorr v. Yahoo! Inc.,* 2007 U.S. Dist. Lexis 59126, *5

6  (N.D. Cal. 2007); *Pollstar v. Gigmania, Ltd.,* 170 F. Supp. 2d 974, 981-82 (E.D. Cal. 2000). The

7  Exhibits are also defective because Yahoo does not allege that they were effective on or before date

8  of the conduct alleged in the Complaint, *see* Opp. to RJN. Yahoo's authorities regarding "implied"

9  consent are not on point. *United States v. Amen,* 831 F.2d 373, 379 (2d Cir. 1987) (consent implied

10  by use of prison phones); *In re DoubleClick Inc.,* 154 F. Supp. 2d 497, 510 (S.D.N.Y. 2001)

11  (consent based on defendant's "technological and commercial relationships with its affiliated

12  websites"); *Perkins-Carrillo v. Systemax, Inc.,* 2006 U.S. Dist. Lexis 39894, *53 (N.D. Ga. May

13  26, 2006) (summary judgment; plaintiff did not identify any telephone calls monitored or recorded

14  by defendant).

15      In addition, the "consent exception" does not apply where such communication is intercepted

16  for the purpose of committing any criminal or tortious act . . . or *for the purpose of committing any*

17  *other injurious act.* 18 U.S.C. § 2511(2)(d) (emphasis added); *see Boddie v. ABC*, 731 F.2d 333,

18  337-38 (6th Cir. 1984) (where defendants broadcast secret recordings as part of an investigative

19  report, allegedly in order to cause plaintiff "insult and injury," and defendants contended they had

20  acted in good faith to preserve evidence of plaintiff's alleged illegal activities, the dispute raised

21  questions of fact for the jury). Here, as in *Boddie*, Holomaxx has alleged that Yahoo intended to

22  injure its business, Compl. ¶¶ 91-92; to the extent that Yahoo disputes the allegation, the dispute

23  raises questions of fact which cannot be decided on a motion to dismiss. *Id.* Yahoo cites *Sussman*

24  *v. ABC* for the proposition that the defendant's purpose must be either criminal or tortious.

25  However, in line with *Boddie, Sussman* arose on a motion for summary judgment (and is therefore

26  inapplicable); moreover, the Court in *Sussman* found that "the existence of a lawful purpose does

27  not mean that the interception is not also for a tortious or unlawful purpose". *Sussman v. ABC,*

28  *Inc.,* 186 F.3d 1200, 1202 (9th Cir. 1999).

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1    Here, as in *Boddie*, Holomaxx has alleged that Yahoo intended to injure its business, Compl. ¶¶

2    70-71, 81-82; to the extent that Yahoo contends otherwise, the dispute raises questions of fact

3    which cannot be decided on a motion to dismiss. *Id.*

4    **d. Holomaxx has properly alleged use of a device.**

5    Holomaxx has properly alleged use of a device because, contrary to Yahoo's position, Yahoo's

6    server can constitute the device. *Pharmatrak*, 329 F.3d at 19 ("Pharmatrak relied on devices such

7    as its web servers" to capture user information); *Szymuszkiewicz II*, 622 F.3d at 707 ("we don't see

8    any need to search for a device that is different from, or not integral to, the legitimate

9    communication"; "the server in Kansas City counts as a device").[21] Holomaxx cannot know, and is

10   therefore not required to allege, Yahoo's use of any other device to acquire its email

11   communications. *See* Part II.A.

12   As set forth above, Holomaxx has properly stated a cause of action under the FWA.

13   **3. 18 U.S.C. §§ 2701 et seq. (The Stored Communications Act)**

14   The Stored Communications Act ("SCA") provides a civil remedy for anyone "who

15   intentionally accesses without authorization a facility through which an electronic communication

16   service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby

17   obtains, alters, or prevents authorized access to a wire or electronic communication while it is in

18   electronic storage in such system . . ." 18 U.S.C. Sections 2701(a) & 2707(a). Holomaxx has

19   properly alleged a claim under the SCA. Compl. ¶¶ 10, 29, 37, 56.

20   Yahoo argues that Holomaxx failed to allege that it exceeded its access, but its authorities do

21   not support its position. *Motorola, Inc. v. Lemko Corp.*, 2010 U.S. Dist. Lexis 25778 (N.D. Ill.

22   2010) (re employer); *see Andersen Consulting LLP v. UOP*, 991 F. Supp. at 1041 (employers are

23   not generally liable under the ECPA, because they do not provide services to the public); *Snow v.*

24   *DirecTV, Inc.*, 450 F.3d 1314, 1316 (11th Cir. 2006) (alleging that defendant visited plaintiff's

25   open website).

26

27   [21] As set forth in Part II.C(2)(a), *Crowley* is inapposite. 166 F. Supp. 2d at 1263 (plaintiff sent
     information directly to the defendant). The Court in *Crowley* considered claims under both the
28   FWA and the SCA, based on the same conduct. *Id.* at 1265.

19                                        OPPOSITION TO YAHOO, INC.'S
                                          MOTION TO DISMISS

1    Yahoo also argues that Holomaxx failed to negative its provider authorization and consent

2  exceptions; these arguments fail here, just as they failed with respect to the FWA. As set forth

3  above, Holomaxx is not required to negative an exception – and again, Defendant's cases are not

4  on point. Like *MotorolaFraser v. Nationwide Mut. Ins. Co.* involved an employer. *Fraser v.*

5  *Nationwide Mut. Ins. Co*, 352 F.3d 107, 111 (3d Cir. 2003); *see Andersen,* 991 F. Supp. at 1041.

6  And (as noted above), in *Crowley,* unlike this case, the plaintiff alleged that he sent his information

7  directly to the defendant. 166 F. Supp. 2d at 1263. And in *Toys R Us,* unlike this action, the

8  plaintiffs actually alleged consent in the complaint. *In re Toys R Us,* U.S. Dist. Lexis 16947 (N.D.

9  Cal. 2001) (plaintiffs alleged websites had consented to allow defendant data collector to collect

10  information from visitors).

11    Yahoo's arguments fail, and Holomaxx has properly alleged a claim under the SCA.

12    **4. 18 U.S.C. § 1030 (Computer Fraud & Abuse Act)**

13    18 U.S.C. Section 1030 (the "CFAA") provides a civil remedy where, *inter alia*, defendant

14  intentionally accesses a computer without authorization or exceeds authorized access, and thereby

15  obtains information from a computer used in interstate communication.[22] § 1030(a)(2). Holomaxx

16  has properly stated a claim under the CFAA. Compl. ¶¶ 10, 37, 62-63.

17    Yahoo apparently believes that an ISP can do whatever it likes with the confidential

18  information stored on its servers – no matter how unlawful or egregious – yet its conduct can never

19  constitute unauthorized access under the CFAA.[23] MTD 13:20-14:6. Yahoo's position is

20  shamefully incorrect. Congress defined "exceeds authorized access" as accessing "a computer *with*

21  authorization and [using] such access to obtain . . . information in the computer that the accesser is

22  not entitled so to obtain . . . ." 18 U.S.C. § 1030(e)(6) (emphasis added); *cf. United States v. Morris,*

23  _____

24  [22] Section 1030(a)(2) does not require that the defendant acted "knowingly and with intent to defraud." § 1030(a)(2). *Compare* MTD 15:24-16:1 (disingenuously basing argument only on elements of Section 1030(a)(4)). Holomaxx has properly alleged damages aggregating at least

25  $5,000 in value during the past year, as required for a civil claim. Compl. ¶¶ 44-45; *see LVRC Holdings LLC v. Brekka,* 581 F.3d at 1130-31. Holomaxx's damages are based on disruption of its contracts with clients. Compl. ¶¶ 44-45. *DoubleClick* is therefore inapposite. 154 F. Supp. 2d at

26  525-26 (alleging damages only to goodwill and reputation).

27  [23] Yahoo alleges that Holomaxx's allegations are conclusory; however, as set forth in Part II.A,

28  Holomaxx is not required to allege facts known only by Yahoo.

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1  928 F.2d 504, 510 (2d Cir. 1991) (holding access unauthorized where it was not "in any way

2  related to [the system's] intended function"). And as stated by this Court: "The . . . CFAA . . . is

3  applied broadly to 'punish those who illegally use computers for commercial advantage.'" *eBay,*

4  *Inc. v. Digital Point Solutions, Inc.,* 608 F. Supp. 2d 1156 (N.D. Cal. 2009). The CFAA therefore

5  offers a remedy to "any person" who suffers loss due to violations of the statute, not just the owner

6  of the computer on which the emails were stored. *Theofel,* 359 F.3d at 1066 (defendants liable

7  where ISP's provided emails in response to their fraudulent subpoena).

8      Users have a "reasonable expectation of privacy" in information held on an ISP's servers,

9  (*Warshak,* 2010 U.S. App. Lexis at 25415); ISP's therefore are not entitled to obtain such

10  information. *See Theofel,* 359 F.3d at 1071 (finding subpoena not limited to litigation invalid).

11  However, much of Yahoo's authority concerns employers, not ISP's – and is therefore irrelevant.

12  *Cont'l Grp. v. Kw Prop. Mgmt, LLC,* 22 F. Supp. 2d 1357, 1372 (S.D. Fla. 2009) (employee stole

13  trade secrets for her new employer; court stated that "an *employer* . . . clearly has a right to control

14  and define authorization to access its own computer systems") (emphasis added); *LVRC Holdings*

15  *LLC v. Brekka,* 581 F.3d 1127, 1128 (9th Cir. 2009) (on summary judgment, no evidence that

16  defendant had exceeded authorization); *Role Models Am., Inc. v. Jones,* 305 F. Supp. 2d 564, 567

17  n.4 (D. Md. 2004). Moreover, the passage that Yahoo quotes from *Cont'l* (MTD 14:23-24)

18  concerned the right of a *plaintiff* in a CFAA action to access its own computers, not the defendant.

19  22 F. Supp. 2d at 1372. Yahoo's reliance on *Role Models* is similarly misplaced: The Court in that

20  action did state that "receiving email is not the same as 'accessing' a computer," but the Court was

21  not referring to emails that were received on the defendant's server (as Yahoo suggests); it was

22  referring to emails that (unlike this action) had been sent from the defendant's server by a third

23  party, and received on the defendant's *own computer*. 305 F. Supp. 2d at 567*; see eBay, Inc.,* 100

24  F. Supp. 1058 at 1070. *E360Insight* is also inapposite: The Court in that case rejected the theory

25  that by bouncing emails sent by plaintiff, the defendant had accessed *plaintiff's* computers without

26  access (546 F. Supp. at 608 n.2); again, Holomaxx makes no such contention in this action.

27      As set forth above, Holomaxx has properly alleged a claim under the CFAA.

28      ///

21                    OPPOSITION TO YAHOO, INC.'S
                      MOTION TO DISMISS

**5. California Penal Code §§ 630 et seq. (Wiretapping/Eavesdropping)**

Holomaxx has properly stated causes of action under both Penal Codes Section 631 and 632. Yahoo incorrectly argues that: (i) Sections 630 *et seq.* are preempted by the ECPA; (ii) Yahoo's users consented to the interception of their emails; (iii) Holomaxx must allege that the communication was intercepted in transit, as purportedly required by the FWA; (iv) Section 630 *et seq.* applies only to wire communications (*i.e.,* telephone or telegraph); (v) Holomaxx has not alleged the use of a "device," as purportedly required by Section 632; and (vi) Holomaxx's emails were not "confidential communications" as purportedly required by Section 632.[24] As set forth below, all of Yahoo's arguments fail.

First, California Penal Code Section 630 *et seq.* is not preempted by federal law. This Court has previously considered civil claims arising under Section 630 *et seq.*, including at least two cases cited *by Yahoo. Bradley*, 2006 U.S. Dist. Lexis 94455, *14-15 (N.D. Cal. 2006) (MTD 22:1); *Garcia v. Haskett*, 2006 U.S. Dist. Lexis 46303 (N.D. Cal. 2006) (MTD 22:6); *see also Bailey v. Household Fin. Corp.*, 2010 U.S. Dist. Lexis 117866, *9 (S.D. Cal. 2010).

Second, Holomaxx has properly alleged interception under the FWA, *see* Part II.C(2)(a); assuming *arguendo* that the FWA sets the standard for Section 630 *et seq.*, Holomaxx has therefore properly alleged interception.

Third, Holomaxx is not required to negative any consent exception, and also has not alleged consent. *See* Part II.C(2)(c); Opp. to RJN. Furthermore, Sections 630 *et seq.* both explicitly require consent by *both* parties to the communication (*see* Sections 631 & 632, quoted below); because it does not have a Yahoo account, Holomaxx never entered any agreement with Yahoo regarding the use of its services.

Fourth, Section 630 *et seq.* applies to email. By their terms, Sections 631 and 632 both govern interception of communications sent by wire *or some other means*. Specifically, Section 631 provides penalties for (*inter alia*) "any person who":

///

---

[24] Yahoo acknowledges that Section 631 does not require either the use of a device, MTD 20:28-21:2, or an allegation of "confidential communications." MTD 21:14-22:9.

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1    willfully and without the consent of all parties to the communication, or in any
     unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any
2    message, report, or communication while the same is in transit or passing over any wire,
     line, or cable, *or is being sent from, or received at any place within this state*"

3

     § 631(a) (emphasis added), and Section 632 similarly provides penalties for any person who:
4
     intentionally and without the consent of all parties to a confidential communication, by
5    means of any electronic amplifying or recording device, eavesdrops upon or records the
     confidential communication, whether the communication is carried on among the parties in
6    the presence of one another or by means of a telegraph, telephone, *or other device, except a
     radio*".

7
     § 632(a). The statutory breadth of Sections 631 and 632 is borne out by the caselaw. In fact,
8
     although Yahoo says it is aware of no authority applying these statutes to email, MTD 21:10-11,
9
     this Court has applied Sections 630 *et seq.* to email in at least two cases relied on by Yahoo.[25]
10
     *Bradley*, 2006 U.S. Dist. Lexis 94455, *14-15; *Garcia*, 2006 U.S. Dist. Lexis 46303, *3-4.[26]
11
     Fifth, Holomaxx has properly alleged the use of a device (*i.e.,* Yahoo's server), *see* Part
12
     II.C(2)(d); Holomaxx cannot know, and is therefore not required to allege, Yahoo's use of any
13
     other device to acquire its email communications. *See* Part II.A.
14
     Finally, of course Holomaxx's emails were confidential communications. As set forth in Parts
15
     II.C(2)(a) & (4), users have a "reasonable expectation of privacy" in their email communications;
16
     neither the issue of consent, nor Yahoo's purported agreements with its users, are properly before
17
     the Court, and even if Yahoo's agreements were in evidence, they do not prove any consent by
18
     either Holomaxx or Yahoo's users. Opp. to RJN. Holomaxx and Yahoo's users therefore retained
19
     a reasonable expectation of privacy in their emails, and the emails were therefore confidential
20
     communications. *Warshak*, 2010 U.S. App. Lexis at 25415. Yahoo relies on *People v. Nakai* to
21
     the contrary, but *Nakai* is inapposite: (i) *Nakai* was an exclusionary ruling, in a criminal matter
22

23   [25] Yahoo quotes *CashCall, Inc. v. Super. Ct* to the effect that the policy of Section 630 *et seq.* is to
     protect the privacy of individuals' phone calls; however, the Court in *CashCall* was not excluding
24   (or distinguishing) email communications; the case merely happened to involve phone calls.
     *CashCall,* 159 Cal. App. 4th 273, 294 (2008). Yahoo's other authorities all concerned the
25   exclusionary scope of Section 630 *et seq.* in criminal matters, and all were decided before the
     general advent of email communications; they are therefore all inapposite. *See United States v.
26   Turner,* 528 F.2d 143 (9th Cir. 1975); *People v. Chavez,* 44 Cal. App. 4th 1144 (1996); *People v.
     Ratekin,* 212 Cal. App. 3d 1165 (1989).

27   [26] Both *Bradley* and *Garcia* were dismissed on other grounds, in mistaken reliance on *Konop,* 302
28   F.3d at 878. *See* Part II.C(2)(a), n.19.

23                                    OPPOSITION TO YAHOO, INC.'S
                                      MOTION TO DISMISS

1 (defendant was accused of sending obscene materials to a minor); (ii) it involved a chatroom

2 conversation, and not email (and the Court specifically noted the lack of privacy in a chatroom);

3 (iii) the conversation was turned over to the government by the other party to the conversation (and

4 not by the provider); and (iv) the Court in *Nakai* therefore did not rely on any provisions about

5 "monitoring" in the privacy policy, but instead on the broad (and very relevant) warning that "the

6 person you correspond with might share the content of your conversation with others". *People v.*

7 *Nakai*, 183 Cal. App. 4th 499, 501, 514 (2010).

8     For all of the reasons set forth above, Holomaxx states a claim under both Sections 631(a) and

9 632(a) (as made applicable through Section 637.2).

10 **6. California Business & Professions Code §§ 17200 *et seq.***

11     To state a civil cause of action under Section 17200 *et seq.*, Holomaxx must plead that Yahoo

12 engaged in unlawful, unfair, or fraudulent business acts or practices. Cal. Bus. & Prof. Code §

13 17200. Yahoo's caselaw all concerns unfair or fraudulent behavior,[27] and its argument is based on

14 the unfounded premise that the Decency Act would not only *immunize* the conduct at issue in this

15 lawsuit, but actually "specifically authorized" it. MTD 23:14. As set forth in Part II.B, Yahoo is

16 not immune under the Decency Act – and as set forth in Parts II.C(1)-(5), Yahoo's conduct was

17 unlawful.

18     "An unlawful act is one 'forbidden by law, be it civil or criminal, federal, state, or municipal,

19 statutory, regulatory, or court-made.'" *In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 674

20 (9th Cir. 2007) (citation omitted). Yahoo's conduct is unlawful because (as alleged) it violates the

21 FWA, SCA, CFAA, and California Penal Code Sections 630 *et seq.*, and also because it constitutes

22 intentional interference with Holomaxx's contracts and prospective business advantage, *CRST Van*

23 *Expedited, Inc.*, 479 F.3d at 1110 ("[plaintiff] adequately alleged that [defendant] violated the UCL

24 because [it] adequately alleged that [defendant] engaged in an 'unlawful' business act or practice

25 that allegedly harmed [plaintiff], namely, intentional interference with [plaintiff's] employment

26 ---

[27] Yahoo misstates the rule set forth in *Rosal* and *Romero*; reasonable particularity is required only

27 for UCL claims based on fraudulent conduct. *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1127 (N.D. Cal. 2009; *Romero v. Countrywide Bank, N.A.*, 2010 U.S. Dist. Lexis 89935, *46

28 (N.D. Cal. 2010).

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS

1 contracts.").

2     Yahoo's conduct was also unfair, because it constituted anticompetitive behavior. *E.g.,* Compl.

3 ¶¶ 19-20, 39-40, 105; *see Cel-Tech Comm., Inc. v. LA Cellular Tel. Co.,* 20 Cal. 4th 163, 184

4 (1999) (§17200 defendant could be liable for anticompetitive behavior, though not illegal).

5 **III.  CONCLUSION**

6     As set forth above, the Court should deny the Motion. If the Court grants the Motion, it should

7 grant leave to amend.

8 DATE: _____/-28_____, 2011     PICK & BOYDSTON, LLP

9

10

11                     By: _____

12                        Erik S. Syverson
                       Attorneys for Plaintiff Holomaxx Technologies
                       Corporation, a Pennsylvania S Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO YAHOO, INC.'S
MOTION TO DISMISS