**E-Filed 3-11-2011**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOLOMAXX TECHNOLOGIES, a Pennsylvania Corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>YAHOO!, INC., a Delaware corporation, and CISCO IRONPORT SYSTEMS, LLC, a Delaware limited liability company,<br><br>　　　　　Defendant . | Case Number CV-10-4926-JF<br><br>ORDER[1] GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND<br><br>[Re: Docket No. 18] |

　　　　Defendant Yahoo! Inc. ("Yahoo!") moves to dismiss the complaint of Holomaxx Technologies ("Holomaxx") pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief may be granted. The complaint asserts the following claims: (1) violation of 18 U.S.C. §§ 2510, *et seq*. ("Wiretap Act"); (2) violation of 18 U.S.C. §§ 2701, *et seq*. ("Stored Communications Act"); (3) violation of 18 U.S.C. § 1030, *et seq*. ("Computer Fraud and Abuse Act"); (4) intentional interference with contract; (5) intentional interference with prospective

---

[1]　　This disposition is not designated for publication in the official reports.

business advantage; (6) violation of California Penal Code §§ 630, *et seq*. ("Wiretapping/Eavesdropping"); and (7) violation of California Business and Professions Code §§ 17200, *et seq*. ("UCL").[2] For the reasons discussed below, the motion will be granted, with leave to amend.

## I. BACKGROUND

Holomaxx describes itself as an "ecommerce business development company" that provides a number of different services, including "contract[ing] with commercial clients to provide a fully-managed email marketing service . . . ." (Compl. ¶ 12). It sends millions of daily marketing emails on its clients' behalf. *(Id*. at ¶ 13). It generates these e-mails from subscriber lists provided by its clients. The lists consist of individuals who have either elected voluntarily to receive such correspondence or who have "opted-in" by co-registration. (*Id*. at ¶¶ 14-15). Typically, it is paid a "fixed amount per email sent" and receives no compensation for e-mails that are unsuccessfully delivered. (*Id*.). Holomaxx asserts that it is a legitimate, CAN-SPAM Act compliant email service provider. (*Id*. ¶¶ at 15-16). It alleges that it takes specific safeguards to ensure such compliance, including: (1) producing e-mails with clear and accurate transmission and header information; (2) including "opt out" mechanisms for users electing not to receive future communications; (3) registering its domains and IP addresses with all available feedback loops; (4) originating all e-mails from the same set of servers; and (5) monitoring the compilation techniques employed by its clients. (*Id*. at ¶¶ 15-18). As a result of these safeguards, Holomaxx maintains a self-reported complaint rate of between 0.1% and 0.3%.[3] (*Id*. at ¶ 19).

Yahoo! is an Internet Service Provider ("ISP") and one of the largest providers of free e-mail service in the world. (Compl. ¶ 20). Like most companies that offer e-mail service, Yahoo! employs filtering technologies and procedures that identify and reject potentially harmful

---

[2] Holomaxx also asserted a claim for defamation against Cisco Ironport, Inc. Holomaxx since has voluntarily dismissed its claims against that defendant.

[3] According to Yahoo!'s feedback loop data, the aggregate complaint rate consistently is approximately 0.1%. (Compl,. ¶ 18).

1 communications. (Comp. ¶¶ 19-20). Holomaxx claims that Yahoo! relies upon several faulty
2 methods to determine whether incoming mail is spam, including an automated spam filter
3 ("SpamGuard") and evaluations from "whitelisting" services such as those offered by Cisco
4 Ironport, Inc. (Compl. ¶¶ 19-20). Holomaxx alleges that in practice these methods filter and
5 block legitimate e-mail communications. It also claims that Yahoo! wrongfully has refused to
6 provide a remedy for these errors. (*Id*.).

7 In May 2010, Holomaxx obtained a dedicated block of IP addresses referred to as the
8 "the IP Addresses" that became operative in June 2010. (*Id*. at ¶¶ 25-28). It did so because its
9 previous shared block of IP addresses had "low reputation scores" resulting from other
10 unassociated spamming activities. (*Id*. at ¶ 25). Yahoo! immediately began blocking the "IP
11 addresses." (*Id*. at ¶28). Allegedly, Yahoo! informed Holomaxx that it was treating the e-mails
12 as spam based on recommendations from its SpamGuard filter and in response to user
13 complaints. (*Id*. at ¶¶ 30-31). Holomaxx asserts that there could have been no user complaints
14 because the e-mails originating from the "IP addresses" were blocked before they reached the end
15 users. (*Id*. at ¶ 31). Holomaxx alleges that its legitimate communications are being filtered and
16 claims that Yahoo!'s refusal to remedy the situation has caused loss of revenue and continuing
17 damage to Holomaxx's reputation and client relationships. (*Id*. at 32).

18 Holomaxx also claims that Yahoo! wrongfully accessed the computers on which its e-
19 mails were stored, scanned the content of the e-mails and obtained information therefrom without
20 receiving consent from either Holomaxx or the intended recipients. (*Id*. at ¶ 37). Yahoo!
21 allegedly used this wrongfully obtained information together with the "reputation score"
22 provided by Cisco Ironport, Inc. to determine that Holomaxx's e-mails were spam. (*Id*.). As a
23 result, Holomaxx claims that its reputation was and continues to be damaged, that its profits have
24 been diminished, and that its contractual relationships have been affected adversely. (*Id*. at ¶¶
25 44-45). It seeks declaratory and injunctive relief; statutory, compensatory and punitive damages;
26 and reasonable costs and attorneys' fees. (Compl. 35:8-42:7).

27 <center>**II. MOTION TO DISMISS**</center>

28 "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

<center>3</center>

cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Center*, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). However, "[w]hile a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) (internal citations omitted). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

### III. DISCUSSION

Yahoo! argues that Claims Three, Four, Five, and Six, all of which are based on its filtering activities, are subject to an affirmative defense pursuant to the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230. (Mot. to Dismiss, 1:9-21). Yahoo! also contends that Claims One and Two are insufficiently pled and fail to state a cognizable claim. (*Id*. at 1:24-2:13). In opposition, Holomaxx argues that affirmative defenses are not properly considered on a motion to dismiss. (Pl.'s Opp., 3:20-4:4), and that in any case the CDA does not give Yahoo! "blanket immunity" or otherwise provide protection for providers that filter legitimate "business content." (*Id*. at 4:5-11). Holomaxx also asserts that each of its claims is pled adequately. (*Id*. at 9:3-25:4).

**A. Communications Decency Act (Claims Three Through Six)**

A principal purpose of the CDA is to encourage ISP's to engage in effective self-regulation of certain content. The Ninth Circuit has recognized that §230 of the statute is "designed at once 'to promote the free exchange of information and ideas over the internet and to encourage voluntary monitoring for offensive and obscene material.'" *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099-1100 (9th Cir. 2009) (quoting *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003); s*ee also Zeran v. American Online Inc.*, 129 F.3d 327, 330 (4th Cir.

Case No. CV-10-4926
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFEX2)

1997) (finding that an important purpose of the CDA is to "encourage service providers to self-regulate the dissemination of offensive materials over their services."). Accordingly, §230(c) provides protection for "good samaritan" blocking and screening of offensive material. Pursuant to §230(c)(2):

> No provider or user of an interactive computer service shall be held liable on account of--
> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, or otherwise objectionable, whether or not such material is constitutionally protected; or
> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1)

42 U.S.C. § 230(c)(2)(A)& (B). An "interactive computer service" means "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ." 42 U.S.C. § 230(f)(2). Significantly, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 42 U.S.C. § 230(e)(3). Moreover, §230(c)(2) "allows [an interactive service provider] to establish *standards* of decency without risking liability for doing so." *Goddard v. Google*, 2008 WL 5245490, at *6 (N.D. Cal. Dec. 17, 2008) (Fogel, J.) (citing *Green v. American Online*, 318 F.3d 465, 472 (3rd Cir. 2002)).

**1. Whether the Court may consider Yahoo!'s affirmative defenses**

Holomaxx argues that defenses pursuant to the CDA "should not even be considered on a Rule 12(b)(6) motion." (Pl.'s Opp., 3:20). However, both this Court and others have held to the contrary. (Def's Reply to Pl.'s Opp., 2:2-3:3) (citing *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1200 n.5 (N.D. Cal. 2009)). The assertion of an affirmative defense properly may be considered on a motion to dismiss where the defense is "apparent from the face of the [c]omplaint." *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1200 n.5 (N.D. Cal. 2009) (internal citation omitted); *see also Langdon v. Google, Inc.*, 474 F.Supp2d 622, 630-31 (D.Del 2007) (granting Rule 12(b)(6) motion to dismiss based on application of CDA immunity); *see also Jones v. Block*, 549 U.S. 199, 215 (2007) (finding "[w]hether a particular ground for opposing a claim may be the basis for dismissal for [a 12(b)(6) motion] depends on whether the allegations

in the complaint suffice to establish that ground . . . ."). *Perfect 10 v. Google, Inc.*, 2008 WL 4217837, at *8 (C.D. Cal. Jul. 16, 2008), does not hold otherwise. The section of the CDA at issue in that case is not implicated here, and more to the point, the pleadings themselves presented a question of fact as to whether Google was a "content provider" and thus not entitled to assert CDA immunity. *Id*.

### 2. Whether Yahoo's filtering decisions qualify for CDA immunity

To assert an affirmative defense under §230(c)(2)(A), a moving party must qualify as an "interactive computer service," that voluntarily blocked or filtered material it considers "to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable," and did so in "good faith." 47 U.S.C. §230(c)(2)(A). Holomaxx does not dispute that Yahoo! qualifies as an "interactive computer service," (Compl. ¶ 19), and two district courts have concluded that ISP's that provide email services properly are characterized as "interactive computer service" providers. *See e360 Insight, LLC v. Comcast Corp.*, 546 F.Supp.2d 605 (N.D. Ill 2008); *Winter v. Basssett*, 2003 U.S. Dist. 26904, at *7 n.4 (M.D.N.C. Aug. 22, 2003) (finding that ISP's properly are characterized as interactive computer services under the CDA because they "allow internet users to connect to the internet" and they "provide email services.").

However, Holomaxx contends that §230(c)(2)(a) ". . . was *not* intended to immunize the blocking of routine business e-mails," (Pl.'s Opp., 5:20-23) and that the business content of its e-mails is not the type of content that providers might find "objectionable." (*Id*. at 5:23-6:18). It points to *Goddard v. Google, Inc.*, 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) (discussing *National Numismatic Certification, LLC v. eBay, Inc.*, 2008 WL 2704404 (M.D. Fla. July 8, 2008)), in which this Court acknowledged the vagueness of the word "objectionable" and adopted the application of *ejusdem generis* in *National Numismatic* to determine the appropriate scope of §230(c)(2). *Goddard,* 2008 WL at *6. The Court observed that content that a provider subjectively finds "otherwise objectionable" still must have some relationship to the categories of content enumerated by Congress.

No court has articulated specific, objective criteria to be used in assessing whether a provider's subjective determination of what is "objectionable" is protected by §230(c)(2). The

1    court in *e360 Insight, LLC v. Comcast Corp.*, 546 F.Supp.2d 605, 608 (N.D. Ill. 2008) concluded
2    that virtually total deference to a provider's subjective determination is appropriate. Although the
3    Ninth Circuit has yet to address the issue directly, it has expressed concern about giving
4    providers unfettered discretion. *See Zango v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1178 (9th Cir.
5    2009) (Fisher, J., concurring) (expressing concern with a rule under which "providers of blocking
6    software [are] given free license to *unilaterally* block the dissemination of material by content
7    providers under the literal terms of § 230(c)(2)(A)."). Here, however, it is clear from the
8    allegations of the complaint itself that Yahoo! reasonably could conclude that Holomaxx's e-
9    mails were "harassing" and thus "otherwise objectionable." Holomaxx acknowledges that it
10   sends approximately six million e-mails per day through Yahoo!'s servers and that at least .1% of
11   these e-mails either are sent to invalid addresses or result in user opt-out. (Compl. ¶¶ 16-18).
12   On an annual basis, this amounts to more than two million invalid or unwanted e-mails.[4]

13       Although Holomaxx pleads conclusorily that Yahoo! acted in bad faith, the appropriate
14   question is whether Holomaxx has "pled an absence of good faith." *e360 Insight, LLC v.*
15   *Comcast Corp.*, 546 F.Supp.2d 605, 609 (N.D. Ill. 2008). Holomaxx claims that Yahoo! uses
16   faulty filtering technology and techniques, (Pl.'s Opp. 7:16-18), that its filtering decisions are
17   motivated by profit derived from blocking both good and bad e-mails, (Pl.'s Opp., 8:14-9:1), and
18   that it refuses to discuss its reasons for filtering Holomaxx's e-mails or to provide an acceptable
19   remedy that will prevent the e-mails from being filtered in the future. (Compl. at ¶¶ 30-32).
20   These allegations are insufficient. Holomaxx alleges no facts in support of its conclusory claim
21   that Yahoo!'s filtering program is faulty, nor does it identify an objective industry standard that
22   Yahoo! fails to meet. While it suggests that Yahoo! is "using cheap and ineffective technologies
23   to avoid the expense of appropriately tracking and eliminating *only* spam email," it offers no
24   factual support for these allegations. (Compl. ¶ 40). Nor does Holomaxx cite any legal authority

---

[4]Significantly, the number of messages that result in delivery to invalid addresses or in user opt-outs is calculated *with* the existing filtering technology and techniques in place. Had Yahoo!'s filters been inactive it is reasonable to assume that the number of invalid deliveries and user opt-outs would be far greater than 0.1%..

for its claim that Yahoo! has a duty to discuss in detail the particular reasons for blocking Holomaxx's communications or to provide a remedy for such blocking. Indeed, imposing such a duty would be inconsistent with the intent of Congress to "remove disincentives for the development and utilization of blocking and filtering technologies." 47 U.S.C. § 230 (b)(4).

### 3. Conclusion

The first element of Yahoo!'s affirmative defense under the CDA is not in dispute. While it is conceivable that Holomaxx could raise an issue of fact as to the second and third elements, it must provide significantly greater factual detail in order to do so. Accordingly, Holomaxx's third, fourth, fifth and sixth claims predicated on Yahoo!'s filtering and blocking activities will be dismissed, with leave to amend.

### B. Judicial Notice of Yahoo!'s Service Agreement

Yahoo! contends that it is immune from liability under both the Wiretap Act and the Stored Communications Act because its users specifically consent to the alleged wrongful access to their communications. (Mot. to Dismiss, 11:9:-12:1; 13:11-15). Yahoo! asks the Court to take judicial notice of its user service agreement. Holomaxx opposes this request, disputing the authenticity of the document and arguing that it did not reference the service agreement in its complaint, that user consent is not a core issue, and that even if it were the service agreement presents factual issues inappropriate for resolution on a motion to dismiss. (Pl.'s Opp. to RJN, 1:2-8). Holomaxx is correct that courts ordinarily "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)); *see also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). However, courts in the Ninth Circuit may consider documents that are not physically attached to the complaint when authenticity of the documents is not questioned and the complaint relies on the documents, (*Lee,*

1  250 F.3d at 688),[5] and "a court may take judicial notice of 'matters of public record.'" *Id*.
2  (quoting *Mack v. South Bay Beer Distrib*., 789 F.2d 1279, 1282 (9th Cir. 1986)).

3  Yahoo! argues that the first exception applies here because the complaint references the
4  terms of the service agreement and specifically puts these terms at issue. (Def.'s Reply in
5  Support of RJN, 1:21-26). In fact, Holomaxx alleges that Yahoo! "[a]ccessed computers on
6  which Holomaxx's confidential email communications were stored, and that Defendant[] also
7  scanned the contents of those emails and obtained information therefrom, *without the consent* of
8  either Holomaxx or the *intended recipients*." (Compl. ¶ 37) (emphasis added). This single
9  allegation is insufficient to trigger the "incorporation by reference doctrine." *See e.g., In re*
10 *Facebook PPC Adver. Litig.*, 2010 WL 5174021, at (N.D. Cal. Dec, 15, 2010) (Fogel, J.) (taking
11 judicial notice of an "exemplary screen shot" of a web page advertisement as well as copies of
12 "click-through" agreements. Significantly, the authenticity of these materials went unchallenged,
13 specific portions were quoted in the complaint, and the contents formed the foundation of the
14 dispute); *In Re Finisar Corp. Derivative Litig.*, 542 F.Supp.2d 980, 990 n.4 (N.D. Cal. 2008)
15 (finding that a company's closing stock price was "crucial" to plaintiffs' claims in a shareholder
16 derivative action). Nor is the service agreement a "public record." *See Barron v. Reich*, 13 F.3d
17 1370, 1377 (9th Cir. 1994) (finding that public records are those documents retrieved from
18 government and administrative agencies); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.
19 2001). The request for judicial notice will be denied.

20 **C. Violation of the Wiretap Act (Claim One)**

21 Holomaxx alleges that Yahoo! "intentionally intercepted electronic communications sent
22 by Holomaxx, in violation of 18 U.S.C. § 2510, *et seq*.," (Compl. ¶ 49), and "intentionally used
23 and disclosed the contents of such electronic communications sent by Holomaxx, while knowing
24 or having reason to know that the information was obtained through the interception of those
25 communications in violation of 18 U.S.C. § 2511." (*Id*. at ¶ 50). It claims that Yahoo!

---

28  [5] This exception commonly is referred to as the "incorporation by reference doctrine." *See* e.g., *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).

intercepted e-mails to evaluate the "spam like characteristics" of the e-mails (*Id*. at ¶¶ 59-60). However, while the Court must "take all factual allegations in the complaint as true," *(Ashcroft v. Iqbal*, 129 S.Ct.1937, 1949 (2009)), it is not required to accept a "legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, Holomaxx's allegations are both conclusory and devoid of factual support. Holomaxx does not explain how Yahoo! "intercepted" its communications, or how Yahoo! "used and disclosed" the contents of those communications. Additional factual detail is necessary in order to permit the Court to make a meaningful assessment of the plausibility of the allegations.

### D. Violation of the Stored Communications Act (Claim Two)

Holomaxx also alleges that Yahoo! violated the Stored Communications Act, which prohibits a party from "intentionally access[ing] without authorization a facility through which an electronic communication service is provided; or intentionally exceed[ing] an authorization to access that facility; and thereby obtain[ing] . . . or prevent[ing] access to a wire or electronic communication while it is in electronic storage in such system . . . ." 18 U.S.C. § 2701(a). Here again, Holomaxx does no more than provide a "formulaic recitation of a cause of action" and fails to provide the type of factual support necessary to "raise a right to relief above the speculative level." *Bell Atl.v. Twombly*, 550 U.S. 544, 555 (2007). It fails to explain what facility or communication were accessed, or by whom, or how the alleged access exceeded a particular authorization.

### E. Unfair Competition Law

California Business and Professions Code § 17200 *et seq.*, prohibits acts of unfair competition, including "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200. This statute "was intentionally framed in its broad, sweeping language." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 181 (1999). "[A] plaintiff must have suffered an 'injury in fact' or 'lost money or property as a result of the unfair competition' to have standing to pursue either an individual or a representative claim under California Unfair Competition Law." *Hall v. Time Inc.*, 158 Cal.App.4th 847, 849 (2008).

To state a claim under the "fraudulent" prong of the UCL, a plaintiff must allege that the challenged practice is likely to deceive members of the public. *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App. 4th 1255, 1274 (2006). To support liability under the "unfair" prong, the conduct must either "offend[ ] an established public policy or [be] immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" or be "tethered to specific constitutional, statutory or regulatory provisions." *Id*. at 1268. A violation of the "unlawful" prong of the UCL may be established by a variety of unlawful acts, including those practices prohibited by law, whether "civil or criminal, federal, state, [ ] municipal, statutory, regulatory, or court made." Because Holomaxx has yet to state a viable claim for any actionable wrongdoing, the UCL claim in its present form also is subject to dismissal.

### IV. ORDER

Good cause therefor appearing, the motion to dismiss is GRANTED, WITH LEAVE TO AMEND. Any amended complaint shall be filed within (30) days of the date of this order.

IT IS SO ORDERED

DATED:   March 11, 2011

_____
JEREMY FOGEL
United States District Judge

Case No. CV-10-4926
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFEX2)