ANN MARIE MORTIMER (SBN 169077)
amortimer@hunton.com
DIANA BIASON (SBN 247274)
dbiason@hunton.com
HUNTON & WILLIAMS LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

JOHN WOODS (Admitted *Pro Hac Vice*)
jwoods@hunton.com
HUNTON & WILLIAMS LLP
1900 K Street, NW
Washington, DC 20006
Phone (202) 955-1500
Fax (202) 778-2201

Attorneys for Defendant
YAHOO! INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOLOMAXX TECHNOLOGIES CORPORATION, a Pennsylvania Corporation<br><br>Plaintiff,<br><br>v.<br><br>YAHOO!, INC., a Delaware corporation, and CISCO IRONPORT SYSTEMS, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO.: CV10-04926 JF(PG)<br><br>**DEFENDANT YAHOO! INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:         July 15, 2011<br>TIME:         9:00 A.M.<br>JUDGE:       Honorable Jeremy Fogel<br>COURTROOM: Courtroom 3, 5th Floor |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. ARGUMENT ...................................................................................................... 2

    A. The Facts Supporting Dismissal Under The CDA Remain Unchanged. .................................................................................. 3

        1. The CDA Immunizes Yahoo! For Its Protected Subjective Determination That Plaintiff's Bulk Emails Are Harassing And Objectionable. ............................... 3

        2. Plaintiff Has Failed To Demonstrate An Absence Of Good Faith. ...................................................................................... 4

        3. Good Faith Is Not Required For Section (c)(2)(B) Immunity. ............................................................................................ 8

    B. Plaintiff Fails To State A Wiretap Claim. ...................................................... 8

    C. Plaintiff Fails To State A Stored Communications Act Claim. ............................................................................................................ 10

    D. Plaintiff Fails To State A Computer Fraud And Abuse Act Claim. ........................................................................................................ 10

    E. Plaintiff's State Law Claims Fail. ................................................................. 11

        1. Yahoo! Cannot Be Held Liable On An Interference Theory. .................................................................................................... 11

        2. Plaintiff's Wiretapping And Eavesdropping Claims Fail. ........................................................................................................... 13

        3. Plaintiff Fails To State A Claim Under the UCL. ............................ 14

    F. Further Amendment Would Be Futile. ......................................................... 15

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) .................................................................................................. 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007) ..................................................................... 2,6,8

*Browning v. AT&T Corp.*,
   682 F. Supp. 2d 832 (N.D. Ill. 2009) ............................................................................ 9

*Crowley v. Cybersource Corp.*,
   166 F. Supp. 2d 1263 (N.D. Cal. 2001) ...................................................................... 10

*DocMagic, Inc. v. Ellie Mae*,
   745 F. Supp. 2d 1119 (N.D. Cal. 2010) ...................................................................... 12

*e360 Insight, LLC, v. Comcast Corp.*,
   546 F. Supp. 2d 605 (N.D. Ill. 2008) ........................................................................ 3,12

*Goddard v. Google, Inc.*,
   2008 U.S. Dist. LEXIS 101890 (N.D. Cal. Dec. 17, 2008) .......................................... 3

*HDC Medical, Inc. v. Minntech Corp.*,
   474 F.3d 543 (8th Cir. 2007) .................................................................................... 6,13

*Ideal Aerosmith v. Acutronic United States, Inc.*,
   2007 U.S. Dist. LEXIS 91644 (W.D. Pa. Dec. 13, 2007) ............................................ 8

*Jewel Cos. v. Pay Less Drug Stores Northwest, Inc.*,
   510  F. Supp. 1006 (1981) .......................................................................................... 11

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ........................................................................................ 9

*LRVC Holdings v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) .................................................................................... 10

*Langdon v. Google, Inc.*,
   474 F. Supp. 2d 622 (D. Del. 2007) ............................................................................. 3

*Morgan v. Ponder*,
   892 F.2d 1355 (8th Cir. 1989) ...................................................................................... 6

*Morris Commc'ns Corp. v. PGA Tour, Inc.*,
   364 F.3d 1288 (11th Cir. 2004) .................................................................................... 6

*Moss v. United States Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ........................................................................................ 6

*Munch v. Sears, Roebuck & Co.*,
   2008 U.S. Dist. LEXIS 76822 (N.D. Ill. Sept. 30, 2008) ............................................. 4

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California  90071-2627

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008),
   *aff'd*, 322 Fed. Appx. 489 (9th Cir. Apr. 2, 2009) ...... 6

*Olivera v. America Home Mortgage Servicing, Inc.*,
   689 F. Supp. 2d 1218 (N.D. Cal. 2010) ...... 7

*Pliva, Inc. v. Mensing*,
   2011 Wl 2472790, at * 8 (U.S. 2011) ...... 11

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ...... 7

*Summit Machine Tool Manufacturing Corp. v. Victor CNC System*,
   7 F.3d 1434 (9th Cir. 1993) ...... 12

*Tuck Beckstoffer Wines LLC v. Ultimate Distributings*,
   682 F. Supp. 2d 1003 (N.D. Cal. 2010) ...... 14

*Winter v. Basset*,
   2003 U.S. Dist. LEXIS 26904 (M.D.N.C. Aug. 22, 2003) ...... 2

*Zango, Inc. v. Kaspersky*,
   2007 U.S. Dist. LEXIS 97332 (W.D. Wash. Aug. 28, 2007) ...... 2,7,8,11

**STATE CASES**

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
   2011 WL 1753479 (N.D. Cal. Apr. 22, 2011) ...... 12

*Bradley v. Google, Inc.*,
   2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) ...... 14

*Ceders-Sinai Medical Ctr. v. Superior Court*,
   18 Cal. 4th 1 (1998) ...... 11

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
   11 Cal. 4th 376 (1995) ...... 12

*Garcia v. Haskett*,
   2006 WL 1821232 (N.D. Cal. June 30, 2006) ...... 9

*Kariguddaiah v. Wells Fargo Bank, N.A.*,
   2010 WL 2650492 (N.D. Cal. July 1, 2010) ...... 8

*Khalili v. Comerica Bank*,
   2011 WL 2445870 (N.D. Cal. June 16, 2011) ...... 9

*LiveUniverse, Inc. v. Myspace, Inc.*,
   2007 WL 6865852 (C.D. Cal. June 4, 2007) ...... 6

*Membrila v. Receivables Performance Management, LLC*,
   2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ...... 14

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Moallem v. Coldwell Banker Commercial Group, Inc.*,
  25 Cal. App. 4th 1827 (1994) .................................................................................. 14

*People v. Nakai*,
  183 Cal. App. 4th 499 (2010) .................................................................................. 13

*People v. Newton*,
  42 Cal. App. 3d 292 (1974) ..................................................................................... 13

*Quelimane Co. v. Stewart Title Guaranty Co.*,
  19 Cal. 4th 26 (1998) ............................................................................................... 11

*Ruiz v. Mort. Electric Registration System, Inc.*,
  2009 WL 2390824 (E.D. Cal. Aug. 3, 2009) ............................................................ 15

*White Buffalo Ventures, LLC v. The University of Texas*,
  2004 WL 1854168 (W.D. Tex. Mar. 22, 2004) ........................................................ 13

**FEDERAL STATUTES**

15 U.S.C. § 7701(a)(5) ........................................................................................................ 4

47 U.S.C. § 230(b)(4) .......................................................................................................... 5

47 U.S.C. § 230(c)(2)(A) ..................................................................................................... 2

47 U.S.C. §230(d) ................................................................................................................ 3

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff offers no reason in its Opposition to depart from this Court's earlier ruling that Plaintiff's **2.2 billion** mass marketing emails sent to Yahoo! users annually -- by Plaintiff's own estimation resulting in between **2 to 6 million** unwanted emails a year[1] -- properly qualifies as "harassing" and thus "otherwise objectionable" for purposes of triggering immunity under the statutory safe harbor provisions of the Communications Decency Act (the "CDA"). Although Plaintiff claims "[t]his time, Yahoo's arguments fail because the FAC adds important factual allegations that: (1) the emails sent by Holomaxx were not 'harassing' or 'objectionable' under the CDA; and (2) Yahoo acted in the absence of good faith when it blocked Holomaxx's emails" (*see* Plaintiff's Opposition to Yahoo!'s Motion to Dismiss the First Amended Complaint (the "Opposition" ) at p. 4, lns. 9-12), Plaintiff does neither. Instead of new "important factual allegations" Plaintiff offers only its own say-so that a post-filtering return rate of between two and six million annually could never qualify as objectionable or otherwise harassing under the Act, even though this Court has already ruled *based on this very same mailing volume and failure rate* that Yahoo! "reasonably could conclude that Holomaxx's e-mails were 'harassing' and thus 'otherwise objectionable.'" (*See* Opposition at 1; Order at 7.)

While Plaintiff spends much of its Opposition attempting to allege an absence of good faith by Yahoo!, as before, Plaintiff relies entirely on bald assertions couched as facts to show that Yahoo! acted for "anti-competitive motives" in blocking Plaintiff's bulk email, and ignores altogether its previous admission that good faith is not required for immunity under Section 230(c)(2)(B) of the CDA.[2] Plaintiff has alleged no new facts or new legal theories and none exist that would deprive Yahoo! of the right under the CDA to employ spam filtering technology and to make the subjective

---

[1] Plaintiff admits a complaint rate between .1% and .3% annually. (FAC ¶ 25.) Based on Plaintiff's estimated send rate in excess of 6 million emails daily and 2.2 billion emails annually, this results in unwanted emails *after filtering* of between 2 - 6 million. (FAC ¶ 21; Opposition at 5.) Although Plaintiff asserts without apparent support that the actual number is likely much lower, as this Court has already noted, absent filtering, one would expect the number of rejected emails be orders of magnitude higher. (Order at 7, n. 4.)

[2] That Plaintiff accuses Microsoft of precisely the same allegedly anti-competitive conduct and for precisely the same motives in its parallel lawsuit, even though Microsoft and Yahoo! employ completely separate spam filtering technologies which rely on independently created filtering criteria, is but one indication that Plaintiff's claims are without foundation and are meritless.

determination that two billion emails a year, with a fail rate into the millions, is objectionable, harassing, and unduly burdensome to Yahoo!'s networks and users.

Nor can Plaintiff's other claims survive. First, as in the original Complaint, Plaintiff defaults in the FAC to labels and conclusions in place of well pleaded facts and cognizable legal theories sufficient to demonstrate a plausible claim as required by *Iqbal/Twombly*. As this Court has already ruled, allegations which are conclusory and devoid of factual support fall short of what is required to make a threshold showing of plausibility. (Order at p. 4); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-67 (2007) (requiring more than formulaic recitation of elements of cause of action to survive motion to dismiss). And despite the Court having identified the type of facts necessary to adequately plead an SCA, Wiretap or any of the state law claims, Plaintiff offers no new factual allegations to bolster these claims, and indeed makes few changes at all to the FAC.[3] Moreover, Plaintiff's state law claims are not only extinguished by the CDA, each of Plaintiff's claims fails on independent grounds, including by failing to plead elements essential to the claim, and by admitting to facts in its FAC that dispose of its legal arguments. Plaintiff has now been given the opportunity and this Court's guidance as to how to adequately plead its claims, and still has failed to do so, making further amendment futile.

## II. ARGUMENT

Plaintiff's Opposition mischaracterizes both the purpose and application of the CDA. The very purpose of the CDA is to encourage service providers to self-regulate the materials distributed over their services. *Zeran v. Am. Online Inc.,* 129 F.3d 327, 330 (4th Cir. 1997). As an internet service provider ("ISP"), Yahoo! is entitled to immunity under the CDA not only for its good faith subjective decisions to block objectionable or harassing emails, but for making the tools necessary to block access to harassing or otherwise objectionable content, regardless of motive or intent, and whether or not the blocking was done in good faith. *See* 47 U.S.C. § 230(c)(2)(A); 230 (c)(2)(B); *Zango v. Kaspersky,* 568 F.3d 1169, 1173 (9th Cir. 2009).[4] The purpose of the CDA is to promote

---

[3] For ease of reference, a redline comparison of the Complaint and FAC is attached as Exhibit A to the Declaration of Diana Biason filed concurrently with the Motion to Dismiss.

[4] As this Court has already noted, there is no dispute that Yahoo! qualifies as an interactive computer service for purposes of CDA immunity. (*See* Order at p. 6 (citing *Winter v. Basset,* 2003 U.S. Dist. LEXIS 26904, at *7 n.4 (M.D.N.C. Aug. 22, 2003)).)

voluntary filtering free of the threat of legal retribution by disgruntled content providers, including mass marketers like Holomaxx. *Goddard v. Google, Inc.,* 2008 U.S. Dist. LEXIS 101890, at *22 (N.D. Cal. Dec. 17, 2008) (CDA allows ISP to establish filtering standards without risking legal liability for doing so). That Plaintiff alleges Yahoo! competes with Plaintiff for would-be advertisers does nothing to alter this analysis. Even assuming Plaintiff had adequately pleaded that Yahoo! is indeed a competitor motivated to block Plaintiff's emails for financial gain (which it has not), Plaintiff has offered no authority for its novel argument that the fact of this competition itself would somehow nullify the reach and purpose of the CDA[5]. Nor has Plaintiff come forward with any new facts or theories that would justify reversing this Court's earlier decision that the CDA immunizes Yahoo!'s subjective decision to filter Plaintiff's bulk email as harassing or otherwise objectionable. For all of these reasons, Plaintiff's attempts to evade the CDA must fail.

A.  **The Facts Supporting Dismissal Under The CDA Remain Unchanged.**

Nothing has changed since this Court ruled that Yahoo! was immunized by the CDA. Although the Court allowed Plaintiff the opportunity to demonstrate with specificity through well pleaded facts that its for-profit bulk emails did not qualify as harassing or otherwise objectionable, or that the application of Yahoo!'s automated spam filtering system that resulted in the blocking of Plaintiff's emails violated industry standards and was not in good faith, as discussed below, Plaintiff fails on both counts.

1.  **The CDA Immunizes Yahoo! For Its Protected Subjective Determination That Plaintiff's Bulk Emails Are Harassing And Objectionable.**

Despite having failed once already, Plaintiff again advances the argument in its Opposition that CDA immunity only applies to a narrow range of obscene and pornographic materials, and not spam email. (Opposition at 4-5.) This Court and other Courts have already ruled otherwise, and there are good reasons to do so. (Order at 6-7); *e360Insight, LLC v. Comcast Corp.,* 546 F. Supp. 2d 605, 607-08 (N.D. Ill. 2008) (mass marketing emails are harassing or otherwise objectionable for purposes of CDA immunity); *Langdon v. Google, Inc.,* 474 F. Supp. 2d 622, 631 (D. Del. 2007) (recognizing CDA immunity to ads that were not obscene or harassing, but were "otherwise

---

[5] If Congress had intended to carve out unfair competition or similar business torts from the CDA, it would have done so. *See* 47 U.S.C. §230(d). Alleged competition or unfair competition is *not* an exception to immunity, indeed these state law claims are extinguished by application of the CDA.

3

YAHOO! INC.'S REPLY - CASE NO. CV 10-04926 JF (PG)

objectionable."). Although Plaintiff attempts to whitewash the inherent burden of mass marketing emails, Congress has long recognized the tangible efficiency, operation, and hard costs associated with the proliferation of mass marketers that daily bombard electronic mail users. *See* 15 U.S.C. § 7701(a)(5) (Congressional findings in the CAN-SPAM act noting that "[t]he convenience and efficiency of electronic mail are threatened by the extremely rapid growth in the volume of unsolicited commercial electronic mail"). In light of these burdens, Plaintiff offers no legal or industry standard in support of its claim that such narrow restrictions should be grafted onto the safe harbor provisions of the CDA, and none exists.[6]

Plaintiff further argues that even if marketing junk mail can qualify as harassing or otherwise objectionable under the CDA, there is a bright line rule that mass marketing only becomes harassing at the threshold of 8 to 15 emails a day. (Opposition at 6.) Plaintiff offers no basis for this self-serving claim,[7] and in any event, as this Court has already determined, the decision as to what qualifies as harassing or objectionable is for Yahoo! to decide -- not Holomaxx or the intended recipients of the marketing emails. Plaintiff has offered no new facts or industry standards to justify disturbing that conclusion. (Order at 7.) Accordingly, Yahoo! satisfies this element for CDA immunity.

### 2. Plaintiff Has Failed To Demonstrate An Absence Of Good Faith.

In a last ditch effort to reform its claims against Yahoo!, Plaintiff has liberally sprinkled the assertion that Yahoo! acted without "good faith" and attempted to "shut[] Holomaxx out of the market" by engaging in "unfair, wrongful and anti-competitive business practices " throughout the FAC. (*See, e.g.,* FAC ¶¶ 15, 18.) Heavy on conclusions and thin on facts, Plaintiff once again fails to allege any well pleaded facts evidencing the absence of good faith by Yahoo! in its filtering

---

[6] Plaintiff's argument that the reach of the CDA is limited to the specifically enumerated criteria for filtering ignores the statute's express provision that content that is "harassing" or "otherwise objectionable" may be filtered. This Court need not reach the ultimate issue of whether or not an ISP is entitled to unfettered discretion to screen content as "objectionable" because -- as this Court has already ruled -- the sheer volume and failure rate of Plaintiff's bulk email clearly qualifies Plaintiff's blast emails as harassing and otherwise objectionable.

[7] Plaintiff purports to rely on some unidentified "industry standard" for this numeric floor, but fails to cite to or identify with specificity the alleged standard. At most, Plaintiff's claim of a mythic standard is argument, and should be disregarded as such. *See, e.g., Munch v. Sears, Roebuck & Co.,* 2008 U.S. Dist. LEXIS 76822, at *17-19 (N.D. Ill. Sept. 30, 2008) (dismissing complaint where Plaintiff failed to sufficiently allege governing industry standard).

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  practices. Plaintiff's only new allegations in the FAC -- (1) that Yahoo! ran afoul of industry
2  guidelines set by the Anti-Abuse Working Group ("MAAWG") by not immediately unblocking
3  Plaintiff's email once Plaintiff complained, and (2) that Yahoo! is a competitor of Holomaxx
4  because Yahoo! and Plaintiff advertise the same broad categories of services and products -- do not
5  rise above the level of bald assertions and unsupported conclusions, and are therefore legally
6  irrelevant.

7  First, Plaintiff's attempt to convert a collection of MAAWG working group notes into an
8  industry standard misses the mark. A review of the MAAWG notes confirm, they were never
9  intended to be and do not function as industry standards.[8] However, even if the MAAWG notes
10 could somehow be construed as reflecting industry standard, they do not address the critical issue in
11 this case -- when to block commercial email as spam. At most the MAAWG notes offer suggestions
12 for responding to complaints ***by blocked senders after filtering decisions have already been made***
13 in the help desk environment. Nothing in the FAC suggests otherwise. (FAC ¶¶ 8-15.) Therefore,
14 whether or not Yahoo! followed each and every suggestion by certain MAAWG members as to how
15 to handle a complaint about a blocked account has no bearing on whether Yahoo! was entitled to
16 block Plaintiff's marketing emails as harassing or otherwise objectionable, or the issue of good faith.

17 Nor can the MAAWG notes be used to create an affirmative duty on the part of Yahoo! to
18 disclose how to reverse engineer around its SpamGuard filters as Plaintiff suggests in the
19 Opposition. As this Court has already ruled, Yahoo! is under no duty to either disclose the
20 particulars that triggered SpamGuard blocking, and indeed such a requirement would be inconsistent
21 with the intent of Congress to "remove disincentives for the development and utilization of blocking
22 and filtering technologies." (Order at 8 (quoting 47 U.S.C. § 230(b)(4).)

---

[8] MAAWG itself did not intend its informal meeting notes reflecting the various views of participating members to be converted into an industry standard. Indeed, the document cited by Plaintiff itself states plainly on its face that it is "***not*** intended to represent an absolute set of best practices" since "what is 'best' is ***frequently determined by the particular circumstances of the network.***" Declaration of Diana Biason in support of Motion to Dismiss the First Amended Complaint., Exh. 1 at 1 (second emphasis added). Plaintiff has not opposed Yahoo!'s Request for Judicial Noticed of the MAAWG notes, filed concurrently with Yahoo!'s Motion to Dismiss the First Amended Complaint. Moreover, Plaintiff's attempt to convert non-binding options referenced by MAAWG into some limitation on the CDA would also be flatly inconsistent with Congress' intent that the immunity provisions of Section 230 be interpreted broadly so as to give the service provider maximum control over its own email systems.

Plaintiff's blanket assertion that Yahoo! is a competitor of Plaintiff's is no more useful in proving the absence of good faith by Yahoo! with respect to its blocking decisions. Even assuming Plaintiff had properly alleged facts demonstrating that Yahoo! is a competitor (which it has not), it is a giant leap of logic to assume from the alleged fact of competition alone that Yahoo! acted without good faith. Indeed, it has long been established that an anti-competitive motive cannot be inferred where there is a valid business reason for the alleged conduct. *HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 549 (8th Cir. 2007) (citing *Morgan v. Ponder*, 892 F.2d 1355, 1358 (8th Cir. 1989)). Certainly the fact that Plaintiff's emails were filtered by Yahoo!'s spam filtering technologies or even the claim that Yahoo! was a "competitor" for advertising with Plaintiff fall woefully short of the required showing to push Plaintiff's claim from the hypothetically possible to the adequately pleaded and plausible as required by *Iqbal/Twombly*. Plaintiff alleges no anti-competitive conduct by Yahoo! due to Plaintiff's inability to "free-ride" on Yahoo!'s email servers. *LiveUniverse, Inc. v. Myspace, Inc.*, 2007 WL 6865852, at *13 (C.D. Cal. June 4, 2007) (social networking site's deletion of references and links to rival site was not anti-competitive conduct). *See also Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1295 (11th Cir. 2004) ("[R]efusal to deal that is designed to protect or further the legitimate business purposes of a defendant does not violate the antitrust laws, even if that refusal injures competition.").

The mere possibility of harm or allegations that are "merely consistent" with potential liability are insufficient. *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009). Instead, particularized factual allegations that are "enough to raise a right to relief above the speculative level" are required. *Twombly,* 550 U.S. at 555, 127 S. Ct. at 1964-65. Plaintiff's highly implausible claim that Yahoo! (as well as Microsoft) were motivated to remove Plaintiff from the pool of potential competitors for advertising dollars is totally without any factual support. Likewise, Plaintiff's naked assertion that Yahoo!'s filtering was done for "an anti-competitive motive" is simply a refinement of its earlier claim -- already rejected by this Court -- that Yahoo's filtering decisions were motivated by profit. Like that allegation, this new incarnation of a profit-driven "anti-competitive motive" is similarly devoid of factual support and insufficient as a matter of law. *See* (Order at 7); *Oestreicher v. Alienware Corp.,* 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008), *aff'd,*

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

322 Fed. Appx. 489 (9th Cir. Apr. 2, 2009).

Even more tenuous is Plaintiff's claim *made for the first time in its Opposition* that after June 2010, Yahoo! specifically programmed its spam filtering technologies to block Holomaxx emails. (*See* Opposition at 8 ("Yahoo programmed SpamGuard to specifically target Holomaxx's emails.").) This new claim that Yahoo! specifically targeted Plaintiff for filtering (as opposed to applied faulty filtering standards) **is not even alleged in the FAC, and exists only as argument in the Opposition.** Indeed, Plaintiff makes the very opposite allegation that Yahoo!'s automated SpamGuard system was "indiscriminate" and not sufficiently nuanced to make accurate filtering decisions. (*See* FAC ¶ 26 (alleging SpamGuard "has been programmed to identify spam based on certain mailing characteristics, without reference to whether the email in question violates the Can-Spam Act [sic]"); FAC ¶ 47 (alleging that Yahoo! "indiscriminately" blocked legitimate emails).) For this reason alone, Plaintiff's argument should be disregarded in its entirety. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 998 (9th Cir. 2001) ("Review is limited to the contents of the complaint."); *see also Olivera v. Am. Home Mortgage Servicing, Inc.*, 689 F. Supp. 2d 1218, 1221 (N.D. Cal. 2010) (same). Further, even assuming Plaintiff's bulk emails were specifically targeted for filtering by SpamGuard, this demonstrates nothing more than the filtering technology at work, as specifically authorized by the CDA. Indeed, the very purpose of the CDA is to permit targeted filtering of harassing or otherwise objectionable conduct.

At most, Plaintiff can be heard to complain that it did not like the result of Yahoo!'s spam filtering technologies. However, this cannot serve as the basis of a claim against Yahoo! because Yahoo!'s subjective filtering decisions cannot be gainsaid even if the material is not "actually []objectionable." *Zango, Inc. v. Kaspersky,* 2007 U.S. Dist. LEXIS 97332, at *11 (W.D. Wash. Aug. 28, 2007).[9] Despite an opportunity to do so, Plaintiff has failed to meaningfully amend its

---

[9] Plaintiff also speculates in the FAC that Yahoo! had no reason to block its mass marketing emails once it registered new IP addresses for bulk email use with Yahoo! in June 2010. Reasoning from the faulty premise that its emails were not harassing and objectionable before June 2010, Plaintiff reaches the equally faulty conclusion that they could not be deemed subjectively harassing after that date. From that, Plaintiff infers that "Yahoo must have intentionally chosen to specifically block all Holomaxx emails for reasons other than 'harassment.'" (Opposition at 7.) Plaintiff advances the argument that Yahoo! specifically targeted Holomaxx for spam filtering in its Opposition (previously Plaintiff had argued that Yahoo! relied on "cheap" and "ineffective" filtering technologies -- *See* Original Complaint ¶ 40). The blocking -- targeted or not -- is best explained by the volume of Plaintiff's emails, and is no different from the filtering that initially prompted Plaintiff to switch IP addresses. That SpamGuard identified Plaintiff's emails as spam after Plaintiff admitted

7

1  Complaint. The few "new" facts alleged by Plaintiff regarding MAAWG and Yahoo's allegedly
2  anti-competitive motives are neither adequately pleaded nor legally relevant. Accordingly, the final
3  element of the CDA is satisfied.

### 3. Good Faith Is Not Required For Section (c)(2)(B) Immunity.

Although Plaintiff spends the bulk of its Opposition arguing that Yahoo!'s filtering decisions demonstrate a lack of good faith, Plaintiff leaves unanswered and unopposed Yahoo!'s argument that as a service provider that "enables" or "makes available" the technical means to restrict access to objectionable material, it is entitled to immunity for filtering Plaintiff's emails irrespective of good faith. *Zango,* 568 F.3d at 1173 (no showing of good faith required where defendant enabled tools for users to block emails); (Original Opposition to Motion to Dismiss Complaint at 5 (conceding (c)(2)(B) does not contain a good faith requirement)). Like the defendant in *Zango*, Yahoo! enables and provides the "technical means to restrict access" to emails and block harassing or objectionable material. As such, its filtering activities are subject to the immunity provisions of Section 230 (c)(2)(B), regardless of motivation, intent or the alleged absence of good faith. That Plaintiff fails to argue otherwise provides an independent basis to grant Yahoo!'s Motion. *See, e.g., Kariguddaiah v. Wells Fargo Bank, N.A.*, 2010 WL 2650492, at *5 (N.D. Cal. July 1, 2010).

### B. Plaintiff Fails To State A Wiretap Claim.

Despite this Court's urging, Plaintiff has not improved its pleading this time around, and still fails to allege sufficient facts (as opposed to conclusions) to demonstrate how there was an "interception" within the meaning of the Wiretap Act or how Yahoo! "used and disclosed" the contents of Plaintiff's blocked emails, or even use of a device other than Yahoo!'s own servers on which the email was received. (Order at 10 (citing *Bell Atl. Corp.,* 550 U.S. 544, 555 (2007)).) This is fatal to Plaintiff's claim. (*Id.*); *see also Ideal Aerosmith v. Acutronic United States, Inc.*, 2007 U.S. Dist. LEXIS 91644, at *10, 12 (W.D. Pa. Dec. 13, 2007). Plaintiff's scant and unsubstantiated allegations are incomplete, internally inconsistent and from a pleading perspective, inadequate. (*Compare* FAC ¶¶ 44-45 (alleging interception) *with* FAC ¶ 61 (alleging access while in storage).) Indeed, even a cursory review of the redlined version of the FAC demonstrates that Plaintiff has

---

to changing its email addresses to avoid spam filtration proves nothing other than the system operated as it should operate.

failed to plead any new facts or plead with more specificity the basis of its wiretap claim.

Moreover, Plaintiff is wrong on the law. First, contrary to Plaintiff's strained attempt to distinguish between the service provider and the operator, officer, employee or agent working on behalf of the service provider, Courts have routinely extended the immunity provisions of Section 2511(2)(a)(i) to the service provider itself. *See, e.g, Browning v. AT&T Corp.,* 682 F. Supp. 2d 832, 836-37 (N.D. Ill. 2009) (immunizing *service provider* pursuant to Section 2511(2)(a)(i) where provider acted to protect its rights or property). And, of course, this interpretation of the immunity provision of Section 2511 makes sense since the very purpose of Section 2511(2)(a)(i) immunity is to take necessary steps to <u>protect the rights or property of the service provider</u>.

Further, once again Plaintiff has failed to plead the necessary elements of a wiretap claim, including interception at the time of transmission. The rule in the Ninth Circuit remains that there can be no interception within the Act where the alleged access took place from storage and not during transmission. *Konop v. Hawaiian Airlines, Inc.* 302 F.3d 868, 878 (9th Cir. 2002). Plaintiff's cited authority supports, not refutes, the conclusion that email accessed from a server is in storage, not in transit, and underscores the need for Plaintiff to plead with specificity an interception in transit to support a wiretap claim. *See Garcia v. Haskett,* 2006 WL 1821232, at *4-5 (N.D. Cal. June 30, 2006) (dismissing wiretap claim with prejudice where leave to amend granted once and Plaintiff failed to allege interception during transmission).[10]

In an attempt to excuse its own inadequate pleading, Plaintiff argues that it can only satisfy Rule 12(b)(6)'s pleading requirement if it is allowed to conduct discovery. (*See* Opposition at 2-3, 20-21.) Plaintiff's failure to adequately plead facts and law giving rise to a plausible and not merely possible claim provides a basis for dismissal, not discovery. *See, e.g., Khalili v. Comerica Bank*, 2011 WL 2445870, at * 2-3 (N.D. Cal. June 16, 2011) (granting a motion to dismiss where plaintiff's alleged "facts" were "almost entirely legal conclusions couched as facts" and the complaint was too "broad and vague" to sufficiently provide the defendants with fair notice so that the defendants could "raise a meaningful defense"). Where Plaintiffs are unable to make an initial showing of a plausible claim, they cannot "unlock the door" to discovery for purposes of bolstering

---

[10] Plaintiff's additional failure to allege how its emails were intercepted and how Yahoo! used and disclosed the contents of Plaintiff's communications is also fatal to its claim. *Id.*

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

their inadequate claims. To subject Defendants to discovery for claims that fall below the *Iqbal/Twombly* plausibility standard would be unfair and an unnecessary waste of resources. *Id.* Accordingly, discovery -- limited or otherwise -- is not justified. *Ashcroft v. Iqbal,* 129 S. Ct 1937, 1951 (2009) ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise.").[11]

### C. Plaintiff Fails To State A Stored Communications Act Claim.

Plaintiff's Stored Communications Act ("SCA") claim fails for the same reasons it did before: Plaintiff's allegations are no more than a rote recital of the elements of the claim, and Plaintiff has failed once again to explain the factual details of what facility or communications were accessed (or by whom) and how that access exceeded Yahoo!'s authorization to access emails stored on its own servers. (*See* Order at 10 (dismissing SCA claim for failure to plead facts sufficient to "raise the right to relief above the speculative level").) Nor has Plaintiff offered any factual support or legal authority for its claim that Yahoo! exceeded its authority where the only "facility" referenced by Plaintiff is Yahoo!'s own systems, or for the claim that SCA exception only applies to employers. *Crowley v. Cybersource Corp.,* 166 F. Supp. 2d 1263, 1272 (N.D. Cal. 2001) (provider's access to its own systems is not limited by the SCA).

### D. Plaintiff Fails To State A Computer Fraud And Abuse Act Claim.

The FAC offers no improvement with respect to adequacy of pleading of Plaintiff's Computer Fraud and Abuse ("CFAA") claim. As before, Plaintiff fails to do anything other than simply recite selected elements plucked from the CFAA and assert a violation by Yahoo!. In particular, Plaintiff fails to identify any facts evidencing a plausible violation of the CFAA, including identifying any "knowing" or "wrongful" conduct, what provision of the Act was violated, or even what computers other than Yahoo!'s own were accessed, or how such access was unauthorized. *See LRVC Holdings v. Brekka,* 581 F.3d 1127, 1129 (9th Cir. 2009) (access to computer must be unauthorized to state a claim). Indeed, Plaintiff has not amended its CFAA claims one bit in response to this Court's earlier ruling. Nor does Plaintiff offer any authority for its

---

[11] In *Iqbal,* the Supreme Court announced a rule that discovery ***is not allowed -- limited or otherwise --*** to bolster claims that are merely possible instead of plausible based on well pleaded facts.

10

YAHOO! INC.'S REPLY - CASE NO. CV 10-04926 JF (PG)

1 argument that a service provider may exceed its authorization for access to its own servers. Instead of reforming its own pleading deficiencies, Plaintiff attempts to poke holes in Yahoo!'s legal authority. Not only are the authorities cited by Yahoo! in its Motion accurate and instructive, Plaintiff misses the point that it is Plaintiff's burden to plead a claim, not Yahoo!'s burden to disprove the possibility of a claim. Applying the standards set in *Iqbal/Twombly* and for the additional reasons set forth in Yahoo!'s moving paper, Plaintiff falls short of this pleading burden.

### E. Plaintiff's State Law Claims Fail.

All of Plaintiff's state law claims are extinguished by application of the statutory safe harbor provisions of the CDA. *Zango,* 568 F.3d at 1177; *see also Pliva, Inc. v. Mensing*, 2011 WL 2472790, at * 8 (U.S. June 23, 2011) ("Where state and federal law 'directly conflict,' state law must give way.) Plaintiff's state claims also fail because Yahoo! has no obligation to allow Plaintiff unfettered access to Yahoo!'s servers or users, and Plaintiff has failed to state any actionable wrongful conduct by Yahoo!. (Order at 10-11.)

#### 1. Yahoo! Cannot Be Held Liable On An Interference Theory.

Contrary to Plaintiff's assertions in its Opposition, Yahoo!'s lack of duty to deliver Plaintiff's commercial bulk email defeats its intentional interference claims. As the California Supreme Court has stated: "A tort, whether intentional or negligent, involves a violation of a *legal duty*, imposed by statute, contract or otherwise." *Ceders-Sinai Med. Ctr. v. Superior Court*, 18 Cal. 4th 1, 8 (1998) (citation omitted) (emphasis original). Since Yahoo! has no duty to deliver even one of Plaintiff's emails it cannot be charged with the legal obligation to help Plaintiff succeed in delivery of its bulk mail:

> In the business arena it would be unprecedented to impose a duty on one actor to operate its business in a manner that would ensure the financial success of transactions between third parties. With rare exceptions, a business entity has no duty to prevent financial loss to others with whom it deals directly. A fortiori, it has no greater duty to prevent financial losses to third parties who may be affected by its operations.

*Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 59 (1998).

Even assuming Yahoo! owed a duty to Plaintiff, Yahoo! was nonetheless justified in filtering Plaintiff's bulk email because of the unwanted tax mass marketing places on servers strained beyond capacity and inboxes jammed with spam. *Jewel Cos. v. Pay Less Drug Stores Nw., Inc.*, 510 F.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Supp. 1006, 1011 (N.D. Cal. 1981) (justification is a defense to interference claim). Yahoo! is justified in protecting its own financial interest by providing its users with the spam filtering technology that they have come to expect -- even if it results in overly restrictive spam filtering of solicited email. *e360Insight, LLC*, 546 F. Supp. 2d at 607 ("Congress . . . understood that blocking software would probably block too much [and] may wind up preventing you from receiving some emails that are neither unwanted nor inappropriate.").[12]

Plaintiff's interference claims fail for the additional reason that like the original Complaint the FAC fails to identify with the requisite specificity the relationships allegedly interfered with. *See* (FAC ¶ 40); *DocMagic, Inc. v. Ellie Mae*, 745 F. Supp. 2d 1119, 1144 (N.D. Cal. 2010) (dismissing interference claim where parties were named but no specifics of disruption alleged). Here, too, Plaintiff fails to allege a particular relationship that was disrupted due to the defendant's conduct. *DocMagic*, 745 F. Supp. 2d at 1144 (requiring at least one specifically alleged relationship disrupted); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 WL 1753479, at * 6 (N.D. Cal. Apr. 22, 2011) (post *Iqbal* tortious interference claim dismissed for failure to allege "any *particular* lost contracts or failed negotiations or even a failure to meet reasonable sales projections" (emphasis added)). Plaintiff's admission that Yahoo! did not know the specifics of any such relationship dooms its claim. *See, e.g., Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*, 7 F.3d 1434, 1442-43 (9th Cir. 1993) (actual knowledge of specific contracts required).

Lastly, Plaintiff's intentional interference with prospective business advantage claim fails because Plaintiff has not made the required legal showing that Yahoo!'s conduct was wrongful by some measure beyond the alleged interference itself. *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-393 (1995). Although Plaintiff claims that Yahoo!'s conduct was independently wrongful because it was "motivated by Yahoo!'s anti-competitive interests," this bald assertion standing alone is not enough. (Opposition at 16.) First, Plaintiff fails to allege sufficient facts to show that Yahoo!'s filtering technologies were designed or employed for an anti-competitive purpose. The fact of competition alone cannot support Plaintiff's claim. Further, by

---

[12] Yahoo! in no way agrees with Plaintiff's protestations that it is CAN-SPAM compliant and/or that Yahoo! used faulty filtering technologies or erroneous filtering parameters. Even accepting these allegations as true for purposes of this Motion only, it makes no difference under the CDA.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

definition anti-competitive conduct is "conduct without legitimate business purpose that makes sense only because it eliminates competition." *HDC Med., Inc.*, 474 F.3d at 549. Here, there is a clear need and justification recognized by Congress for ISPs to develop and employ filtering technologies to deal with the growing burden of spam, and a corresponding cost to ISPs of dealing with it. *White Buffalo Ventures, LLC v. The Univ. of Texas*, 2004 WL 1854168, at * 5 (W.D. Tex. Mar. 22, 2004) (noting significant burdens placed by spam on ISPs, consumers and businesses, including increased network needs, higher costs of operation and reduced network efficiency).

Yahoo!'s legitimate business need to control spam through use of filtering technology precludes any finding or inference that such conduct was anti-competitive. Second, as stated in Yahoo!'s Motion, Plaintiff's allegations relating to MAAWG cannot form the bases for independent wrongful conduct since the MAAWG working notes do not represent an industry standard (much less legal requirement) and is irrelevant to content filtering. (Yahoo!'s Motion, pp. 10-11.)

### 2. Plaintiff's Wiretapping And Eavesdropping Claims Fail.

California's criminal privacy statutes were meant to protect intrusion on confidential conversations, not restrict filtering of bulk emails from commercial email advertisers. *See People v. Newton*, 42 Cal. App. 3d 292, 296 (1974). Here, Plaintiff is admittedly a bulk "email service provider" who derives its revenue from sending "marketing emails" and advertisements and by being "paid a fixed amount per email sent." (*See, e.g.*, FAC ¶¶ 16-17.) Plaintiff cannot credibly claim either an expectation that its advertising emails stay private or an unawareness that its communications would be subject to possible spam filtering. Indeed, the very opposite is true.[13] *See People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010).

Nor does Plaintiff cite any case law where a state wiretapping or eavesdropping claim in the context of electronic mail,[14] survived a motion to dismiss.[15] This is because sections 630 and 631 of

---

[13] For instance, Plaintiff does not even allege any controls or procedures it undertakes to ensure that only the intended recipient receives its bulk advertisements.

[14] Plaintiff conflates "electronic mail" and "electronic communications." (Opposition at 22.) Whereas telephonic or telegraphic communications may in some instances be construed as electronic communications protected by California's privacy statutes, the dearth of case law applying those statutes to electronic mail shows how these statutes were not intended to nor have they been extended to electronic mail.

the Penal Code were enacted to protect communications over telephone or telegraph and "a court is not free to advance the public policy that underlies a statute by extending the statute beyond its plain terms and established reach." *See Moallem v. Coldwell Banker Commercial Group, Inc.*, 25 Cal. App. 4th 1827, 1833 (1994); *Membrila v. Receivables Performance Mgmt., LLC,* 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) (Section 631 limited to telephone or telegraph claims).

Plaintiff's claim fails for the additional reason that neither the FAC nor the Opposition present any allegation or argument that Yahoo! read or attempted to read, or learn the contents of, or use any communication as set forth in section 631 of the Penal Code while in transit. *See Bradley v. Google, Inc.*, 2006 WL 3798134, at * 5-6 (N.D. Cal. Dec. 22, 2006) (state wiretapping claim fails for failure to alleged interception during transmission). Plaintiff's Penal Code section 632 claim is also deficient because the FAC does not allege any means of "amplifying" or "recording" as explicitly required by section 632. Having failed to allege the necessary elements of a claim or that the statute can be extended to these facts, Plaintiff's Penal Code sections 631 and 632 claims should be dismissed.

### 3. Plaintiff Fails To State A Claim Under the UCL.

Plaintiff argues in its Opposition that Yahoo!'s conduct was unlawful under the UCL because "it violates the FWA, SCA, CFAA, and Penal Code Section 630 *et seq.* and because it constitutes intentional interference with Holomaxx's contracts and prospective business advantage." (Opposition at 25.) However, "where a plaintiff cannot state claim under the 'borrowed' law, it cannot state a UCL claim either." *Tuck Beckstoffer Wines LLC v. Ultimate Distribs.*, 682 F. Supp. 2d 1003, 1019-20 (N.D. Cal. 2010). As set forth herein, the FAC should be dismissed in its entirety because Yahoo!'s alleged conduct is immunized by the CDA, and, notwithstanding that immunity, Plaintiff has failed to state any claim that entitles it to relief. Plaintiff also asserts in its Opposition that it has alleged unfair conduct under the UCL because Yahoo! allegedly engaged in conduct that violated the "spirit of antitrust laws." However, as set forth *supra*, in section II.A.2, Plaintiff has failed to allege sufficient facts showing that Yahoo!'s spam filtering was motivated by an anti-

---

[15] Citing only to the Penal Code statutes, Plaintiff merely alleges that "the terms of Section 631 and 632 can be read to include interception and scanning of electronic communications." (Opposition at 22-23.)

1  competitive interest and not a perceived business need.

### F. **Further Amendment Would Be Futile.**

Plaintiff has had and squandered the opportunity to meaningfully amend its pleadings to state a plausible claim based on well pleaded facts and viable legal theories. Further amendment would be futile and should be denied. *See Ruiz v. Mort. Elec. Registration Sys., Inc.*, 2009 WL 2390824, at *10 (E.D. Cal. Aug. 3, 2009).

### III. CONCLUSION

For the foregoing reasons, Yahoo! respectfully requests that this Court dismiss Plaintiff's FAC without further leave to amend.

DATED: July 1, 2011                HUNTON & WILLIAMS LLP

By: /s/ ANN MARIE MORTIMER
    Ann Marie Mortimer
    Attorneys for Defendant YAHOO! INC.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627